UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

CHARLES R. ACKLIN, MARIBEL ACUTANZA, :   Civil Action No. 1:20-CV-07042
PHILIP D. ACUTANZA, SCOTT ADLER,    :
RACHELLE ADLER, SUNIL AGGARWAL,   :
JATINDER AGGARWAL, CAROLYN E. ALLEN,:
CARMELO ALU, LINDA ALU, ERROL L.   :
BENNETT, JOAN A. BEUTLER, ROBERT A.  :
BIELLO, LOIS A. BIELLO, NICHOLAS P.   :
BIGOTTI, LARRY A. BOWERS, ARLA    :
BOWERS, ROBERT R. BURG, MICHELLE N.  :
CABAY, WILLIAM CALAMONERI, KAREN  :
SCHEMBRE, JOSEPH M. CARBO, DEBORAH :
CARBO, GEORGE CASTELLANO,    :
ANTOINETTE CASTELLANO, WADE   :
CHILCOAT, LAUREL M. CLARK, SUSAN A.  :
CLARK, ALBERT M. CLARK, ROLLIN P.   :
COLLINS, BONNY K. COLLINS, ELIZABETH :
CONWELL, CHARLES ROBERTSON, JUDITH :
COOPER, JOSEPH CORENO, MICHELLE   :
CORENO, CAROL A. DAHIR, BURT    :
DANOVITZ, RAYMOND DAYAN, PATRICIA H.:
DAYAN, PAUL DEWITT, SUSAN H. DILLON,  :
RICHARD S. DILLON, JOHN E. DITCHBURN, :
LYNNE DITCHBURN, DANA C. DREW,   :
SIDNEY T. FELDMAN, FREDA FELDMAN,  :
ALEXANDRA FENG, PATRICIA CHEN FENG, :
JOSEPH K. FERRARA, NANCY A. FERRARA, :
REBECCA FITZMAURICE, DAVID W. FOOTE, :
ANNE P. IVERSON, DANIEL J. FRANKLIN,  :
ANDREA V. FRANKLIN, LINDA GAGNE,   :
RODNEY M. BICKFORD, PAMEL P. GETHARD,:
THOMAS R. GETREUER, DONNA C.    :
GETREUER, LAUREL GIBALDI, ROBERT D.  :
GOFONIA, MARRIANN GOFONIA, LINDA  :
GOLAY, GERALD N. GOLDMAN, MYRIAM C. :
STRAUSS, LUCILLE GRAESSLE, KURT   :
GRIMM, MARGARET A. GRIMM, NEIL J.   :
GROSSMAN, JUDITH GROSSMAN, MARK  :
GRUNEWALD, KATHERINE A. HAYDEN,  :
JOHN D. HOULE, MICHAEL D. HEBERT,   :
JANET H. HEBERT, KARL HESS, CAMILLE  :
KURTZ, LINDA M. HOOKS, MARK D. HUGHES,:
MICHELLE R. HUGHES, MELLISSSA JESSUP, :
GREGORY P. JOHNSON, NANCT A. JOHNSON,:

GAIL E. JORDAN, PAUL A. JORDAN, ULLA P.  :
JORDAN, PATRICIA V. KAPLAN, JEROME D.    :
KAPLAN, SUSAN KAPLAN, LARRY LASKER,    :
SYLWIA KARWOWSKA, AUDREY KAUFMAN,:
MARILYN KAUTZER, CURTIS KAUTZER,       :
DALE R. KICHLINE, JR., MARY ANN        :
KICHLINE, PAULINE KONTOMANOLIS,        :
NIKOLAS KONTOMANOLIS, JOHN S.          :
KUHLTHAU, CAROL C. KUHLTHAU,           :
CHRISTINE LALLY, THOMAS R. LALLY,      :
ROGER S. LICHTMAN, JOSEPH A. MAGLIATO,:
ROBIN MAGLIATO, DAVID R. MANN,         :
SUZANNE C. MANN, JAMES D. MAPES,       :
CYNTHIA L. MAPES, CHERYL D. MARSH,     :
BENJAMIN H. TICKNOR, ROBERT D. MARTH, :
JANET K. MARTH, RICHARD J. MARRIOTT,   :
SHIRLEY MARRIOTT, BRIAN P. MCCUE,      :
LUCILLE M. MCCUE, KATHY MCMONIGLE,     :
CHARLES MCMONIGLE, NIKKI MCNICOL,      :
JOHN MIKESH, ROBERT C. MILLER, CAROL   :
MILLER, JAMES R. MOORE, III, DEBORAH L. :
MONLUX, JAMES D. MUIR, ARETTA B. MUIR, :
PAUL NISSELLE, CHARLES J. NEUMANN,     :
PRISCILLA J. NEUMANN, DENNIS O'MALLEY,:
SUZANNE L. O'MALLEY, SUSAN O'NEILL,    :
JOAN H. ORR, JANINE GETEK, GARY J.     :
PACCAGNINI, KAREN L. PACCAGNINI,       :
DEBORAH LEE PETERS, ALEXANDER K.       :
PEYER, KATHLEEN PEYER, SUSAN PIERSON-:
O'HARA, PATRICK O'HARA, KENNETH        :
PIGNATELLO, BERNADETTE PIGNATELLO,     :
JOSE M. POLANCO, CARMEN Y. POLANCO,    :
DAVID R. PRESS, CAROLYN B. PRESS, PAUL :
PRICE, EILEEN PRICE, DAVID S. PURVIS,   :
THOMAS REDDY, JEAN MCEWEN RODBY,       :
CRAIG R. RODBY, ROBERT RODRIGUEZ,      :
MARILYN ROLL, CHARLES S. ROLL, MARCY :
D. ROOKEY, RONALD J. ROOKEY, HENRY T.  :
SATT, MARY ANNE SATT, ROBERT D.        :
SCHROCK, JR., CAROLYN SCHROCK,         :
EDWARD S. SCHWARTZ, DIANE K.           :
SCHWARTZ, SUSAN SENN, JAMES SENN,      :
SUSAN SENN, ELAINE K. SHAPIRO,         :
STANLEY SILVERMAN, GENE SILVERMAN,  :
ROBERT A STAEHLE, GINA C. CHUNG, MARK:
STEVENS, TRACEY STEVENS, LINDA         :

STROHMEYER, JOHN A. TAYLOR, KAREN M. :
TAYLOR, ANTONELLA TRISOLINO,          :
BRIGITTE TUTSCHKA, SHARON             :
VAN DE GRIFT, CHRISTOPHER VOLPE,      :
ATHOL L. WALLACE, JILL A. WALLACE,    :
THOMAS C. WARNOCK, LAURA C.           :
WARNOCK, LAURENE WEAVER, ANDREAS      :
WEBER, KATHLEEN L. WEBER, WILLIAM     :
SHAIN, WALTER J. WEIR, SUSAN WEIR,    :
RICHARD WEISS, DAVID WICHERS,         :
THOMAS S. WOODSON, ANNE K. WOODSON,   :
MICHAEL WORSHAM, GEORGE M. WORTON,    :
ROSANNE WORTON, ARLO YOUNG, NEIL D.   :
YOUNG, IRENE I. YOUNG, RICHARD ZIERDT,:
MICHAEL J. ZIMMERMAN AND PENNY        :
KRESS ZIMMERMAN,                      :
                                      :
            Plaintiffs,               :
                                      :
      v.                              :     COMPLAINT
                                      :
IAN BRUCE EICHNER, LESLIE H. EICHNER  :
STUART P. EICHNER, SCOTT L. LAGER, T. :
PARK CENTRAL LLC, O. PARK CENTRAL     :     DEMAND FOR JURY TRIAL
LLC, PARK CENTRAL MANAGEMENT, LLC,    :
MANHATTAN CLUB MARKETING GROUP,       :
LLC, NEW YORK URBAN OWNERSHIP         :
MANAGEMENT, LLC AND BLUEGREEN         :
VACATIONS UNLIMITED, INC.,            :
                                      :
            Defendants.               :
_____ :

Plaintiff Charles R. Acklin, et al. ("Plaintiffs"), by and through their attorneys

Zimmerman Law Group and Hoffberg & Associates complain against Defendants Ian Bruce

Eichner, Leslie H. Eichner, Stuart P. Eichner, Scott L. Lager ("Lager"), T. Park Central LLC ("T.

Park"), O. Park Central LLC ("O. Park"), Park Central Management, LLC ("Park Central"),

Manhattan Club Marketing Group LLC ("Marketing"), New York Urban Ownership

Management, LLC ("Urban"), and BlueGreen Vacations Unlimited, Inc., ("BlueGreen") as

follows:

# I.    PARTIES

1.      Plaintiff Charles R. Acklin of Cincinnati, Ohio purchased an interest in a timeshare known as The Manhattan Club and became a member of The Manhattan Club Timeshare Association, Inc. ("TMC") in 2000 having Contract No. 11736.

2.      Plaintiffs Maribel Acutanza and Philip D. Acutanza of Vineland, New Jersey purchased a TMC timeshare interest.

3.      Plaintiffs Scott Adler and Rachelle Adler of Marina Del Ray, California purchased a TMC timeshare interest in 2007 having Contract No. 00812.

4.      Plaintiffs Sunil Aggarwal and Jatinder K Aggarwal of Larchmont, New York purchased a TMC timeshare interest in 2003 having Contract No. 25820.

5.      Plaintiff Carolyn E. Allen of Dallas, Texas purchased a TMC timeshare interest.

6.      Plaintiffs Carmelo Alu and Linda Alu of Basking Ridge, New Jersey of Marina Del Ray, California purchased a TMC timeshare interest in 2007 having Contract No. 00812-02.

7.      Plaintiffs Errol L. Bennett of Lutherville, Maryland purchased a TMC timeshare interest in 2004 having Contract No. 29064.

8.      Plaintiff Joan A. Beutler of Redding, Connecticut purchased a TMC timeshare interest.

9.      Plaintiffs Robert A. Biello and Lois A. Biello of Boynton Beach, Florida purchased TMC timeshare interests in 2005 having Contracts Nos. 32003 and 32025.

10.     Plaintiff Nicholas P. Bigotti of Nesconset, New York purchased a TMC timeshare interest.

11.     Plaintiffs Larry A. Bowers and Arla Bowers of Rockville, Maryland purchased a TMC timeshare interest in 2004 having Contract No. 28876.

12.     Plaintiff Robert R. Burg of North Wales, Pennsylvania purchased a TMC timeshare interest in 2001 having Contract No. 15365.

13.     Plaintiff Michelle N. Cabay of Norwalk, Connecticut purchased a TMC timeshare interest having Contract No. 41139.

14.     Plaintiffs William Calamoneri and Karen Schembre of Long Valley, New Jersey purchased a TMC timeshare interest in 2003 having Contract No. 00242-02.

15.     Plaintiffs Joseph M. Carbo and Deborah Carbo of Chapel Hill, North Carolina purchased a TMC timeshare interest in 2011 having Contract No. 1503.

16.     Plaintiffs George Castellano and Antoinette Castellano of St. James New York purchased a TMC timeshare interest in 1998 having Contract No. 00876-02.

17.     Plaintiff Wade Chilcoat of Reston, Virginia purchased a TMC timeshare interest in 2006 having Contract No. 30858.

18.     Plaintiff Laurel M. Clark of Seattle, Washington purchased a TMC timeshare interest in 2005 having Contract No. 00455.

19.     Plaintiffs Susan A. Clark and Albert M. Clark of Orange, Connecticut purchased a TMC timeshare interest in 1999 under Contract No. 1916.

20.     Plaintiffs Rollin P. Collins and Bonny K. Collins of Ocean View, New Jersey purchased a TMC timeshare interest in 2002 having Contract No. 21424.

21.     Plaintiffs Elizabeth Conwell and Charles Robertson of North Hills, California purchased a TMC timeshare interest in 2011 having Contract No. 41400.

22.     Plaintiff Judith Cooper of Middletown, New Jersey purchased TMC timeshare interests in 2000 and 2001 having Contract Nos. 12796 and 15803, respectively.

23.      Plaintiffs Joseph Coreno and Michelle Coreno of Patchogue, New York purchased a TMC timeshare interest in November 2011 having Contract No. 42400.

24.      Plaintiff Carol A. Dahir of New York, New York purchased TMC timeshare interests in 1998 and 1999 having Contract Nos. 4036 and 7003, respectively.

25.      Plaintiff Burt Danovitz of Clinton, New York purchased a TMC timeshare interest in June 1997 having Contract No. 2091.

26.      Plaintiffs Raymond Dayan and Patricia H. Dayan of Stamford, Connecticut purchased a TMC timeshare interest in 2009 2009 having Contract No. 39632.

27.      Plaintiff Paul deWitt of Bend, Oregon purchased a TMC timeshare interest in July 2000 having Contract No. 11999.

28.      Plaintiffs Susan H. Dillon and Richard S. Dillon of Seattle, Washington purchased a TMC timeshare interest in 2003 having Contract No. 22153.

29.      Plaintiffs John E. Ditchburn and Lynne Ditchburn of Ripon, England, United Kingdom purchased a TMC timeshare interest in 2001 having Contract No. 15383.

30.      Plaintiff Dana C. Drew of Weymouth, Massachusetts purchased a TMC timeshare interest.

31.      Plaintiffs Sidney T. Feldman and Freda Feldman of Ridley Park, Pennsylvania purchased a TMC timeshare interest in 2010 having Contract No. 9208.

32.      Plaintiffs Alexandra Feng and Patricia Chen Feng of Monroe, New Jersey purchased a TMC timeshare interest in 2005 having Contract No. 30054.

33.      Plaintiffs Joseph K. Ferrara and Nancy A. Ferrara of Ponte Vedra, Florida purchased a TMC timeshare interest in 2002 having Contract No. 21630.

34.     Plaintiff Rebecca Fitzmaurice of Santa Ana, California purchased a TMC timeshare interest in 2011 having Contract No. 43365-RS-PH.

35.     Plaintiffs David W. Foote and Anne P. Iverson of Vonore, Tennessee purchased a TMC timeshare interest in 2001 having Contract No. 26343.

36.     Plaintiffs Daniel J. Franklin and Andrea V. Franklin of Swampscott, Massachusetts purchased a TMC timeshare interest in 1998 having Contract No. 3684.

37.     Plaintiffs Linda Gagne and Rodney M. Bickford of Manchester Maine purchased a TMC timeshare interest.

38.     Plaintiff Pamela P. Gethard of Toms River, New Jersey purchased a TMC timeshare interest in 2003 having Contract No. 25789.

39.     Plaintiffs Thomas R. Getreuer and Donna C. Getreur of Stamford, Connecticut purchased a TMC timeshare interest in 2004 having Contract No. 28772.

40.     Laurel Gibaldi of Katonah, New York purchased a TMC timeshare interest.

41.     Plaintiffs Robert D. Gofonia and Marriann T. Gofonia of Phoenix, Arizona purchased a TMC timeshare interest in 2000 having Contract No. 26822.

42.     Plaintiff Linda Golay of Danbury, Connecticut purchased a TMC timeshare interest in 2000 having Contract No. 11745.

43.     Plaintiffs Gerald N. Goldman and Myriam C. Strauss of Toronto, Ontario, Canada purchased a TMC timeshare interest in 2006 having Contract No. 34056.

44.     Plaintiff Lucille Graessle of Anthem, Arizona purchased a TMC timeshare interest.

45.     Plaintiffs Kurt Grimm and Margaret A. Grimm of Pittstown, New Jersey purchased a TMC timeshare interest in 2002 having Contract No. 21609.

46.     Plaintiffs Neil J. Grossman and Judith Grossman of Houston, Texas purchased a TMC timeshare interest in 2003 having Contract No. 00222-02.

47.     Plaintiffs Mark Grunewald and Sally Grunewald of Lexington, Virginia purchased a TMC timeshare interest in 2002 having Contract No. 21836.

48.     Plaintiffs Katherine A. Hayden and John D. Houle of Philadelphia, Pennsylvania purchased a TMC timeshare interest in 2002 having Contract No. 21609.

49.     Plaintiffs Michael D. Hebert and Janet H. Hebert of Austin, Texas purchased a TMC timeshare interest.

50.     Plaintiffs Karl Hess and Camille Kurtz of Wilmington, North Carolina purchased a TMC timeshare interest in 2013 having Contract No. 47252.

51.     Plaintiff Linda M. Hooks of Silver Spring, Maryland purchased a TMC timeshare interest in 2006 having Contract No. 32917.

52.     Plaintiffs Mark D. Hughes and Michelle R. Hughes of Aurora, Colorado purchased a TMC timeshare interest in 2002 having Contract No. 18436.

53.     Plaintiff Melissa Jessup of Wilmington, Delaware purchased a TMC timeshare interest in 2000 having Contract No. 11415.

54.     Gregory P. Johnson and Nancy A. Johnson of Naples, Florida purchased a TMC timeshare interest in 2001 having Contract No. 15035.

55.     Plaintiff Gail E. Jordan of Columbia, South Carolina purchased TMC timeshare interests in 1997 having Contract Nos. 2653 and 2654.

56.     Plaintiffs Paul A. Jordan and Ulla P. Jordan of Honolulu, Hawaii purchased TMC timeshare interests in 2002 having Contract Nos. 19104 and 19105.

57.     Plaintiffs Patricia V. Kaplan and Jerome D. Kaplan of Chatham, New Jersey purchased a TMC timeshare interest in 2005 having Contract Nos. 32150.

58.     Plaintiffs Susan Kaplan and Larry Lasker of Eldridge, Maryland purchased a TMC timeshare interest in 2008 having Contract No. 38045.

59.     Plaintiff Sylwia M. Karwowska of San Francisco, California purchased a TMC timeshare interest in 2001 having Contract No. 15985.

60.     Plaintiff Audrey Kaufman of Egg Harbor, New Jersey purchased a TMC timeshare interest.

61.     Plaintiffs Marilyn Kautzer and Curtis Kautzer of San Jose, California purchased a TMC timeshare interest in 2005 having Contract No. 32063.

62.     Plaintiffs Dale R. Kichline, Jr. and Mary Ann Kichline of Easton, Pennsylvania purchased a TMC timeshare interest in 2002 having Contract No. 17905.

63.     Pauline Kontomanolis and Nikolas Kontomanolis of New Milford, New Jersey purchased a TMC timeshare interest in 1999 having Contract No. 7461.

64.     Plaintiffs John S. Kuhlthau and Carol C. Kuhlthau of Princeton, New Jersey purchased a TMC timeshare interest in 1998 having Contract No. 3473.

65.     Plaintiffs Christine Lally and Thomas R. Lally of Montgomery, New York purchased a TMC timeshare interest in 2003 having Contract No. 22297.

66.     Plaintiff Roger S. Lichtman of Newtown, Pennsylvania purchased a TMC timeshare interest.

67.     Plaintiffs Joseph A. Magliato and Robin Magliato of Smithtown, New York purchased a TMC timeshare interest in 2002 having Contract No. 21790.

68.     Plaintiffs David R. Mann and Suzanne C. Mann of Show Low, Arizona purchased a TMC timeshare interest in 2004 having Contract No. 00364-02.

69.     Plaintiffs James D. Mapes and Cynthia L. Mapes of Ponte Vedra, Florida purchased a TMC timeshare interest in 2006 having Contract No. 34270.

70.     Plaintiffs Cheryl D. Marsh and Benjamin H. Ticknor of Brandon, Mississippi purchased a TMC timeshare interest in 2006 having Contract No. 33332.

71.     Plaintiffs Robert D. Marth and Janet K. Marth of Glen Arbor, Michigan purchased a TMC timeshare interest in 2004 having Contract No. 29707.

72.     Plaintiffs Richard J. Marriott and Shirley Marriott of Mesquite, Texas purchased a TMC timeshare interest in 2004.

73.     Plaintiffs Brian P. McCue and Lucille M. McCue of Bayshore, New York purchased a TMC timeshare interest in 2003 having Contract No. 23927.

74.     Plaintiffs Kathy McMonigle and Charles McMonigle of Rocky Hill, Connecticut purchased a TMC timeshare interest in 2008 having Contract No. 36611.

75.     Plaintiff Nikki Mcnicol of Melbourne, Victoria, Australia purchased a TMC timeshare interest in 2011 having Contract No. 41418.

76.     John Mikesh of Mount Mourne, North Carolina purchased a TMC timeshare interest in 2006 having Contract No. 32070.

77.     Robert C. Miller and Carol Miller of Steamboat Springs, Colorado purchased a TMC timeshare interest.

78.     Plaintiffs James R. Moore III and Deborah L. Monlux of Brooklyn, New York purchased a TMC timeshare interest in 2003 having Contract No. 22310.

79.     Plaintiffs James D. Muir and Aretta B. Muir of Mendham, New Jersey purchased TMC timeshare interests in 2002 and 2003 having Contract Nos. 21522 and 26474, respectively.

80.     Plaintiffs Paul Nisselle of Albert Park, Victoria, Australia purchased a TMC timeshare interest in 1999 having Contract No. 6018.

81.     Plaintiffs Charles J. Neumann and Priscilla J. Neumann of East Hampton, New York purchased a TMC timeshare interest in 2004 having Contract No. 29128-2.

82.     Dennis O'Malley and Suzanne L. O'Malley of Flanders, New Jersey purchased a TMC timeshare interest in 2005 having Contract No. 30706-PH.

83.     Plaintiff Susan O'Neill of Dolyestown, Pennsylvania purchased a TMC timeshare interest in 2010 having Contract No. 40957.

84.     Plaintiffs Joan H. Orr and Janine Getek of Brewster, Massachussetts purchased a TMC timeshare interest in 2009 having Contract No. 42614.

85.     Plaintiffs Gary J. Paccagnini and Karen L. Paccagnini of Randolph, New Jersey purchased a TMC timeshare interest in 2005 having Contract No. 31366.

86.     Plaintiff Deborah Lee Peters of Delray Beach, Florida purchased a TMC timeshare interest.

87.     Plaintiffs Alexander K. Peyer and Kathleen Peyer of Eschenback, Switzerland purchased TMC timeshare interests in 1997 and 1998 having Contract Nos. 1619 and 4371, respectively.

88.     Plaintiffs Susan Pierson-O'Hara and Patrick O'Hara of Millsboro, Delaware purchased a TMC timeshare interest in 2007 having Contract No. 35110.

89.     Plaintiffs Kenneth A. Pignatello and Bernadette Pignatello of Verona, New Jersey purchased a TMC timeshare interest in 2004 having Contract No. 28451.

90.     Plaintiffs Jose M. Polanco and Carmen Y. Polanco of New Haven, Connecticut purchased a TMC timeshare interest in 1997 having Contract No. 9616.

91.     Plaintiffs David R. Press and Carolyn B. Press of Cumberland, Maryland purchased TMC timeshare interests in 2000 having Contract Nos. 10516 and 12515, respectively, and purchased a TMC timeshare interest in 2004 having Contract No. 28649.

92.     Plaintiffs Paul Price and Eileen Price of Hampton Bays, New York purchased a TMC timeshare interest in 2002 having Contract No. 20273.

93.     Plaintiff David S. Purvis of Stonington, Connecticut purchased a TMC timeshare interest.

94.     Plaintiff Thomas Reddy of East Hartford, Connecticut purchased a TMC timeshare interest in 2012 having Contract No. 43050.

95.     Plaintiffs Jean McEwen Rodby and Craig R. Rodby of Seattle, Washington purchased a TMC timeshare interest in 2007 having Contract No. 00832-02.

96.     Plaintiff Robert Rodriguez of Staten Island, New York purchased a TMC timeshare interest.

97.     Plaintiffs Marilyn Roll and Charles S. Roll of Wilmington, North Carolina purcashed a TMC interest in 1996 having Contract No. 2556.

98.     Plaintiffs Marcy D. Rookey and Ronald J. Rookey of Suffield, Connecticut purchased a TMC timeshare interest in 1999 having Contract No. 29218.

99.     Plaintiffs Henry T. Satt and Mary Anne Satt of Cape May, New Jersey purchased a TMC timeshare interest in 2001 having Contract No. 16294.

100.    Plaintiffs Robert D. Schrock, Jr. and Carolyn Schrock of Chapel Hill, North Carolina purchased a TMC timeshare interest in 2004 having Contract No. 29265.

101.    Plaintiffs Edward S. Schwartz and Diane K. Schwartz of New Haven, Connecticut purchased a TMC timeshare interest in 2005 having Contract No. 30838.

102.    Plaintiffs Susan Senn and James Senn of Arlington, Virgina purchased TMC timeshare interests in 2006 having Contract Nos. 32883 and 32885.

103.    Plaintiff Elaine K. Shapiro of Fair Lawn, New Jersey purchased a TMC timeshare interest in 2005 having Contract No. 31723.

104.    Plaintiffs Stanley Silverman and Gene Silverman of Brightwaters, New York purchased a TMC timeshare interest in 2004 having Contract No. 28628.

105.    Plaintiffs Robert A. Staehle and Gina C. Chung of Clayton, California purchased a TMC timeshare interest in 2009 having Contract No. 39324.

106.    Plaintiffs Mark Stevens and Tracey Stevens of Severna Park, Maryland purchased a TMC timeshare interest in 2010 having Contract No. 42647.

107.    Plaintiff Linda Strohmeyer of Fairfiled, Connecticut purchased a TMC timeshare in 2003 having Contract 22970.

108.    Plaintiffs John A. Taylor and Karen M. Taylor of North Haven, Connecticut purchased a TMC timeshare interest in 2004 having Contract No. 29902.

109.    Plaintiff Antonella Trisolino of Rome, Italy purchased a TMC timeshare interest.

110.    Plaintiff Brigitte Tutschka of Terryville, Connecticut purchased a TMC timeshare interest in 2001 having Contract 14483.

111.    Plaintiff Sharon Van de Grift of San Diego, California purchased a TMC timeshare interest.

112.     Plaintiff Christopher Volpe of Commack, New York purchased a TMC timeshare interest having Contract No. 29674.

113.   Plaintiffs Athol L. Wallace and Jill A. Wallace of West Melbounre, Florida purchased a TMC timeshare interest in 1998 having Contract No. 2663.

114.   Plaintiffs Thomas C. Warnock and Laura C. Warnock of Washington, D.C. purchased TMC timeshare interests in 2005 having Contract Nos. 30252 and 30285.

115.   Plaintiff Laurene Weaver of Patchogue, New York purchased a TMC timeshare in 2005.

116.   Plaintiff Andreas Weber of Karlsruhe, Germany purchased a TMC timeshare interest in 2011 having Contract No. 41415.

117.   Plaintiffs Kathleen L. Weber and William Shain of Kirkland, Washington purchased a TMC timeshare interest in 2005 having Contract No. 36038.

118.   Plaintiffs Walter J. Weir and Susan Weir of Harveys Lake, Pennsylvania purchased a TMC timeshare in 2002 having Contract No. 17674.

119.   Plaintiff Richard Weiss of Northbrook, Illinois purchased a TMC timeshare interest.

120.   Plaintiff David Wichers of Ellicott City, Maryland purchased a TMC timeshare interest.

121.   Plaintiffs Thomas S. Woodson and Anne K. Woodson of Westfield, Massachussetts purchased a TMC timeshare in 2013 having Contract No. 46202.

122.   Plaintiff Michael Worsham of Forest Hill, Maryland acquired the TMC timeshare interest purchased by his parents Branch Worsham and Nancy Worsham of Old Westbury, New York in 2006 having Contract No. 373.

123.   Plaintiffs George M. Worton and Rosanne E. Worton of The Villages, Florida purchased a TMC timeshare interest in 2003 under Contract No. 22231.

124.     Plaintiff Arlo Young of Salem, Oregon purchased a TMC timeshare interest in 2011 having Contract No. 42036-RS.

125.     Plaintiffs Neil D. Young and Irene I. Young of Berlin, Connecticut purchased a TMC timeshare interest in 2001 having Contract No. 14632.

126.     Plaintiff Richard Zierdt of North Bethesda, Maryland purchased a TMC timeshare in 2007 having Contract No. 35695.

127.     Plaintiffs Michael J. Zimmerman and Penny Kress Zimmerman of Richmond Hill, Georgia purchased a TMC timeshare interest in 2013 having Contract No. 47374.

128.     TMC is a New York State not for profit corporation having its principal office at 200 West 56 Street, New York, New York 10019, responsible for the management and day-to-day operations of The Manhattan Club timeshares.

129.     All TMC timeshare interests purchased by Plaintiffs are located at 200 West 56 Street, New York, New York 10019.

130.     The Plaintiffs paid on average several tens-of-thousands of dollars to purchase their TMC timeshare interests.

131.     Defendant Ian Bruce Eichner is an individual whose business address is 30 West 21st Street, 11th Floor, New York, New York 10010. Ian Eichner was, at relevant times, the manager of Urban and the managing member of Manhattan Club.

132.     Defendant Leslie Eichner is an individual whose business address is 30 West 21st Street, 11th Floor, New York, New York 10010. Leslie Eichner was, at relevant times, a member of Urban.

133.     Defendant Stuart Eichner is an individual whose business address is 30 West 21st Street, 11th Floor, New York, New York 10010.  Stuart Eichner was, at relevant times, the President of TMC and a member of Urban.

134.     Defendants Ian Bruce Eichner, Leslie Eichner and Stuart Eichner are members and principals of Defendants T. Park and O. Park.

135.     Defendants Ian Bruce Eichner, Leslie Eichner and Stuart Eichner are the managing members of Park Central.

136.     Defendant Lager is an individual whose business address is 200 West 56th Street, New York, New York 10019. Lager was, at relevant times, the Vice President of TMC.

137.     Defendant T. Park is a New York State limited liability company having its principal office at 870 7th Avenue, New York, New York 10019. T. Park was involved in the offering of timeshare interests at The Manhattan Club.

138.     Defendant O. Park is a New York State limited liability company having its principal office at 870 7th Avenue, New York, New York 10019. O. Park was involved in the offering of timeshare interests at The Manhattan Club.

139.     Defendant Park Central is a New York State limited liability company having its principal office at 870 7th Avenue, New York, New York 10019. Park Central, as the managing member of T. Park and O. Park, made or took part in the offering of timeshare interests at the The Manhattan Club and is an undisclosed principal of TMC.

140.     Defendant Marketing is a New York State limited liability company having its principal place of business located at 200 West 56 Street, New York, New York 10019. Manhattan was, at relevant times, the selling agent for the offering of timeshare interests at The

Manhattan Club. Defendant Ian Bruce Eichner is the managing member of Marketing, and Defendants Leslie Eichner and Stuart Eichner are also members of Marketing.

141.    Defendant Urban is a New York State limited liability company having its principal place of business located at 200 West 56 Street, New York, New York 10019. Defendants Ian Bruce Eichner, Leslie Eichner, Stuart Eichner, Lager, T. Park, O. Park, Park Central, Marketing and Urban, and their successors in interest, will sometimes hereinafter be collectively referred to as the "Eichner Defendants".

142.    Defendant BlueGreen, a Florida State corporation having its principal place of business located at 4960 Conference Way North, Suite 100, Boca Raton, Florida 33431, is a timeshare operator that in June 2018 assumed the rights and responsibilities of the Eichner Defendants vis-à-vis TMC, became its successor in interest, purchased TMC's inventory and the future right to control the management contract, and presently occupies four of the seven existing seats on TMC's board of directors.

II.    **JURISDICTION AND VENUE**

143.    The Court has jurisdiction of the case as a federal question arising under RICO, 18 U.S.C. §1964(c) and 28 U.S.C. §1332.

144.    This Court has supplemental jurisdiction over Plaintiffs' other claims.

145.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) and (b) as the Defendants all conduct business in this district and resolution of the issues between Plaintiffs and Defendants, respectively, are appropriate to be adjudicated in this district.

146.    Defendants have each acted against each of the Plaintiffs in ways that have caused harm to said Plaintiffs in this jurisdiction.

### III.     FACTS

**A.     The Eichner Defendants Made Materially False Representations When Selling TMC Timeshare Interests To Entice Plaintiffs To Purchase**

147.     The Eichner Defendants communicated to Plaintiffs they were buying and investing in New York City real estate and that is why they were receiving a deeded property interest.

148.     The Eichner Defendants communicated to Plaintiffs that TMC timeshares were the only property of its kind in New York City.

149.     The Eichner Defendants communicated to Plaintiffs that TMC timeshares would only increase in value.

150.     The Eichner Defendants communicated to Plaintiffs that because of the demand for TMC timeshares, Plaintiffs could easily sell their timeshare interests on the open market to third parties for a profit, and that's why the Eichner Defendants had a right of first refusal to buy timeshares back from the Plaintiffs if they ever decided they wanted to sell.

151.     The Eichner Defendants communicated to Plaintiffs that if they sought to sell their timeshares but could not do so on the open market, the Eichner Defendants would purchase the timeshare back for the respective purchase price that each such Plaintiff paid.

152.     Defendants communicated to Plaintiffs that they could easily reserve dates to use their timeshares whenever they wanted, without hassle.

153.     Defendants communicated to Plaintiffs that the initial annual maintenance fee assessment of several hundred dollars a year at the time of purchase would increase no more than the cost of living, if at all, but would likely decrease as such fees would be subsidized by additional sales of TMC timeshares.

**B.      The Eichner Defendants Deliberately Made Material Omissions
When Selling TMC Timeshare Interests To Plaintiffs**

154.      The Eichner Defendants failed to communicate to Plaintiffs that the Eichner

Defendants would in fact not buy back timeshare interests from Plaintiffs that Plaintiffs were

unable to sell on the open market.

155.      The Eichner Defendants failed to communicate to Plaintiffs that TMC, though

controlled by the Eichner Defendants, would not be controlled in a manner to satisfy the

promises made by the Eichner Defendants to the Plaintiffs.

156.      The Eichner Defendants failed to communicate to Plaintiffs that the maintenance

fees were artificially set at a subsidized rate, and that as the subsidy was withdrawn, that the

maintenance fees would rise faster than the cost of living.

157.      The Eichner Defendants failed to communicate to Plaintiffs that because the

maintenance fee is set on a full cost basis plus twenty percent additional fee to the management

company, that there was no incentive to maintain the maintenance fee at a low level, and a

perverse incentive to permit significant increases in costs.

158.      The Eichner Defendants failed to communicate to Plaintiffs that the maintenance

fees would rapidly rise above the market value for comparable accommodations in hotels, and

transient rental within TMC, and therefore the value of the timeshare interest would become

zero.

159.      The Eichner Defendants failed to communicate to Plaintiffs that they were

committing frauds, and that the nature and numerosity of these frauds to all TMC purchasers

would soon prevent even partial fulfillment of the promises made.

160.      The Eichner Defendants failed to communicate to Plaintiffs that they would in

fact not be able to easily reserve dates to use their timeshares whenever they wanted without

hassle, but would instead have to make such reservations many months, e.g. six to twelve months in advance of the dates sought.

161.     The Eichner Defendants failed to communicate to Plaintiffs that they would allow members of the general-public, i.e., non-TMC members who did not pay tens of thousands of dollars to purchase TMC timeshares, would be allowed to reserve and occupy TMC timeshares like a hotel room.

162.     The Eichner Defendants failed to communicate to Plaintiffs that they would assure availability of TMC rooms for transient guests, and thereby preclude Plaintiffs as TMC members from being able to take advantage of their deeded interests.

163.     The Eichner Defendants operated a reservation system that lacked transparency and afforded preferences to some interests over others, and as a result, obtaining reservations for desired dates even on the first day of reservation availability was difficult or impossible.

164.     The Eicher Defendants withheld from the Plaintiffs that holiday and peak demand dates were unavailable to them under their contracts, and withheld copies of written materials detailing restrictions until after recission of the timeshare sale was impossible.

165.     The Eichner Defendants failed to communicate to Plaintiffs that members of the general-public, would be given priority over TMC members to reserve TMC timeshares.

166.     The Eichner Defendants failed to communicate to Plaintiffs that they would be unable to make reservations to use their TMC timeshares and told no timeshares were available for use because they were instead being made available for reservation and use by members of the general-public.

167.     The Eichner Defendants failed to communicate to Plaintiffs that annual maintenance fees would in fact increase significantly, and certainly more than the cost of living.

168.     The Eichner Defendants failed to communicate to Plaintiffs that annual maintenance fees would in fact not be subsidized by sale of additional TMC timeshares, and rather that as availability of timeshares diminished, maintenance fees would rise precipitously.

169.     The Eichner Defendants failed to communicate to Plaintiffs that annual maintenance fees would in fact increase to thousands of dollars a year.

170.     The Eichner Defendants failed to communicate to Plaintiffs that the inability to easily reserve dates to use TMC timeshares together with the increase in annual maintenance fees to several thousands of dollars a year would render their timeshare interests worthless, such that they could not be sold on the open market to the general public.

171.     The Eichner Defendants failed to communicate to Plaintiff's that by raising TMC's annual maintenance fees above a reasonable value and thereby diminishing the fair market value of the timeshare interest, the Defendants would be in a position to reacquire TMC timeshare interests from members in arrears for $100.

172.     The Eichner Defendants failed to communicate to Plaintiffs that reservations would be difficult to make and annual maintenance fees would be increased to such an extent as part of deliberate effort to get members to stop paying such fees, enabling The Eichner Defendants to offer to forgive such arrearages in exchange for the members transferring the timeshare interest back to the Eichner Defendants thereby enabling the Eichner Defendants to reacquire many units that they had sold for tens of thousands of dollars and on which they had been paid thousands of dollars in annual maintenance fees, for $100.

173.     On information and belief, the forgiveness of arrearages and transfer of the acquired units for sale does not result in revenue to TMC.

174.    The Eichner Defendants failed to communicate to Plaintiffs that the Eichner Defendants deliberately oversold the TMC timeshare by selling more timeshare intervals than could be provided for use by members, including by giving non-TMC members priority in making reservations.

175.    The Eichner Defendants failed to communicate to Plaintiffs that the Eichner Defendants deliberately withheld timeshare units from availability for timeshare members in favor of use of the timeshare units to benefit the pecuniary interests of the Eichner Defendants.

176.    Plaintiffs were not told that after they closed and purchased their TMC timeshares, that they would receive TMC's Offering Plan and Bylaws document that would include provisions explicitly refuting the representations referenced in paragraphs 148-154 above that were made to entice them to purchase their timeshare interests.

177.    Defendants were not told that after they closed and purchased their TMC timeshares, that they would receive TMC's Offering Plan and Bylaws document that would explicitly include provisions corresponding to the omissions referenced in paragraphs 155-177 above, that were omitted to avoid dissuading them to purchase their timeshare interests.

178.    TMC's Offering Plan and Bylaws do not operate to negate the covenants made by or on behalf of Defendants, and the fact that the TMC's Offering Plan and Bylaws contradict the promises made does not mitigate damages of Plaintiffs.

179.    The breaches by Defendants are continuing, in that with each maintenance fee invoiced and/or paid, and each reservation attempted, a new breach occurs.

180.    Any corporate veil between the Defendants and TMC must be pierced, to inure liability to Plaintiffs for the actions of TMC, because TMC is the agent of Plaintiffs.

181.   As alleged in this Complaint, the acts of Defendants are fraudulent, perpetrate wrongdoing, and result in injustice to Plaintiffs through the instrumentality of TMC.

182.   The Defendants have failed to maintain the separate identities of themselves from TMC, and have acted through TMC for their own benefit and in conflict with the benefit of the Plaintiffs.

183.   The business judgement rule does not protect Defendants from accountability for the acts of their appointed directors of TMC, and management company.

184.   Defendants operate and control TMC, provides all officers of TMC, and TMC is the alter ego of Defendants.

185.   TMC is a mere instrumentality of Defendants.

186.   TMC was used by Defendants to mislead Plaintiffs and to perpetrate a fraud upon them.

187.   At relevant times, accounts of TMC were used by Plaintiffs for their own pecuniary benefit.

**C.   Complaints By Purchasers Of TMC Timeshares Resulted In Legal Proceeding Brought By New York State Attorney General In Which Eichner Defendants Admitted Variety Of Wrongful Conduct**

188.   Upon learning of, or suspecting, the falsity of the Eichner Defendants' representations referenced in paragraphs 147-153 above and/or the Eichner Defendants' omissions referenced in paragraphs 154-177 above, many purchasers of TMC timeshares complained to the New York State Attorney General ("NYAG") who in approximately 2013 began an investigation of the Eichner Defendants' improper practices at TMC that appeared to be violative of the Martin Act, New York General Business Law ("GBL") §§ 352 et seq.

189.    As a result of its investigation, the NYAG thereafter commenced a corresponding legal proceeding, *Schneiderman v. Eichner et al.*, Index No. 451536/2014, against the Eichner Defendants pursuant to GBL § 354.

190.    As a result of the NYAG's investigation and the *Schneiderman* proceeding, the Eichner Defendants entered into an Assurance of Discontinuance ("AOD") with the NYAG dated August 14, 2017 in which the Eichner Defendants admitted committing numerous improprieties in selling TMC timeshares, and in managing and operating TMC. A copy of the AOD is attached hereto as Exhibit 1.

191.    In the AOD, the Eichner Defendants also admitted advising prospective TMC members at the time of their purchase that they were willing "to buy back the timeshare interest at the price paid by the purchase" and that they could recoup their investment plus appreciation because they were investing in Manhattan real estate. *See* AOD, ¶ 43.

192.    The NYAG's investigation found that the Eichner Defendants engaged in numerous false and deceptive practices in selling TMC timeshare interests to the public, and engaged in other fraudulent conduct in managing and operating TMC, including the following:

> i.    Misrepresenting the number of available units at TMC. *See* the Second Affirmation of Assistant NYAG Serwat Farooq in *Schneiderman* ("Farooq Affirmation"), pp. 4-9, attached hereto as Exhibit 2;
>
> ii.   Failing to pay maintenance fees on time and nevertheless earning millions of dollars in rental income on its inventory from non-members, while reducing inventory that would otherwise be available to TMC members. *See* Farooq Affirmation, pp. 9-11;
>
> iii.  The Offering Plan's representations concerning the relationship between TMC and Urban are misleading. *See* Farooq Affirmation, pp. 14-19;

iv.      TMC Board of Director member Lager was actively involved in selling TMC units including managing the sales staff. *See* Farooq Affirmation, pp. 22-25;

v.      Defendants did not fully comply with all discovery requirements ordered by the court and systematically delayed the NYAG's investigation. *See* Farooq Affirmation, p. 30; and

vi.      Defendants including Lager repeatedly violated the court's order by repeatedly withdrawing funds from frozen bank accounts. *See* Farooq Affirmation, p. 39.

vii.      Requesting payment of maintenance fees in advance of their actual due date. *See* Farooq Affirmation, ₱ 36; FN 4; ¶¶ 38, 69-78;

viii.      Providing preferential reservation treatment to certain TMC members. *See* Farooq Affirmation, ¶ 37. (The fair operation of the reservation system is another core function of TMC, and the failure to properly supervise that function breached a duty to the members attributable to TMC);

ix.      Allowing Defendants to reserve rooms while delinquent in paying maintenance fees, violating the Offering Plan. *See* Farooq Affirmation, ¶¶ 47-68.(The assessment and collection of maintenance fees is a core TMC function not attributable to the Sponsor);

x.      Removing rooms from available inventory for use by paying TMC members so they could instead be used without payment by Defendants as unpaid "show rooms". *See* Farooq Affirmation, ¶¶ 41-47. (These rooms are owned by TMC, and access to them is controlled by TMC. By precluding paying members from occupying those rooms, TMC breached a duty it owed to its members); and

xi.      Compensating Officers and Directors affiliated with Defendants in violation of the offering plan. *See* Farooq Affirmation, ¶¶ 81-82, 99, 107-118.

193.      In finding that the Eichner Defendants engaged in the various wrongdoing identified in paragraph 48 above, the NYAG determined that:

i.      TMC's Board of Directors hired Eichner Defendant Urban to manage and operate TMC. *See* Farooq Affirmation, ¶ 12;

ii.      Urban owed a fiduciary duty to TMC. *See* Farooq Affirmation, ₱ 88;

iii.   Urban in turn hired Eichner Defendant Marketing to sell TMC timeshares to the public. *See* Farooq Affirmation, ¶¶ 91-116;

iv.   The Eichner Defendants sold TMC timeshares to the public through Marketing and Urban. *See* Farooq Affirmation, ¶¶ 94-95, 100, 84, 90 & FN 5, 104, 108-129;

v.   Until 2014, Urban had no employees of its own who received W-2s, but that they instead received W-2s from and were paid by Marketing. *See* Farooq Affirmation, ¶¶ 92, 95, such that it "it [was] unclear how Urban could have rendered any services for which they were paid over $6.4 million annually." *See* Farooq Affirmation, ¶ 93;

vi.   Although Urban was ostensibly hired by TMC's board of directors to manage and operate TMC (*see* Farooq Affirmation, ¶ 12), TMC's operating budget is funded by the maintenance fees paid by TMC members and by the renting of rooms at The Manhattan Club to the general-public, and not by the fees paid to Urban or by Defendants' sales of TMC timeshares. *See* Farooq Affirmation, ¶ 116; and

vii.   It was "unclear how Urban could have rendered any services for which they were paid over $6.4 million annually", *see* Farooq Affirmation, ¶ 93, and that it therefore appears that TMC members paid twice for duplicative and unearned management fees.

194.   As part of the AOD, the Eichner Defendants agreed to, among other conditions, pay $6.5 million dollars as restitution for their wrongdoing, sell their interest in TMC by 2021, and thereafter be barred for life from the timeshare industry. *See* AOD, ¶¶ 61, 63, 65.

**D.    Wrongful Conduct Continues At TMC Following The AOD**

195.   Despite agreeing to the entry of the AOD, the Eichner Defendants failed to conduct an investigation or take any steps to remedy the wrongs that they admitted to therein. For example, the Eichner Defendants issued no report; made no changes in management, maintenance fees, and/or reservation policies at TMC; continue to maintain relationships with the same management company, i.e., Urban; and took no action against any of the Eichner Defendants.

196.     The Eichner Defendants had an obligation through their control of TMC to preserve the assets and integrity of TMC, and by failing to remediate the admitted wrongs perpetuated by the Eichner Defendants, have breached TMC's Offering Plan and/or Bylaws, failed to meet their obligation under contract law of good faith and fair dealing, and failed to meet the statutory standards for directors and officers of New York Not for Profit Corporations established by law.

197.     The Eichner Defendants never advised any of the Plaintiffs – or any TMC member, of the NYAG's investigation into the Eichner Defendants' actions at TMC, of the NYAG's filing of the *Schneiderman* proceeding, or of the resulting AOD in which the Eichner Defendants admitted committing multiple acts of wrongdoing. As such, the Eichner Defendants' wrongful conduct vis-à-vis TMC members includes efforts to shield TMC members from knowing about the Eichner Defendants' misdeeds. Most Plaintiffs only learned about the NYAG investigation and the AOD from undersigned counsel beginning in 2018.

198.     The Eichner Defendants' failure to keep TMC members informed of important, e.g., material, developments regarding the management and operation of TMC continued even after the entry of the AOD. For example, the Eichner Defendants failed to inform TMC members prior to the August 2018 Annual Meeting that the four seats on TMC's seven-member board of directors that were previously held by Eichner Defendants had already been taken over by Defendant BlueGreen.

199.     As successor to the Eichner Defendants' interests in TMC by virtue of their 2018 agreement whose terms they have kept secret and never disclosed to Plaintiffs or other TMC members, Defendant BlueGreen also assumed joint liability for the prior wrongdoing at TMC that the Eichner Defendants committed, and for the wrongdoing at TMC that continues today.

200.   Defendant BlueGreen has continued the Eichner Defendants' policy of failing to provide information in a transparent manner to Plaintiffs or any TMC member regarding TMC's management and operation. For example, TMC's 2019 operating budget, allocates $21,133,775 for "Labor" expenses and $6,482,049 for "Management Fees" that are presumably paid to TMC's management company, e.g., Urban. *See* TMC 2019 Operating Budget ("2019 Budget"), p. 3, Schedule B, attached hereto as Exhibit 3. However, the "Labor" expenses include payments for 1 General Manager, 2 Managers, 7 Managers, 6 Assistant Managers, and 1 Engineering Manager. Thus, it appears that the management fees are actually being paid from the Labor portion of the budget, and not the "Management Fee" portion of the budget. This is especially troubling in light of the NYAG's finding that Urban was paid this fee for services it did not render. *See* Farooq Affirmation, ¶ 93.  Note that the 2019 Budget, adopted after BlueGreen assumed control of TMC, is not qualitatively different from the prior 2018 budget when the Eichner Defendants were in control of TMC.

201.   Similarly, the 2019 Budget indicates that TMC collected $5,110,612 in real estate taxes and paid $5,110,612 in real estate taxes. *See* 2019 Budget, p. 3, Schedule B attached hereto as Exhibit 3. However, Footnote 15 to Schedule B of the 2019 Budget indicates that the Contingency for Association Owned Intervals expense of $1,328,848 represent charges for "real estate taxes", thereby seemingly indicating that the real estate taxes collected and the real estate taxes paid are in fact not the same as Schedule B purports to show. *See* 2019 Budget, p. 5.

202.   Defendant BlueGreen has failed to provide any substantive information, material or otherwise, to Plaintiffs or any TMC member regarding BlueGreen's proposed "buy back" program wherein BlueGreen seeks to acquire the timeshare interests of Plaintiffs and other TMC members in arrears on their annual maintenance fees for the sum of $100 and the forgiveness of

maintenance fee arrearages. For example, BlueGreen has failed to provide any information regarding:

    i.      how the $100 figure was arrived at;

    ii.     the mechanism by which the timeshare interests are able to be and are being transferred to BlueGreen;

    iii.    the financial agreement between TMC and BlueGreen regarding this program including if or how are the arrearages are being paid and who is paying them; and

    iv.    whether BlueGreen has entered into an agreement with any of the Eichner Defendants, including if or how they will benefit financially from such buy backs.

203.    Defendant BlueGreen's "buy back" program enables Defendants to recoup timeshare interests that Plaintiff TMC members presently in arrears paid tens of thousands of dollars to purchase and then spent thousands of additional dollars on annual maintenance fees without repaying those Plaintiffs any of the tens of thousands of dollars they each spent to originally acquire such interests.

204.    Defendant BlueGreen's "buy back" program is a breach of the Eichner Defendant's promise to repurchase the timeshare interests for the price paid by timeshare members.

205.    Defendant BlueGreen's "buy back" program will continue until a significant amount of the millions of dollars of equity invested by Plaintiffs presently in arrears to acquire their TMC timeshares will be forfeited.

206.    Upon information and belief, the Eichner Defendants and Defendant BlueGreen have both failed to advise Plaintiffs or any TMC member that BlueGreen has terminated its agreement to acquire the Eichner Defendants' interest in TMC and that the parties are presently involved in an adverse legal proceeding that is being arbitrated.

207.    Plaintiffs continue today to be unable to sell their TMC timeshares to the general-public or back to the Defendants.

208.    Plaintiffs continue today to have difficulty reserving dates to use their TMC timeshares on same-day or short notice, while non-members of TMC have no difficulty doing so, being able to easily reserve rooms at The Manhattan Club online from third-party vendors such as expedia.com, hotels.com, and travelocity.com, and even from TMC itself, at a lower cost per night than paid by members.

209.    Plaintiffs continue today to be charged excessive annual maintenance fees for their TMC timeshares that have no relation to the Defendants' actual costs to operate TMC. Since Defendants presumably recoup TMC's operating costs through maintenance fees, and the nightly rate of approximately $200 that TMC charges non-TMC members for a room at The Manhattan Club is competitive with the rate for comparable rooms charged by other hotels, this appears to mean that Defendants' maintenance fees for TMC are well above those of competing establishments since a non-TMC member could stay at The Manhattan Club for one-week for $1400 while a TMC member having a one-week timeshare is charged approximately $2500 to $3000 for a one-week stay. *See* screen shot from Google search attached hereto as Exhibit 4, and 2019 Budget, p.1, attached hereto as Exhibit 3.

210.    Defendants' various wrongful conduct referenced in ¶¶ 147-209 above, including, but not limited to: failing to buy timeshares interests back from Plaintiffs for their purchase price; preventing Plaintiffs from easily reserving time at The Manhattan Club; and charging excessive annual maintenance fee, has rendered Plaintiffs' respective TMC timeshare interests worthless.

## FIRST COUNT

### BREACH OF CONTRACT

211.    Plaintiffs repeat each of the allegations contained in paragraphs 1 through 210 of the Complaint with the same force and effect as if fully set forth herein.

212.    The Eichner Defendants contracted with each Plaintiff for the sale of a TMC timeshare interest as described above.

213.    Bluegreen is responsible for the current "buy back" campaign.

214.    Bluegreen is a beneficiary of the "buy back" campaign, and receives preferential treatment with respect to the Plaintiffs, other TMC members, and the general public, with respect to acquisition of timeshare interests of Plaintiffs and other TMC members in arrears.

215.    Bluegreen is essentially acquiring timeshare interests from Plaintiffs and other TMC members in arrears on their annual maintenance fees for the amount of the arrearages plus $100, and then forgives the arrearages, resulting in a proprietary net gain in the transaction.

216.    Bluegreen is not informing Plaintiffs and other TMC members who relinquish their timeshare units in the "buy back" program that the forgiveness of debt is taxable income.

217.    On information and belief, Defendants are fraudulently exposing Plaintiffs to potential tax liability through TMC for misreporting of taxable transactions to federal and state tax authorities.

218.    The Eichner Defendants represented to each Plaintiff that they would be able to easily make same-day or short notice reservations to use their TMC timeshare.

219.    The Eichner Defendants held significant inventory of nights at TMC, and therefore even if TMC itself could not fulfill the promises made to Plaintiffs, the Eichner Defendants themselves could fulfill these promises from their own inventory, but failed to do so.

220.    The Eichner Defendants did not honor their promises to permit and fulfill same-day or short notice reservations. Prior to the AOD, Plaintiffs were often unable to make a same-day or short notice reservations to use their timeshare when they sought do so. In fact, they often had to make reservations nine, sometimes even twelve, months in advance of the date when they could secure a reservation to use their timeshare. Plaintiffs' inability to easily make reservations continues today as they are presently often unable to make same-day or short notice reservations to use their timeshares but must instead book months in advance.

221.    Plaintiffs are often unable to make a same-day or short notice reservation to use their timeshare when they seek to do so, despite Defendants simultaneously making rooms at The Manhattan Club available online on a same-day or short notice basis to the general public who are not TMC members.

222.    This failure by Defendants to enable Plaintiffs to easily make same-day or short notice reservations to use their TMC timeshare, which ability was an important enticement in convincing Plaintiffs to purchase their respective timeshares interests, constituted a breach of each contract between the Eichner Defendants and Plaintiff.

223.    On information and belief, TMC refuses to accept same-day or short notice reservations from members while having vacancies which would accommodate the members.

224.    When TMC refuses to accept same-day or short notice reservations from members, Defendants refuse to allocate their own inventory of nights to satisfy Plaintiffs' requests.

225.    TMC makes available rooms to the general public on a nightly basis, and on information and belief, has refused to fulfill member requests for rooms under their timeshare agreement, while renting available rooms to the general public.

226.     In 2018, Bluegreen succeeded to the obligations of the Eichner Defendants vis-à-vis TMC.

227.     Bluegreen assumed at least joint responsibility for unfulfilled covenants made by the Eichner Defendants to Plaintiffs.

228.     Bluegreen, after assuming control over TMC's Board of Directors, took no steps to remediate or discontinue the inequities and frauds perpetuated by the Eichner Defendants.

229.     Plaintiffs have not breached any obligation they owe, respectively, to the Defendants under this contract.

230.     By virtue of the Defendants' actions described above, they committed a wrongful act which contravenes, and thus breaches the contractual agreement with each Plaintiff.

231.     Each Plaintiff has been damaged and continues to be damaged by the Eichner Defendants' willful and intentional breach of the contract in an amount to be determined at trial.

## SECOND COUNT

## BREACH OF CONTRACT

232.     Plaintiffs repeat each of the allegations contained in paragraphs 1 through 231 of the Complaint with the same force and effect as if fully set forth herein.

233.     Defendants contracted with each Plaintiff for the sale of a TMC timeshare interest as described above.

234.     In connection therewith, Defendants represented to each Plaintiff that the annual maintenance fees they were going to be charged:

      i.     would remain reasonable and would stay low;

      ii.     would increase no more than the cost of living if they did increase; and

      iii.     would likely decrease as a result of being subsidized as more TMC timeshares were sold which, Plaintiffs were told as part of Defendants'

sales pitch, was likely as TMC timeshares were in big demand because they were unique.

235.   However, the Defendants did not honor these representations. The annual maintenance fees did not decrease, stay reasonable, nor did the increases track the cost of living increase. The average annual maintenance fee for a one-week TMC timeshare has gone from approximately $600 prior to the AOD to approximately $2500-$3000 today, an increase of at least 20%, and more than the cost of one-week stay in a New York City hotel room comparable to, if not nicer than, the TMC timeshares.

236.   These failures by Defendants to keep annual maintenance fees low, to limit any increase to the cost of living, and to decrease such fees, respectively, which representations were important enticements in convincing Plaintiffs to purchase their respective timeshares interests, constitute a breach of each contract between the Defendants and Plaintiff.

237.   Bluegreen is responsible for the current "buy back" campaign.

238.   Bluegreen is a beneficiary of the "buy back" campaign, and receives preferential treatment with respect to the Plaintiffs, other TMC members, and the general public, with respect to acquisition of timeshare interests of Plaintiffs and other TMC members in arrears.

239.   Bluegreen is essentially acquiring timeshare interests from Plaintiffs and other TMC members in arrears on their annual maintenance fees for the amount of the arrearages plus $100, and then forgives the arrearages, resulting in a proprietary net gain in the transaction.

240.   Bluegreen is not informing Plaintiffs and other TMC members who relinquish their timeshare units in the "buy back" program that the forgiveness of debt is taxable income.

241.   On information and belief, Defendants are fraudulently exposing Plaintiffs to potential tax liability through TMC for misreporting of taxable transactions to federal and state tax authorities.

242.     Plaintiffs have not breached any obligation they owe, respectively, to the Defendants under this contract.

243.     By virtue of the Defendants' actions in excessively increasing Plaintiff's annual maintenance fees, Defendants committed a wrongful act which contravenes, and thus breaches the contractual agreement with each Plaintiff.

244.     Each Plaintiff has been damaged and continues to be damaged by Defendants' willful and intentional breach of the contract in an amount to be determined at trial.

**THIRD COUNT**

**BREACH OF CONTRACT**

245.     Plaintiffs repeat each of the allegations contained in paragraphs 1 through 244 of the Complaint with the same force and effect as if fully set forth herein.

246.     The Eichner Defendants contracted with each Plaintiff for the sale of a TMC timeshare interest as described above.

247.     In connection therewith, The Eichner Defendants represented to each Plaintiff that:

        i.     their respective timeshare interests would increase in value;

        ii.    they could sell their timeshare to the general-public; and

        iii.   if they were unable to sell their timeshare to the general-public, they could sell it back to Defendants for the purchase price the Plaintiff paid.

248.     However, the Eichner Defendants did not honor these representations. Plaintiffs' respective timeshare interests have not increased in value but have instead, because of Defendants' wrongful actions, plunged in value and are presently effectively worthless. Plaintiffs have therefore been unable sell their timeshares to the general-public, and Defendants have

refused to purchase any timeshare from any Plaintiff that has sought to sell it back to them, other than as a $100 repurchase offer from members in arrears.

249.    This failure by Defendants to buy back TMC timeshares from Plaintiffs, which with the other three representations referenced in ¶¶ 234 i to 234 iii above, were important enticements in convincing Plaintiffs to purchase their respective timeshares interests, constitute a breach of each contract between Defendants and Plaintiff.

250.    On information and belief, at the time these representations were made, they were knowing false, i.e., the Eicher Defendants had no intention of buying back timeshare interests from respective Plaintiffs for the amount paid.

251.    Plaintiffs have not breached any obligation they owe, respectively, to the Defendants under this contract.

252.    By virtue of the Defendants' actions in refusing to buyback timeshares, Defendants committed a wrongful act which contravenes, and thus breaches the contractual agreement with each Plaintiff.

253.    The acts of the Eichner Defendants amount to a fraud in the inception, and a failure of material consideration for the transaction.

254.    A remedy for these acts is recission of the timeshare purchase agreement and repayment of the amounts paid to the Eichner Defendants.

255.    Each Plaintiff has been damaged and continues to be damaged by Defendants' willful and intentional breach of the contract in an amount to be determined at trial.

## FOURTH COUNT

## TORTIOUS INTERFERENCE WITH CONTRACT

256.    Plaintiffs repeat each of the allegations contained in paragraphs 1 through 255 of the Complaint with the same force and effect as if fully set forth herein.

257.    In New York State, the elements of the tort of interference with contract are "[1] the existence of [a] valid contract with a third party, [2] defendant's knowledge of that contract, [3] defendant's intentional and improper procuring of a breach, and [4] damages." *White Plains Coat & Apron Co. v. Cintas Corp.*, 8 N.Y.3d 422, 426, 867 N.E.2d 381, 835 N.Y.S.2d 530 (N.Y. 2007); *accord Rose v. Different Twist Pretzel, Inc.*, 123 A.D.3d 897, 898, 999 N.Y.S.2d 438 (N.Y. App. Div. 2nd Dep't 2014).

258.    The Eichner Defendants wrongfully interfered with the contract between Plaintiffs and TMC by installing directors and imposing a management company that failed to engage in fair practices and dealings with Plaintiffs, and otherwise failed to provide a fair and reasonable reservation management system, and to avoid undue escalation of annual maintenance fees.

**259.**    Each of the Plaintiffs contracted with TMC represented by respective deed, which is subject to their Offering Plan and Bylaws document. The Eichner Defendants knew of the existence of these contracts. Defendants intentionally engaged in a series of wrongful actions as referenced in ¶¶ 147-210 above that interfered with each of these contracts.

260.    Each Plaintiff has been damaged and continues to be damaged by Defendants' willful and intentional interference with their contracts in an amount to be determined at trial.

## FIFTH COUNT

## BREACH OF FIDUCIARY DUTY

261.    Plaintiffs repeat each of the allegations contained in paragraphs 1 through 260 of the Complaint with the same force and effect as if fully set forth herein.

262.    New York State GBL § 349(h) provides a private right action to consumers seeking to recover damages caused by deceptive trade practices. A Plaintiff alleging a violation of GBL § 349 must prove three elements: the challenged act or practice was consumer-oriented; it was misleading in a material way; and the plaintiff suffered injury as a result of the deceptive act. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995).

263.    Defendants' sales of TMC timeshare interests to Plaintiffs was each a consumer-oriented act.  The Defendants' representations, omissions and other actions referenced in ¶¶ 147-210, 221, 234 and 247 above were misleading in violation of GBL § 349(h).

264.    Each Plaintiff has been damaged and continues to be damaged by Defendants' willfully and intentionally deceptive acts in an amount to be determined at trial.

## SIXTH COUNT

## COMMON LAW FRAUD

265.    Plaintiffs repeat each of the allegations contained in paragraphs 1 through 264 of the Complaint with the same force and effect as if fully set forth herein.

266.    In New York State, to state a claim for fraud, a plaintiff must allege a material misrepresentation of fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages. *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 558 (2009).

267.     The Defendants' representations, omissions and other actions referenced in ¶¶ 147-210, 221, 234 and 247 above, all included material misrepresentations of fact that Defendants knew were false. Defendants intended for each Plaintiff to rely on these misrepresentations to induce them to purchase TMC timeshares, and to continue paying TMC's annual maintenance fees.

268.     Each Plaintiff justifiably relied on Defendants' material misrepresentations of fact to purchase their respective TMC timeshare interest and to pay their annual maintenance fees.

269.     Each Plaintiff has been damaged and continues to be damaged by Defendants' willful and intentional fraudulent acts in an amount to be determined at trial.

## SEVENTH COUNT

### FEDERAL RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT
### 18 U.S.C. § 1962(d) (CONSPIRACY TO VIOLATE §1962(c))

270.     Plaintiffs repeat each of the allegations contained in paragraphs 1 through 269 of the Complaint with the same force and effect as if fully set forth herein.

271.     Defendants have conspired to commit various mail and wire fraud schemes to defraud Plaintiffs in connection with their purchase and ownership of TMC timeshare interests.

**The RICO Parties**

272.     Defendants Ian Bruce Eichner, Leslie H. Eichner, Stuart P. Eichner, Lager, T. Park, O. Park, Park Central, Marketing, Urban, Wirshba and BlueGreen, respectively, are each a "person" within the meaning of 18 U.S.C. § 1961(3) in that they are individuals or legal entities capable of holding a legal or beneficial interest in property.

273.     Each Plaintiff is a "person" within the meaning of 18 U.S.C. § 1961(3), since they are each capable of holding a legal or beneficial interest in property.

**The RICO Enterprise**

274.    TMC is a RICO enterprise, pursuant to 18 U.S.C. § 1961(4).  Its activities affect interstate commerce as it conducts business in several states.

275.    Defendants created and managed TMC to defraud Plaintiffs and other purchasers of TMC timeshares and to compel them to pay inflated maintenance fees.

276.    The Defendants agreed to utilize TMC to carry out the fraudulent schemes detailed herein. This agreement has been ongoing between the Defendants for at least the last five years and continues to date.

**The RICO Violations**

**A.    Schemes Against Plaintiffs**

277.    Beginning no later than 2012 and continuing to the present, the Defendants have used the mail to send fraudulent annual maintenance fee statements each year to Plaintiffs in violation of 18 U.S.C. § 1341, the federal mail fraud statute, which is made a form of "racketeering activity" by RICO pursuant to 18 U.S.C. §1961(1)(B).

278.    Beginning in 1996 and continuing to the present, after each Plaintiff purchased their TMC timeshare interest, the Defendants used the mail to send TMC's Offering Plan and Bylaws documents to Plaintiffs that included provisions: i) explicitly refuting the Defendants' misrepresentations referenced in paragraphs 147-153 above that Plaintiffs relied upon to purchase their timeshares; and ii) explicitly included provisions corresponding to the Defendants' omissions referenced in paragraphs 154-187 above that were intentionally not made to avoid dissuading Plaintiffs from purchasing their timeshares, in violation of 18 U.S.C. § 1341, the federal mail fraud statute, which is made a form of "racketeering activity" by RICO pursuant to 18 U.S.C. §1961(1)(B).

279.     Beginning no later than 2012 and continuing to the present, Defendants have used the interstate wires to prevent Plaintiffs from being able to make same-day or short notice reservations to use their TMC timeshares, in violation of 18 U.S.C. § 1343, the federal wire fraud statute, which is made a form of "racketeering activity" by RICO pursuant to 18 U.S.C. §1961(1)(B).

280.     Beginning in 2018 and continuing to the present, Defendants have used the mail and interstate wires to send 'buy-back' offers to Plaintiffs presently in arrears on their annual maintenance fee payments, in violation of 18 U.S.C. § 1341, the federal mail fraud statute, which is made a form of "racketeering activity" by RICO pursuant to 18 U.S.C. §1961(1)(B).

281.     The Defendants' use of TMC to commit mail fraud and wire fraud violations in connection with their schemes to fraudulently sell TMC timeshares, collect fraudulent annual maintenance fees, fraudulently prevent Plaintiffs from making same-day or short notice reservations, and trying to fraudulently "buy back" units for $100 after rendering them worthless, respectively, as detailed above, violates 18 U.S.C. § 1962(c). Thus, these violations constitute both an open and closed ended pattern of racketeering required by 18 U.S.C. § 1961(5).

282.     These schemes to defraud Plaintiffs were agreed to and implemented by all of the Defendants, which collectively direct and/or manage TMC.

283.     The Defendants' agreement to carry out these schemes is a violation of 18 U.S.C. § 1962(d) which states, in pertinent part: "It shall be unlawful for any person to conspire to violate subsection (c) of this section." (internal punctuation omitted).[1]

---

[1] 18 U.S.C. § 1962(c) states: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

284.     Thus, Defendants have executed their scheme to defraud Plaintiffs in many dozens of separate transactions over the last several years through TMC by mail fraud and wire fraud.

**B.     Plaintiffs Have Been Injured By Defendants' Scheme To Defraud Purchasers Of TMC Timeshare Interests**

285.     As detailed above, Defendants' fraudulent activities have deprived Plaintiffs of the benefit of the bargain they intended to receive, and believed they were receiving, when they purchased their respective TMC timeshare interests. Defendants' wrongful actions have rendered the TMC timeshares interests that each Plaintiff paid tens of thousands of dollars to acquire, and then paid thousands of additional dollars in annual maintenance fees, worthless.

286.     Plaintiffs did not knowingly spend tens of thousands of dollars to acquire timeshare interests that also require them to pay thousands more each year in annual maintenance fees that exceed the amount they could have alternatively spent to rent the same rooms at The Manhattan Club had they not bought their interests.

287.     Therefore, Plaintiffs have been proximately damaged and continue to be damaged by the Defendants' conspiracy to commit mail fraud and wire fraud through TMC in an amount to be determined at trial.

**WHEREFORE**, Plaintiffs demand:

A.      Judgment against the Defendants on all seven counts of the Complaint, including joint and several liability where applicable;

B.      Compensatory, direct, consequential and punitive damages against the Defendants in an amount to be determined at trial;

C.      Treble damages under 18 U.S.C. § 1964(c);

D.      Attorney's fees, costs and disbursements;

E.      Pre and post-judgment interest; and

F.      Such further and additional relief as to the Court deems just and appropriate.

Respectfully submitted,

By:/s/ Jean-Marc Zimmerman
Jean-Marc Zimmerman
Zimmerman Law Group
233 Watchung Fork
Westfield, NJ 07090
T: (908) 768-6408
E: jmz@zimllp.com

Steven M. Hoffberg
Hoffberg & Associates
29 Buckout Road
West Harrison, NY 10604
T: (914) 949-2300
E: steve@hoffberglaw.com

Attorneys for Plaintiffs

Date: September 1, 2020