# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHARLES R. ACKLIN, ET AL., | |
| *Plaintiffs,* | |
| vs. | Case No. 1:20-CV-07042-GHW |
| IAN BRUCE EICHNER, LESLIE H. EICHNER, STUART P. EICHNER, SCOTT L. LAGER, T. PARK CENTRAL LLC, O. PARK CENTRAL, LLC, PARK CENTRAL MANAGEMENT, LLC, MANHATTAN CLUB MARKETING GROUP, LLC, NEW YORK URBAN OWNERSHIP, MANAGEMENT, LLC AND BLUEGREEN, VACATIONS UNLIMITED, INC., | **ORAL ARGUMENT REQUESTED** |
| *Defendants.* | |

**MEMORANDUM IN SUPPORT OF BLUEGREEN VACATIONS UNLIMITED, INC.'S MOTION TO DISMISS AMENDED COMPLAINT**

STEARNS WEAVER MILLER, P.A.
150 West Flagler St.
Miami, Florida 33130

MURPHY & MCGONIGLE
1185 Avenue of the Americas
New York, New York 10036

October 22, 2020

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION .................................................................................................................1

BACKGROUND ...................................................................................................................2

    A.     Parties .......................................................................................................2

    B.     New York Attorney General Investigation ............................................3

          1.     Affirmation ................................................................................3

          2.     Assurance of Discontinuance....................................................4

    C.     Agreement for Purchase and Sale of Assets ...........................................6

    D.     Conclusory Allegations about Bluegreen ...............................................7

    E.     Asset Purchase Agreement's Termination...............................................8

MOTION TO DISMISS STANDARD...................................................................................9

ARGUMENT .........................................................................................................................9

I.     This Court Must Dismiss Bluegreen as a Defendant Because it Is Not Liable for the Eichner Defendants' Misdeeds .........................................................................................9

    A.     The Default Rule Is That a Purchaser of Assets Does Not Assume Liability ................................................................................................. 10

    B.     Plaintiffs' Allegations about the Asset Purchase Agreement ............... 10

          1.     Plaintiffs do not allege its material terms. ............................... 10

          2.     Plaintiffs concede their ignorance of its terms......................... 11

          3.     Plaintiffs concede that it was terminated. ................................ 11

    C.     The Assurance of Discontinuance ........................................................ 12

          1.     The Assurance of Discontinuance forbids any continuity of ownership. ............................................................................... 12

2.      The Assurance of Discontinuance establishes that the Asset Purchase Agreement was a remedy for the Eichner Defendants' fraud. ................................................................................ 12

3.      The Assurance of Discontinuance mandates the disruption and destruction of any continuity of enterprise. ................................. 13

D.      The Asset Purchase Agreement ......................................................... 15

1.      The Asset Purchase Agreement's terms eliminated any liability for Bluegreen. .................................................................................. 15

2.      The Asset Purchase Agreement also eliminated any continuity.............. 17

II.     Plaintiffs Do Not and Cannot State Direct Claims against Bluegreen.............................17

A.      Breach of Contract ............................................................................ 17

B.      Tortious Interference with Contract..................................................... 21

C.      Breach of Fiduciary Duty................................................................... 22

D.      Fraud ............................................................................................... 23

E.      RICO ............................................................................................... 24

III.    In the Alternative, if this Court Dismisses the RICO Claims, Plaintiffs' State Law Claims Should Be Dismissed for Lack of Supplemental Jurisdiction ..............................25

CONCLUSION....................................................................................................25

CERTIFICATE OF SERVICE .................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ambac Assurance Corp. v. Countrywide Home Loans,*
31 N.Y. 3d 569 (N.Y. 2018) ...................................................23

*Amidax Trading Group v. S.W.I.F.T. SCRL,*
671 F.3d 140 (2d Cir. 2011)............................................12, 19

*Anation v. Coutts Bank (Switzerland) Ltd.,*
193 F.3d 85 (2d Cir. 1999).....................................................24

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009).....................................................9, 18, 24

*Atuahene v. City of Hartford,*
10 F. App'x 33 (2d Cir. 2001) ...............................................19

*Baisch v. Gallina,*
346 F.3d 366 (2d Cir. 2003)...................................................24

*Cargo Partners AG v. Albatrans,*
352 F.3d 41 (2d Cir. 2003)........................................10, 11, 17

*City of New York v. Charles Pfizer & Co.,*
688 N.Y.S. 2d 23 (1st Dep't 1999) ........................................16

*City of New York v. Smokes-Spirits.Com, Inc.,*
911 N.E. 2d 834 (N.Y. 2009)..................................................22

*Cohen v. Rosicki, Rosicki & Assocs.,*
897 F.3d 75 (2d Cir. 2018)........................................................9

*Conte v. Emmons,*
895 F.3d 168 (2d Cir. 2018).....................................................21

*Cortec Industries, Inc. v. Sum Holding L.P.,*
949 F.2d 42 (2d Cir. 1991).......................................................16

*D'Andrea v. Rafla-Demetrious,*
146 F.3d 63 (2d Cir. 1998).......................................................22

*Dane v. UnitedHealthCare Ins. Co.,*
__ F.3d __, 2020 WL 6415301 (2d Cir. Sept. 10, 2020) ..........9

*Delgado v. Matrix-Churchill Co.*,
　613 N.Y.S. 2d 242 (2d Dep't 1994)......................................................................14

*Diesel Props. S.R.L. v. Greystone Business Credit II LLC*,
　631 F.3d 42 (2d Cir. 2011)....................................................................................18

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*,
　747 F.3d 145 (2d Cir. 2014)..................................................................................19

*Dritsas v. Amchem Products*,
　94 N.Y.S. 3d 264 (1st Dep't 2019) .......................................................................17

*Gillespie v. St. Regis Residence Club*,
　343 F. Supp. 3d 332 (S.D.N.Y. 2018)...................................................................20

*Grace v. Bank Leumi Trust Co.*,
　443 F.3d 180 (2d Cir. 2006)...........................................................................12, 13

*Grant Howard Assoc. v. General Housewares Corp.*,
　482 N.Y.S. 2d 225 (N.Y. 1984) ............................................................................17

*Haynes v. Kleinewefers and Lembo Corporation*,
　921 F.2d 453 (2d Cir. 1990).................................................................................17

*Heights v. U.S. Elec. Tool Co.*,
　525 N.Y.S. 2d 653 (2d Dep't 1988) ......................................................................10

*Hirsh v. Arthur Andersen & Co.*,
　72 F.3d 1085 (2d Cir. 1995)..................................................................................19

*In re CBI Holding Co. v. Ernst & Young LLP*,
　529 F.3d 432 (2d Cir. 2008)..................................................................................23

*In re New York City Asbestos Litigation*,
　789 N.Y.S. 2d 484 (1st Dep't 2005) .....................................................................14

*In re TBA Global, LLC v. Findus Partners*,
　15 N.Y.S. 3d 769 (1st Dep't 2015) .......................................................................17

*Ivory Development, LLC v. Roe*,
　25 N.Y.S. 3d 686 (3d Dep't 2016)..................................................................11, 16

*Jerdonek v. 41 West 72 LLC*,
　36 N.Y.S. 3d 17 (1st Dep't 2016) .........................................................................15

*Kim v. Kimm*,
　884 F.3d 98 (2d Cir. 2018)....................................................................................24

*Kirch v. Liberty Media*,
    449 F.3d 388 (2d Cir. 2006)............................................................................21

*Kretzmer v. Firesafe Prods. Corp.*,
    805 N.Y.S.2d 340 (N.Y. 2005) ....................................................................17

*Kriss v. Bayrock Group LLC*,
    2016 WL 7046816 (S.D.N.Y. Dec. 2, 2016) ...............................................24

*Lama Holding Co. v. Smith Barney Inc.*,
    88 N.Y. 2d 413 (N.Y. 1996) .........................................................................21

*Liberty Affordable Housing v. Maple Court Apartments*,
    998 N.Y.S.2d 543 (4th Dep't 2015)..............................................................11

*New York v. National Service Industries, Inc.*,
    460 F.3d 201 (2d Cir. 2006) (Sotomayor, J.)................................................10

*Oorah, Inc. v. Covista Communications, Inc.*,
    30 N.Y.S. 3d 626 (1st Dep't 2016) ..............................................................16

*People's Trust Co. v. Schultz Novelty & Sporting Goods*,
    244 N.Y. 14 (N.Y. 1926) ..............................................................................11

*Premium Mortgage Corp. v. Equifax, Inc.*,
    583 F.3d 103 (2d Cir. 2009)..........................................................................21

*R&D Electronics, Inc. v. NYP Management, Co.*,
    78 N.Y.S. 3d 834 (4th Dep't 2018) ..............................................................17

*Rivera v. Anderson United Co.*,
    727 N.Y.S. 2d 447 (2d Dep't 2001)..............................................................17

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004)..........................................................................20

*Salinas v. U.S.*,
    522 U.S. 52 (1997)........................................................................................24

*Salvati v. Blaw-Knox Food & Chemical Equipment, Inc.*,
    497 N.Y.S. 2d 242 (N.Y. Sup. Ct. 1985) ..............................................14, 15

*Schumacher v. Richards Shear Company*,
    59 N.Y.2d 239 (N.Y. 1983) ....................................................................13, 14

*Semenetz v. Sherling & Walden*,
    7 N.Y. 3d 194 (N.Y. 2006) ..............................................................10, 13, 14

*Sergeants Benevolent Ass'n Health and Welfare Fund v. Sanofi-Aventis U.S. LLP*,
  806 F.3d 71 (2d Cir. 2015)..................................................................................................25

*Simpson v. Ithaca Gun Co.*,
  856 N.Y. S. 2d 397 (N.Y. 4th Dep't 2008) ......................................................................17

*SNS Bank, N.V. v. Citibank, N.A.*,
  777 N.Y.S. 2d 62 (1st Dep't 2004) ..................................................................................22

*Societe Nationale D'Explotation Industrielle v. Salomon Brothers*,
  674 N.Y.S. 2d 648 (1st Dep't 1998) ................................................................................22

*Sullivan v. Mers, Inc.*,
  30 N.Y.S. 2d 112 (1st Dep't 2016) ..................................................................................22

*Sweatland v. Park Corp.*,
  587 N.Y.S. 2d 54 (4th Dep't 1992) ..................................................................................14

*Twitchell v. Town of Pittsford*,
  483 N.Y.S.2d 524 (4th Dep't 1984), *aff'd*, *Twitchell v. Town of Pittsford*, 66
  N.Y. 2d 824 (1985) ..........................................................................................................11

*Washington Mutual Bank v. SIB Mortgage Corp.*,
  801 N.Y.S. 2d 821 (2d Dep't 2005) ................................................................................17

*Wass v. County of Nassau*,
  60 N.Y. S. 3d 339 (2 Dep't 2017) ....................................................................................10

*Williams v. Affinion Group*,
  889 F.3d 116 (2d Cir. 2018).............................................................................................20

*Worldcom Netowrk Services, Inc. v. Polar Communications Corp.*,
  718 N.Y.S. 2d 337 (1st Dep't 2000) ................................................................................10

*Ying-Qi Yang v. Shew-Foo Chin*,
  839 N.Y.S. 2d 90 (1st Dep't 2007) ..................................................................................11

*Zinbarg v. Prof'l Business Collge, Inc.*,
  117 N.Y.S. 3d 228 (1st Dep't 2020) ................................................................................10

**Statutes**

18 U.S.C. §, *et seq*...............................................................................................................20

28 U.S.C. § 1367..............................................................................................................1, 25

NY Gen. Business Law § 349(h) ...........................................................................................22

NY Gen. Obligations Law, § 5-703 .......................................................................................21

**Rules**

Fed. R. Civ P. 8(a) ...................................................................................................................19

Fed. R. Civ. P. 9(b) .........................................................................................................1, 13, 20

Fed. R. Civ. P. 12(b)(6)...........................................................................................................1, 9

Defendant Bluegreen Vacations Unlimited, Inc. ("Bluegreen") respectfully submits this memorandum of law in support of its motion to dismiss this action, under Federal Rules of Civil Procedure 9(b) and 12(b)(6), and 28 U.S.C. § 1367:

## INTRODUCTION

The Amended Complaint attaches an Assurance of Discontinuance from the New York Attorney General's Office establishing that the original sponsors of the timeshare at issue in this litigation, from whom Plaintiffs purchased their timeshare interests, made material misrepresentations and omissions, and that, as a remedy for those violations, Defendant Bluegreen would buy out the wrongdoers and, starting in 2021, have the right to manage the condominium.

None of the facts pleaded in the operative complaint establish any liability—or any wrongdoing whatsoever—by Bluegreen. Plaintiffs have trotted out a series of theories under which Bluegreen might have successor liability for the wrongdoing of the original sponsors, the Eichner Defendants, with the latest being "continuity of enterprise."

Putting aside for a moment that the New York Court of Appeals and three Appellate Divisions have declined to adopt that theory, under the Martin Act, the New York Attorney General entered the Assurance of Discontinuance to disrupt, and then destroy, the Eichner Defendants' enterprise. As a principal remedy, it required the Eichner Defendants exit the condominium and sell to a third party purchaser approved by the New York Attorney General, namely Bluegreen. Bluegreen was the opposite of a wrongdoer; it entered as a white knight; and no legal theory can support liability against a party identified, not as part of the problem, but rather part of the solution.

For these and many other reasons explained below, the Amended Complaint's claims

1

against Bluegreen must be dismissed with prejudice.[1]

## BACKGROUND

### A.    Parties

Plaintiffs purchased timeshare interests in The Manhattan Club and became members of The Manhattan Club Timeshare Association, Inc. ("TMC") from 1996 to 2013. Dkt. 17 ¶¶ 1-127. TMC is "responsible for the management and day-to-day operations of The Manhattan Club timeshares" at 200 West 56 Street, New York, New York 10019. Dkt. 17 ¶¶ 128-129.

The nine "Eichner Defendants" are:

(1) *T. Park Central LLC ("T. Park")* was "involved in the offering of timeshare interests at The Manhattan Club," Dkt. 17 ¶ 137;

(2) *O. Park. Central LLC ("O. Park")* was also "involved in the offering of timeshare interests at The Manhattan Club," Dkt. 17 ¶ 138;

(3) *Park Central Management, LLC ("Park Central")* is "the managing member of T. Park and O. Park" and "made or took part in the offering of timeshare interests at The Manhattan Club," Dkt. 17 ¶ 139;

(4) *Manhattan Club Marketing Group LLC ("Marketing")* was "the selling agent for the offering of timeshare interests at the Manhattan Club," Dkt. 17 ¶ 140

(5) *New York Urban Ownership Management, LLC ("Urban)* "is a New York limited liability Company," Dkt. 17 ¶ 141.

(6) *Ian Bruce Eichner* "is the managing member of Marketing," Dkt. 17 ¶ 140, was "the manager of Urban[,]" Dkt. 17 ¶ 131, was "the managing member of the

---

[1] References to "Dkt." are to docket entries in the above referenced case; references to "Ex." are to exhibits submitted with the accompanying Declaration of Terry Dodd submitted in support of Defendant Bluegreen Vacation's Motion to Dismiss the Amended Complaint dated October 22, 2020. Other terms are defined in text. Emphasis is added and internal citations and quotations are omitted unless otherwise indicated.

Manhattan Club," Dkt. 17 ¶ 131, and was a member and principal of Defendants T. Park and O. Park, Dkt. 17 ¶ 134.

(7) *Leslie Eichner* is a "member of Marketing," Dkt. 17 ¶ 140, was "a member of Urban." Dkt. 17 ¶ 132, and is a member and principal of Defendants T. Park and O. Park, Dkt. 17 ¶ 134.

(8) *Stuart Eichner* is a "member of Marketing," Dkt. 17 ¶ 140, was "the President of TMC and a member of Urban." Dkt. 17 ¶ 133, and is a member and principal of Defendants T. Park and O. Park, Dkt. 17 ¶ 134.

(9) *Scott L. Lager* was "the Vice President of TMC." Dkt. 17 ¶ 136.

The Amended Complaint does not allege that Bluegreen had any role in offering timeshare interests to Plaintiffs or any role at the Manhattan Club at all until June 2018 but names Bluegreen as a Defendant. Dkt. 17 ¶ 142.

### B.   New York Attorney General Investigation

The Amended Complaint also alleges repeatedly that the "Eichner Defendants made materially false representations when selling TMC timeshare interests," Dkt. 17 at 18, and those allegations are grounded in two, attached documents from the New York Attorney General's Investigation, Dkt. 17-1 at 10; *see* Dkt. 17-2.

### 1.   Affirmation

The Amended Complaint attaches an Affirmation from an Assistant Attorney General dated July 2, 2015, Dkt. 17-2, which explained: The Eichner Defendants were jointly and severally liable for material misrepresentations or omissions under the Martin Act about renting rooms to the general public at The Manhattan Club, the reservation system, and the inventory available to timeshare purchasers. Dkt. 17-2 at 8. The Eichner Defendants earned millions of dollars in rental income and reduced inventory that would otherwise be available to timeshare owners. Dkt. 17-2

at 14-18. And the Eichner Defendants charged owners for yearly maintenance fees and real estate taxes prematurely. Dkt. 17-2 at 18-19.

The Affirmation further averred: "Urban was set up as a pass-through entity by which distributions were made to Sponsors, the Eichners and Lager, Using the Timeshare Association's Monies." Dkt. 17-2 at 19 (emphasis and capitalization removed). Bank records established "from 2011 to 2013, monies flowed from the Timeshare Association to the Sponsors, the Eichners, and Lager," totaling well over $6 million. Dkt. 17-2 ¶¶ 108-110. "It appears that Respondents have attempted to conceal these facts," Dkt. 17-2 ¶ 112, including by producing payroll reports and 1099 forms for Urban that "state that Urban made no disbursements in 2011, 2012, or 2013." Dkt. 17-2 ¶ 112.

### 2.   Assurance of Discontinuance

On August 14, 2017, the New York Attorney General's Office and the Eichner Defendants executed an Assurance of Discontinuance, which is also attached to the Amended Complaint as its first exhibit. It found that the Eichner Defendants committed the following Martin Act violations:

(1) *Failure to Provide Offering Plans*: The sponsors' sales staff "sold timeshare interests without providing a copy of the Offering Plans to certain prospective purchasers during the period from 2011 through 2014." Dkt. 17-1 ¶¶ 39-40.

(2) *Oral Representations Contrary to the Offering Plans*: "During the period from 2011 through 2014, certain members of the sales staff employed by the Sponsors made numerous oral representations." Dkt. 17-1 ¶ 43. Those included "misrepresentations concerning [a] the existence of a cancellation period, [b] the fact that the purchase of the timeshare interest was not to be viewed as an investment in real estate, and [c] the Sponsors' willingness to buy back the timeshare interest at the price paid by the purchaser." Dkt. 17-1 ¶ 43.

(3) *Reservation and Rental Programs Contrary to Offering Plans*: "Contrary to the representations contained in the Offering Plans, reservations by owners for room nights at The Manhattan Club were not always taken on a first come first served basis during the period from 2011 through 2014." Dkt. 17-1 ¶ 47. During 2011 through 2014, "the Timeshare Association [also] at times implemented certain aspects of the Transient Rental Program in an improper manner," in violation of the Martin Act. Dkt. 17-1 ¶ 50-53.

(4) *Underestimating Bad Debt*: From 2011 to 2014, the Timeshare Association underestimated for bad debt expenses by a total of over $13,005,000, Dkt. 17-1 ¶ 55.

In the Assurance of Discontinuance, the Eichner Defendants agreed to exit the timeshare industry, Dkt. 17-1 ¶ 61, and all of the current officers and directors agreed to "resign from their positions as members of the Board of the Timeshare Association," Dkt. 17-1 ¶ 63.

As part of the primary remedy for their wrongdoing, the Assurance of Discontinuance also required the Eichner Defendants to sell (a) "all their timeshare interests in The Manhattan Club" to a purchaser approved by the New York Attorney General's Office; and (b) mandated that "after three years of Management, Urban will transfer to TMC Purchaser or its assignee the Management Agreement":

> 62.    *Respondents shall enter into an agreement with the third-party operator of timeshare properties ("TMC Purchaser") previously identified to the OAG on or about July 28, 2017, or to such other third party purchaser approved by the OAG to own and sell timeshare interests in New York, whereby* (i) T. Park and O. Park shall enter into an agreement with a third-party to transfer timeshare interests from existing owners to TMC Purchaser, all their timeshare interests in The Manhattan Club, and (ii) *after three years of management, Urban will transfer to TMC Purchaser or its assignee the Management Agreement* (the "TMC transfer").

Dkt. 17-1 ¶ 62.

As a contingency if that transaction fell through, the Assurance of Discontinuance still required the Eichner Defendants sell their interests to a third party but also required emplacement of a neutral monitor to oversee the end of the Eichner Defendants' Manhattan Club enterprise. The Assurance of Discontinuance provides, in the event of an uncured default by TMC Purchaser "and if at the time of the Default Sponsors then continue to own any timeshare interests," the Eichner Defendants "shall notify the OAG," "shall seek to sell [any] Remaining Interests to a third party entity unaffiliated with any Respondent," "replace any members appointed by TMC purchaser who resign as a result," and "shall propose an independent monitor" that the "OAG shall have the right to approve." Dkt. 17-1 ¶ 64.

The Assurance of Discontinuance then required the Eichner Defendants to pay, over the next two years, restitution of $6.5 million, Dkt. 17-1 ¶ 65, to be disbursed, by an appointed claims administrator, to the owners. Dkt. 17-1 ¶ 69.

### C.    Agreement for Purchase and Sale of Assets

The Amended Complaint concedes that it is not based on knowledge of the Asset Purchase Agreement's terms, describing it as a "secret," but then alleges that agreement as a basis for liability, including in the very same paragraph:

> *As a successor to the Eichner Defendants' interests in TMC by virtue of their 2018 agreement whose terms they have kept secret and never disclosed to Plaintiffs* or other TMC members, Defendant Blue[g]reen [Vacations] also assumed joint liability for prior wrongdoing at TMC that the Eichner Defendants committed, and for the wrongdoing at TMC that continues today.

Dkt. 17 ¶ 199.

On March 15, 2018, T. Park, O. Park, and Urban entered into the Asset Purchase Agreement with Bluegreen, which satisfied the requirements of the Assurance of Discontinuance by providing for the sale of (a) timeshare inventory at The Manhattan Club; and (b) in 2021, the right to manage The Manhattan Club. Ex. A (the "Asset Purchase Agreement").

Article 3 of the Asset Sale Agreement governs the Purchase Price. Ex. A at 23. Section 3.1 makes plain that Bluegreen did not assume any of the Seller's Liabilities that predated any of the closings for inventory or the management agreement:

> Section 3.1    Purchase and Sale of Seller's Assets; Assumed and Retained Liabilities. Subject to and in accordance with the terms and conditions of this Agreement, Seller and the Designated Entity (as applicable) herby agrees to sell, transfer, assign, convey, and deliver to Purchaser or its designee and the Purchaser has the exclusive right to purchase and hereby agrees to purchase and acquire from the Applicable Seller, at each applicable Closing, all of the Applicable Seller's right, title and interest in and to the agreed upon portion of Seller's Assets at the agreed upon Purchase Price for such portion of Seller's Assets, free and clear of any and all Encumbrances, other than Permitted Encumbrances.
>
> Upon the terms and subject to the conditions of this Agreement, *at the First Closing and at each applicable Closing, Purchaser shall assume from Seller, all Liabilities to be paid, performed or discharged related to the portion of Seller's Assets then being acquired which first accrue on or after the applicable Closing Date* for such Seller's Assets acquired at such Closing including, without limitation: (a) that portion of Seller's Assets acquired at the applicable Closing; (b) the Specified Inventory; (c) the Assumed Contracts, if any; (d) the Licenses; and (e) obligations as Timeshare Declarant under the Timeshare Declaration and Condominium Declarant under the Condominium Declaration and applicable law (collectively, the "Assumed Liabilities").
>
> *All Liabilities of Seller that are not Assumed Liabilities and which exist as of each Closing as to the portion of the Seller's Assets then owned by Seller which are conveyed or transferred at such Closing, including, without limitation, the following* (collectively, "Retained Liabilities"), to wit: (i) all Timeshare Receivable loans of Seller; (ii) any Liability or obligations (contingent or otherwise) of Seller caused for acts or failure to act of Seller to Governmental Authorities, including, but not limited to, the New York Attorney General ("Governmental Obligations"); (iii) *any Liability or obligation of Seller to Timeshare Owners or others for acts or failure to act with respect to the Timeshare Project existing as of each Closing as to the portion of Seller's Assets being conveyed at such Closing* ("Existing Timeshare Owner Obligations"); (iv) accounts payable, Tax liabilities, notes payable and other Liabilities, if any, of Seller existing as of each Closing as to the portions of Seller's Assets being conveyed at such Closing shall be retained by Seller and are not assumed by Purchaser hereunder.

Ex. A at 24.

### D.    Conclusory Allegations about Bluegreen

The Amended Complaint includes an assortment of other allegations, which mention Bluegreen but do not show that anyone affiliated with Bluegreen did anything wrong:

(1) *Conclusory Allegations Generic to All Defendants*: The Amended Complaint uses the term "Defendants" to refer those who did wrong at The Manhattan Club, *e.g.*, Dkt. 17 ¶¶ 152, 153, 178, 179, 210, 275-85, though many of those allegations involved wrongdoing that occurred before Bluegreen had purchased its interests, Dkt. 17-1 & 17-2.

(2) *Conclusory Allegations of Wrongdoing that Post-Dated the Assurance of Discontinuance*: The Amended Complaint also contains conclusory allegations that wrongdoing at The Manhattan Club persisted after Bluegreen entered the Asset Purchase Agreement. Dkt. 17 ¶ 199.

(3) *Directors Affiliated with Bluegreen*: The Amended Complaint pleads that in 2018, directors affiliated with Bluegreen had assumed four seats on the Board of Directors, Dkt. 17 ¶ 198, and the 2019 budget for The Manhattan Club is similar to the 2018 budget, Dkt. 17 ¶¶ 200-201, but does not explain how the directors affiliated with Bluegreen committed any wrongdoing.

(4) *Proposed Buyback Program*: The Amended Complaint alleges that Bluegreen was involved in a "proposed" buyback program but does not plead that Bluegreen purchased any inventory under that program. The Amended Complaint alleges "Bluegreen has failed to provide any information regarding" the calculation of the buyback price, the mechanics of the transfer of the timeshare interests, or the agreements governing them, Dkt. 17 ¶¶ 202-203, in "breach of the *Eichner Defendant's promise* to repurchase the timeshare interests," Dkt. 17 ¶ 204.

**E.   Asset Purchase Agreement's Termination**

The Amended Complaint admits that the Asset Purchase Agreement has been "terminated":

Upon information and belief, the Eichner Defendants and Defendant [Bluegreen] have both failed to advise Plaintiffs or any TMC member that *[Bluegreen] has terminated its agreement to acquire the Eichner Defendants' interest in TMC* and that the parties are presently involved in an adverse legal proceeding that is being arbitrated.

Dkt. 17 ¶ 206.

## MOTION TO DISMISS STANDARD

To satisfy the requirements of Federal Rules of Civil Procedure 8(a) and 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Reasonable inferences must be drawn for plaintiffs, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Dane v. UnitedHealthCare Ins. Co.*, __ F.3d __, 2020 WL 6415301, at *3 (2d Cir. Sept. 10, 2020) And this Court cannot credit "unadorned, the-defendant-unlawfully-harmed-me accusation[s]," mere "labels and conclusions," "formulaic recitation[s] of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678. "A complaint is also deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." *Cohen v. Rosicki, Rosicki & Assocs.*, 897 F.3d 75, 80 (2d Cir. 2018).

## ARGUMENT

### I.   This Court Must Dismiss Bluegreen as a Defendant Because it Is Not Liable for the Eichner Defendants' Misdeeds

As a substitute for adequate allegations that would create any direct liability, the Amended Complaint offers the legal conclusion that under the Asset Purchase Agreement "Defendant Bluegreen also assumed joint liability for the prior wrongdoing at TMC that the Eichner Defendants committed[] and for the wrongdoing at TMC that continues today." Dkt. 17 ¶ 199. But Bluegreen did not.

### A.   The Default Rule Is That a Purchaser of Assets Does Not Assume Liability

In any sale of assets, the default rule eliminates successor liability. Under New York law, "the purchaser of a corporation's assets does not, as a result of the purchase ordinarily become liable for the seller's debts" or contractual liabilities because "[t]he amount paid for the assets would ordinarily be available to satisfy those debts, at least in part." *Cargo Partners AG v. Albatrans*, 352 F.3d 41, 44-45 (2d Cir. 2003). And "[u]nder both New York and traditional common law, a corporation that purchases the assets of another corporation is generally not liable for the seller's liabilities" created by tort or statute. *New York v. National Service Industries, Inc.*, 460 F.3d 201, 209 (2d Cir. 2006) (Sotomayor, J.); *see also Semenetz v. Sherling & Walden, Inc.*, 7 N.Y. 3d 194, 196 (N.Y. 2006). Courts applying New York law have repeatedly dismissed complaints that fail to allege facts showing an exception to that rule applies, and those cases apply with even greater force here given the Amended Complaint's many pleading deficiencies.[2]

### B.   Plaintiffs' Allegations about the Asset Purchase Agreement

#### 1.   Plaintiffs do not allege its material terms.

The Amended Complaint does not does not allege the material terms of the Asset Purchase Agreement (that Plaintiffs had not seen). Nor does it allege the material terms of Plaintiffs' contracts with the Eichner Defendants. And "[i]t is well settled that [even] an assignee of rights under a bilateral contract is not obligated to perform the duties under the contract unless he [or

---

[2] *See, e.g.*,; *Zinbarg v. Prof'l Bus. Coll. Inc.*, 117 N.Y.S. 3d 228, 228 (1st Dep't 2020) (reversing and ordering dismissal of successor liability claim: "The complaint fails to state a cause of action….because it does not allege any of the exceptions to the general rule that a corporation that acquires the assets of another corporation is not liable for its predecessor's breaches of contract"); *Worldcom Netowrk Servs., Inc. v. Polar Commc'ns Corp.*, 718 N.Y.S. 2d 337, 338 (1st Dep't 2000) (affirming grant of motion to dismiss: pleadings and evidence "fail to provide any ground to infer a relationship," "much less a relationship sufficiently close to serve as a predicate for the imposition of successor liability"); *Wass v. Cnty. of Nassau*, 60 N.Y. S. 3d 339, 888 (2d Dep't 2017) (affirming summary judgment where no evidence that exceptions to rule against successor liability applied); *Heights v. U.S. Elec. Tool Co.*, 525 N.Y.S. 2d 653, 654 (2d Dep't 1988) (affirming summary judgment where the asset sale contract "was silent on the assumption of tort liability" and plaintiff provided no evidence any other exception applied).

she] expressly assumes to do so." *Ivory Dev., LLC v. Roe*, 25 N.Y.S. 3d 686, 692 (3d Dep't 2016). On its face then, the Amended Complaint fails to plead a basis for any liability against Bluegreen for what the Eichner Defendants may have said or done.

### 2.    Plaintiffs concede their ignorance of its terms.

Though a purchaser can contractually assume liability in the purchase, *e.g., Cargo Partners*, 352 F.3d at 45, the Amended Complaint does not and cannot allege that Bluegreen did here. Plaintiffs do not and cannot allege Bluegreen has ever denied a request by them for the Asset Purchase Agreement now being filed with this motion, but also concede that its terms were "never disclosed to Plaintiffs or other TMC members." Dkt. 17 ¶ 199. Any basis for finding the Amended Complaint plausibly alleges successor liability under the Asset Purchase Agreement is thus barred by Plaintiffs' conceded ignorance before suing.

### 3.    Plaintiffs concede that it was terminated.

Even worse for Plaintiffs, they are compelled to concede that the Asset Purchase Agreement has been terminated. Plaintiffs allege "[u]pon information and belief" "Bluegreen has terminated its agreement to acquire the Eichner Defendants interest in TMC." Dkt. 17 ¶ 206.

The conceded termination of the Asset Purchase Agreement eliminates any basis for liability under it. "When a contract is terminated, such as by expiration of its own terms, the rights and obligations thereunder cease." *Twitchell v. Town of Pittsford*, 483 N.Y.S.2d 524, 525 (4th Dep't 1984), *aff'd, Twitchell v. Town of Pittsford*, 66 N.Y. 2d 824 (1985). The conceded termination of the Asset Purchase Agreement thus eliminated any successor liability.[3]

---

[3]*E.g., People's Trust Co. v. Schultz Novelty & Sporting Goods,*, 244 N.Y. 14, 18 (N.Y. 1926) ("The force of the agreement sued on ends when the lease terminates, and, if the defendant has effectively terminated the lease, a recovery may not be had on the agreement after that date"); *Ying-Qi Yang v. Shew-Foo Chin*, 839 N.Y.S. 2d 90, 90-91 (1st Dep't 2007) ("By the clear and unambiguous terms of the agreement, seller had an absolute and unconditional right of cancellation, and therefore is entitled to dismissal of the action"); *Liberty Affordable Housing v. Maple Court Apartments*, 998 N.Y.S.2d 543, 548 (4th Dep't 2015) (affirming dismissal where "documentary evidence"

C.        **The Assurance of Discontinuance**

1.        **The Assurance of Discontinuance forbids any continuity of ownership.**

The Assurance of Discontinuance likewise forbids the Eichner Defendants from continued

ownership, eliminating liability under any theory of de facto merger theory or successor liability.

"Where a conclusory allegation in the complaint is contradicted by a document attached to the

complaint, the document controls and the allegation is not accepted as true." *Amidax Trading*

*Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011).

As explained above, pp. 5-6, the Assurance of Discontinuance required the Eichner

Defendants to sell their interests at The Manhattan Club to a purchaser approved by the New York

Attorney General's Office and went even further, requiring the Eichner Defendants to exit the

timeshare industry altogether, Dkt. 17-1 ¶ 61, and all of the current officers and directors to resign

from any positions at the Manhattan Club, Dkt. 17-1 ¶ 62. Not only was there no continuity of

ownership here, but any such continuity was forbidden.

2.        **The Assurance of Discontinuance establishes that the Asset Purchase Agreement was a remedy for the Eichner Defendants' fraud.**

As explained above, pp. 5-6, as part of the remedy for the Eichner Defendants' Martin Act

violations, the New York Attorney General required the Eichner Defendants to sell their interests

at The Manhattan Club. Plaintiffs have nonetheless argued that the Asset Purchase Agreement

executed to satisfy those requirements was somehow the opposite—namely, a fraudulent transfer.

For a claim for fraudulent conveyance or transfer, "[a] plaintiff must establish (1) that the

conveyance was made without fair consideration; (2) that the conveyor is a defendant in an action

for money damages…; and (3) that the defendant has failed to satisfy the judgment." *Grace v.*

---

"conclusively establishes that plaintiff was unable to close the deal on the closing date, and that the contract was
appropriately terminated as a result").

*Bank Leumi Trust Co.*, 443 F.3d 180, 188 (2d Cir. 2006). The Amended Complaint does not plead facts (let alone with the particularity Rule 9(b) requires) showing the Asset Purchase Agreement satisfies any of these elements, which is the only transfer or conveyance identified to which Bluegreen is a party in any way. And "[t]he proper remedy in a fraudulent conveyance claim is to rescind, or set aside, the allegedly fraudulent transfer, and cause the transferee to return the transferred property to the transferor." *Grace*, 443 F.3d at 188. Especially given the Amended Complaint's confession that it does not reflect knowledge of the terms of the Asset Purchase Agreement and that it has been terminated, Dkt. 17 ¶ 206, the Amended Complaint does not show that Bluegreen should return anything. It cannot.

### 3. The Assurance of Discontinuance mandates the disruption and destruction of any continuity of enterprise.

Plaintiffs argue that this Court should venture where the New York Court of Appeals and three Appellate Divisions have refused to go and impose liability under a so-called "continuity of enterprise" theory.

In *Schumacher v. Richards Shear Company*, 59 N.Y.2d 239, 243 (N.Y. 1983), the New York Court of Appeals ruled there were "are no facts alleged which warrant our consideration or application" of either the "product line" or "continuity of enterprise theories," which impose liability absent continuity of ownership in other jurisdictions. In *Semenetz v. Shereling & Walden, Inc.*, 7 N.Y. 3d 194, 196 (N.Y. 2006), the New York Court of Appeals then squarely rejected the "product line" theory that would carve out an exception to the continuity of ownership requirement for "strict products liability." The New York Court of Appeals reasoned, among other things, that doing so "would deter the purchase of ongoing businesses that manufacture products and, instead, force potential sellers to liquidate their companies," *id.* at 201, would "place[] responsibility for a defective product on a party that did not put the product into the stream of commerce," *id.*, and

13

would "mark a radical change from existing law implicating complex economic considerations better left to be addressed by the legislature," *id.[4]*

These reasons apply with far greater force to require rejecting the expansion of liability beyond *Schumacher* and *Semenetz* here. The Assurance of Discontinuance's requirement that the Eichner Defendants sell off their inventory and sell the management rights in 2021 enabled continuity at The Manhattan Club for a short period, created the potential for an orderly integration and closing process, and a smoother transition from seller to buyer. These government-mandated purchase terms—intended to disrupt and then destroy the Eichner Defendants continuity of enterprise—should not and do not impose liability on Bluegreen as the subsequent purchaser. To do so would deter purchases of businesses where the New York Attorney General need mandate exit by the original owners, punish Bluegreen for the misdeeds of the Eichner Defendants, and be contrary to the Legislature's decision to place those decisions within the authority of the New York Attorney General's Office under the Martin Act.

Ignoring the Court of Appeals, First, Second, and Fourth Departments, Plaintiffs have cited to a trial court decision, *Salvati v. Blaw-Knox Food & Chemical Equipment, Inc.*, 497 N.Y.S. 2d 242, 247 (N.Y. Sup. Ct. 1985), as support for their "continuity of enterprise" theory. The "three criteria" for application of the "continuity of enterprise" theory identified in *Salvati* are "whether there was a continuation of the enterprise of the original entity; whether the original entity ceased its ordinary business operations and dissolved promptly after the transaction; and whether the

---

[4] As explained in the text, the First, Second, and Fourth Departments have also declined to adopt the continuity of enterprise theory. *In In re New York City Asbestos Litig.*, 789 N.Y.S. 2d 484, 489 (1st Dep't 2005), the court refused to allow successor liability based on a showing of only two of the four de facto merger factors because this "would essentially adopt the continuity-of-enterprise theory of successor liability and/or the product-line theory of successor liability, something the Court of Appeals specifically declined to do in Schumacher." And the Second Department *in Delgado v. Matrix-Churchill Co.*, 613 N.Y.S. 2d 242, 243 (2d Dep't 1994), "decline[d] to apply the 'continuity of enterprise' theory of liability . . . and note[d] that there are no facts herein which would warrant our consideration or application of the theory." *See also Sweatland v. Park Corp.*, 587 N.Y.S. 2d 54 (4th Dep't 1992).

purchasing entity assumed those obligations and liabilities of the seller normally required for an uninterrupted continuation of the seller's operation." *Id.* Even if the "continuity of enterprise" theory had any viability in New York law (it does not), the allegations of the Amended Complaint negate at least the second and third of these criteria. Bluegreen never assumed the management contract for The Manhattan Club, Dkt. 17 ¶ 142, and the Eichner Defendants' TMC companies did not cease to exist, *see* Dkt. 17 ¶¶ 137-141; *see also* Dkt. 65 at 2. To the contrary, Plaintiffs concede the Asset Purchase Agreement was terminated. Dkt. 17 ¶ 206.

Plaintiffs also allege that, before the Asset Purchase Agreement was terminated, "four seats on TMC's seven-member board of directors that were previously held by Eichner Defendants had already been taken over by Defendant BlueGreen," and have elsewhere suggested that as a basis for successor liability. Dkt. 17 ¶ 198. But that theory was rejected by the First Department in *Jerdonek v. 41 West 72 LLC*, 36 N.Y.S. 3d 17 (1st Dep't 2016). The First Department explained there that a condominium "sponsor" could not "be sued based on its ability to select a majority of the members of the board of managers." *Id.* at 23. Even putting that dispositive point aside, Plaintiffs do not assert any alleged wrongdoing of the board members affiliated with Bluegreen. Quite the opposite, they have conceded through counsel that they "don't know what directors did or did not do." Tr. of Oct. 15, 2020 Conference at 10:16.

D.    **The Asset Purchase Agreement**

1.    **The Asset Purchase Agreement's terms eliminated any liability for Bluegreen.**

If this Court were to find that the Amended Complaint adequately alleges the material terms of the Asset Purchase Agreement on the pleading's face after considering its exhibits (it does not), then this Court must consider the Asset Purchase Agreement itself, which contradicts Plaintiffs' legal conclusions.

Ignorant of the Asset Purchase Agreement's terms, Dkt. 17 ¶ 199, counsel for Plaintiffs had no basis to sue Bluegreen, but sued anyway. The Amended Complaint admits general knowledge of the "2018 agreement" (the Asset Purchase Agreement) and invokes it to bring suit against Bluegreen. Dkt. 17 ¶ 199. As the Second Circuit has ruled, district courts can consider on a motion to dismiss "documents [that] plaintiffs had either in its possession or *had knowledge of and upon which they relied in bringing suit*." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991). All that is required is that there be "undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim," as here. *Id.* And, for good measure, after reviewing the Amended Complaint, on October 7, 2020, counsel for Bluegreen sent counsel for Plaintiffs a copy of the Asset Purchase Agreement. Ex. B. Plaintiffs cannot use the Asset Purchase Agreement and conclusory allegations about its terms to sue Bluegreen and then assert their ignorance as a shield to against its actual terms, especially weeks after receiving the contract.

As explained above, pp. 6-7, the Asset Purchase Agreement here expressly provides that Bluegreen only assumed liabilities that "first accrue[d] on or after the applicable Closing Date" and eliminated any prior liabilities. All of the averrals and findings in the affidavit and Assurance of Discontinuance from the New York Attorney General's Office, which appear to be the only source of any well-pleaded facts in the Amended Complaint, *see* pp. 3-6, above, pre-date the Asset Purchase Agreement and any periodic closings under it. The Asset Purchase Agreement eliminates Bluegreen's liability for these acts of the Eichner Defendants, and, for that reason too Plaintiffs' claims against Bluegreen fail.[5]

---

[5] *See, e.g., Oorah, Inc. v. Covista Commc'ns, Inc.*, 30 N.Y.S. 3d 626, 627-28 (1st Dep't 2016) (affirming dismissal of claim of successor liability where asset purchase agreement listed contracts being acquired and excluded contract alleged to create liability); *City of New York v. Charles Pfizer & Co.*, 688 N.Y.S. 2d 23, 24 (1st Dep't 1999) (ruling that contract for purchase of "lime products business" that included provision for seller to indemnify against claims for products sold before closing was inconsistent with successor liability); *Ivory Dev. v. Roe*, 25 N.Y. S. 3d 686, 692-93 (3d Dep't 2016) (ruling summary judgment required rejecting successor liability where only assignment agreement in the record "contained no requirement that any [] assignee must assume [the original contracting party's]

2.      **The Asset Purchase Agreement also eliminated any continuity.**

Under the Asset Purchase Agreement, at each closing over time, the Eichner Defendants were to relinquish all title to the assets transferred, and in 2021, any role at the condominium here, eliminating any continuity of ownership. "[I]t is… the nature of an asset sale that the seller's ownership interest in the entity is given up in exchange for consideration," "the parties do not become owners together of what formerly belonged to each," *Cargo Partner AG*, 352 F.3d at 47, and that eliminates any successor liability under any theory of a de facto merger, continuity of ownership, or continuity of enterprise.[6]

## II.      **Plaintiffs Do Not and Cannot State Direct Claims against Bluegreen**

The Amended Complaint's stray mentions of Bluegreen by name in its contract and tort claims are makeweight, falling far short of what would be necessary to state any claim.

### A.      **Breach of Contract**

The elements of a breach of contract claim include "(1) the existence of a contract between [plaintiff] and that defendant; (2) the performance of plaintiff's obligations under the contract;

---

obligations"); *Kretzmer v. Firesafe Prods. Corp.*, 805 N.Y.S.2d 340, 341 (N.Y. 2005) (ruling summary judgment required where defendant "expressly disclaimed the assumption of any liability"); *Haynes v. Kleinewefers and Lembo Corp.*, 921 F.2d 453, 458-59 (2d Cir. 1990) (affirming summary judgment ruling asset purchaser not liable); *Grant-Howard Assoc. v. General Housewares Corp.*, 63 N.Y. 2d 291, 297-98 (N.Y. 1984) (holding that reorganization agreement involving purchase of "substantially all of [seller's] corporate assets" did not create liability for seller's torts).

[6] *In re TBA Global, LLC v. Findus Partners,* 15 N.Y.S. 3d 769, 779-80 (1st Dep't 2015) (ruling arbitration agreement did not bind subsequent buyer: "We agree with the Second Circuit that, under New York law, continuity of ownership is the touchstone of the de facto merger concept and thus a necessary predicate to a finding of de facto merger"); *R&D Elecs., Inc. v. NYP Mgmt.t, Co.*, 78 N.Y.S. 3d 834, 837 (4th Dep't 2018) (affirming grant of summary judgment finding no successor liability); *Simpson v. Ithaca Gun Co.*, 856 N.Y. S. 2d 397, 398-99 (N.Y. 4th Dep't 2008) (ruling summary judgment of no successor liability required where secured creditor accepted complete surrender of assets under security agreements); *Washington Mut. Bank v. SIB Mortg. Corp.*, 801 N.Y.S. 2d 821, 822 (2d Dep't 2005) (affirming grant of motion to dismiss where terms of employment agreement established, as a matter of law, the lack of continuity); *Dritsas v. Amchem Prods.s*, 94 N.Y.S. 3d 264, 264-65 (1st Dep't 2019) (affirming summary judgment in an asset purchase for cash absent evidence of contractual shifting of liability or of continuity of ownership); *Rivera v. Anderson United Co.*, 727 N.Y.S. 2d 447 (2d Dep't 2001) (affirming summary judgment; "Contrary to plaintiff's contention, the evidence in this case established that the transfer of assets pursuant to the agreement was a sale and not a merger or de facto merger"); pp. 10-17, above.

(3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach." *Diesel Props. S.R.L. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011).

The Amended Complaint alleges that the Plaintiffs purchased their timeshare interests between 1996 and 2013, Dkt. 17 ¶¶ 1-127, and does not and cannot identify anyone affiliated with Bluegreen who was involved in that process, Dkt. 17 ¶¶ 147-153. Nor does the Amended Complaint explain how Plaintiffs performed under those contracts, how Bluegreen breached those contracts, or how any breach by Bluegreen caused any damage to Plaintiffs.

The Amended Complaint includes references to the "Defendants" generally in the Counts seeking to assert claims for breach of contract, Dkt. 17 ¶¶ 230, 243 & 252, but those references must be interpreted as limited to the Eichner Defendants for many reasons. The Amended Complaint alleges, for example: "Defendants contracted with each Plaintiff for the sale of a TMC timeshare interest as described above," *i.e.*, from 1996 to 2013, before the Assurance of Discontinuance. Dkt. 17 ¶ 233.

These allegations fail to satisfy *any* of the relevant pleading requirements:

(1) *Relies on Labels and Conclusions:* The Amended Complaint does not and cannot plead facts showing Bluegreen was involved in negotiating any contracts entered into between Plaintiffs and the Eichner Defendants. Absent those, the Amended Complaint contains only "labels and conclusions" and "naked assertions devoid of further factual enhancement" that must be rejected. *Iqbal*, 556 U.S. at 678.

(2) *Contradicted by Specific Factual Allegations*: "Although factual allegations of a complaint are normally accepted as true on a motion to dismiss, that principle does not apply to general allegations that are contradicted by more specific allegations

in the complaint." *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 151-52 (2d Cir. 2014); *see also Hirsh v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995). The Amended Complaint only levies specific, factual allegations of wrongdoing at the Eichner Defendants, Dkt. 17 ¶¶ 191-93, and Bluegreen is only alleged to have any involvement at the condominium here after the execution of the Asset Purchase Agreement years later, Dkt. 17 ¶ 199. The more general allegations of breach of contract must thus be rejected for that reason too.

(3) *Contradicted by the Amended Complaint's Exhibits*: "Where a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true." *Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011). The Amended Complaint relies for its allegations of wrongdoing almost entirely on the New York Attorney General's investigation but the attached exhibits from that investigation establish that the Eichner Defendants, not Bluegreen, were the ones alleged to have committed wrongs during the sale of timeshare interests. *See* Dkt. 17-1 & 17-2. Indeed, far from being a wrongdoer, the New York Attorney General was required to approve Bluegreen as a purchaser and white knight to try to rescue the Plaintiff owners from the real wrongdoers, the Eichner Defendants. Dkt. 17-1 ¶ 62.

(4) *Impermissible Group Pleading*. Complaints that "lump[] all the defendants together in each claim and provide no factual basis to distinguish their conduct" fail to satisfy the "minimum standard" of Rule 8(a). *Atuahene v. City of Hartford*, 10 F. App'x 33 (2d Cir. 2001). This form of "group pleading fail[s] to differentiate as to which defendant was involved in the alleged unlawful conduct" and is "insufficient

19

to state a claim." *Gillespie v. St. Regis Residence Club*, 343 F. Supp. 3d 332, 352 (S.D.N.Y. 2018). The Amended Complaint's generic references to "Defendants" in its breach of contract claims—as with its tort and RICO claims—constitute impermissible group pleading. And Plaintiffs do not and cannot allege facts to invoke an exception that would permit group pleading for the claims they assert here, which are governed by the Rule 9(b) pleading standard.

(5) *Fails to Satisfy Requirements of Rule 9(b)*: Where a complaint alleges both non-fraud and fraud claims, the Second Circuit has held "that the heightened pleading standard of Rule 9(b) applies to" both "insofar as the claims are premised on allegations of fraud" based on the same "course of conduct." *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004). Where Rule 9(b) applies, "[t]he complaint must detail the specific statements that are false or fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. Affinion Group*, 889 F.3d 116, 124 (2d Cir. 2018). But the Amended Complaint here does not identify any specific statements made in connection with Plaintiffs' purchases by anyone affiliated with Bluegreen, let alone satisfy that standard of identifying why specific statements are false, identifying the speaker, identifying when and where the statements were made, and explaining why the statements were false. As such, these allegations cannot be credited on this motion to dismiss.

Even more fundamentally, the Amended Complaint does not allege the most basic facts necessary to support a garden-variety breach of contract claim. It does not allege that Plaintiffs entered into a contract with Bluegreen; it alleges Plaintiffs executed contracts over a 15-year period

but does not attach those contracts or even describe their material terms; it does not allege how Bluegreen breached those contracts; and it does not allege how any breach by Bluegreen proximately caused them damages. Indeed, to the extent that the Amended Complaint suggests that Plaintiffs entered into an oral contract concerning repurchase of their "deeded property interest," Dkt. 17 ¶¶ 147 & 151, Plaintiffs' contract claims are plainly barred by the statute of frauds.  NY Gen. Obligations Law, § 5-703. For that reason too, the breach of contract counts must be dismissed.

### B.    Tortious Interference with Contract

"Under New York law, the elements of tortious interference with contract are (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom." *Kirch v. Liberty Media*, 449 F.3d 388, 410 (2d Cir. 2006); *see also Lama Holding Co. v. Smith Barney Inc.,* 88 N.Y. 2d 413, 424 (N.Y. 1996).

Plaintiffs do not and cannot adequately allege facts supporting any of these necessary elements for a claim against Bluegreen. The Amended Complaint does not identify the material terms of the Plaintiffs' contracts. Plaintiffs do not and cannot allege that Bluegreen acted intentionally to cause a breach of those contracts, any breach flowing from those acts, or any damages flowing from those acts. Indeed, the Amended Complaint alleges only that the "Eichner Defendants wrongfully interfered with the contracts between Plaintiffs and TMC"—it says nothing at all about Bluegreen. Dkt. 17, ¶ 258. Plaintiffs therefore do not and cannot state a direct claim for tortious interference with contract by Bluegreen.[7]

---

[7] *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 107-08 (2d Cir. 2009) (affirming grant of motion to dismiss absent allegations supporting a reasonable inference of intent); *Conte v. Emmons,* 895 F.3d 168, 172-173 (2d Cir.

### C.       Breach of Fiduciary Duty

Plaintiffs' "breach of fiduciary duty" claim tries to assert an action under section 349(h) of the General Business Law. "To successfully assert a section 349(h) claim, a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *City of New York v. Smokes-Spirits.Com, Inc.*, 911 N.E. 2d 834, 838 (N.Y. 2009).

Plaintiffs' "breach of fiduciary duty" claim fails for the same dispositive reason that permeates the remainder of the Amended Complaint. Plaintiffs do not allege a single contact between themselves and Bluegreen. Without that—allegations that Bluegreen itself undertook materially misleading consumer oriented conduct to Plaintiffs' detriment—the "breach of fiduciary duty" claim fails.[8]

Nor can Plaintiffs base a breach-of-fiduciary duty claim on the theory that four directors associated with Bluegreen served on TMC's board for a period of time. Beyond labels and conclusions, the Amended Complaint does not identify any facts showing these directors did anything wrong, let alone why it should be imputed to Bluegreen.

To the contrary, the only wrongdoing specifically identified by the New York Attorney General alleged—such as the theft of over $6 million from 2011 to 2013, Dkt. 17-2 ¶¶ 101-116,

---

2018) (reversing and ruling defendants entitled to judgment as a matter of law because insufficient proof they acted with the "purpose of inducing" a breach of contract or that "but for the defendants' actions, the third party would not have breached"); *D'Andrea v. Rafla-Demetrious*, 146 F.3d 63, 66 (2d Cir. 1998) (affirming summary judgment on tortious interference with contract absent allegation of underlying breach).

[8] The same follows in traditional fiduciary duty cases as well. *See Sullivan v. Mers, Inc.*, 30 N.Y.S. 2d 112, 114 (1st Dep't 2016) (affirming dismissal where "plaintiff has not alleged any direct contract or any relationship—contractual or otherwise—between himself" and defendants); *SNS Bank, N.V. v. Citibank, N.A.*, 777 N.Y.S. 2d 62, 64 (1st Dep't 2004) (affirming dismissal: "Under New York law, [Defendant] would not owe plaintiff a fiduciary duty because the relationship between them is one of debtor and note-holding creditor, which is purely contractual"); *Societe Nationale D'Exploitation Industrielle v. Salomon Brothers*, 674 N.Y.S. 2d 648, 649 (1st Dep't 1998) (affirming dismissal because no fiduciary relationship and explaining that "the requisite high degree of dominance and reliance must have existed prior to the transaction giving rise to the alleged wrong, and not as a result of it").

or the mismanagement of the reservation system, Dkt. 17-1 ¶¶ 46-53—are levied entirely against the Eichner Defendants, Dkt. 17 ¶¶ 188-94. And the Assurance of Discontinuance contemplated that the Eichner Defendants—whose company, "Urban," held "all powers and duties in connection with the operation of The Manhattan Club" as manager, Dkt. 17-1 ¶ 35—would remain the manager until 2021, Dkt. 17-1 ¶ 62, while Bluegreen purchased units. In other words, any mismanagement or malfeasance by the Eichner Defendants would also harm Bluegreen.

And "management misconduct will not be imputed to the corporation if the officer acted entirely in his own interests and adversely to the interests of the corporation." *In re CBI Holding Co. v. Ernst & Young LLP*, 529 F.3d 432, 438 (2d Cir. 2008). "[W]hen an agent is engaged in a scheme to defraud his principal, either for his own benefit or that of a third person, he cannot be presumed to have disclosed that which would expose and defeat his fraudulent purpose." *Id.* at 448. Where, as here, the alleged management theft or manipulation of the reservation system would have harmed all owners including Bluegreen, it is not imputable to Bluegreen.

### D.    Fraud

"The required elements of a common-law fraud claim are a misrepresentation or a material omission of fact which was false and known to be false by [the] defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury." *Ambac Assurance Corp. v. Countrywide Home Loans*, 31 N.Y. 3d 569, 578-79 (N.Y. 2018).

Plaintiffs do not identify any material misrepresentation or omission made by anyone affiliated with Bluegreen, explain how anyone at Bluegreen knew it to be false, explain how anyone at Bluegreen intended to induce reliance on it or in fact induced reliance on it, or how such a representation or omission caused them any injury. Any direct claim for fraud must be dismissed.

### E.    RICO

To establish a claim under the federal civil RICO act, a plaintiff must show "(1) conduct, (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018). The plaintiff must also "plead injury to business or property as a result of the RICO violation." *Anation v. Coutts Bank (Switzerland) Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999). The Amended Complaint fails to allege each and every one of these elements adequately, though two of Plaintiffs' failings are particularly glaring.

*No RICO conspiracy.* Plaintiffs label their RICO claim as one for "Conspiracy to Violate § 1962," asserting that "Defendants agreed" to carry out "fraudulent schemes." Dkt. 17, ¶ 276; Dkt. 17, ¶¶ 282-83. Stripped of those "labels and conclusions," *Iqbal*, 556 U.S. at 678, the Amended Complaint utterly fails to allege the existence of a RICO conspiracy. That is because Plaintiffs must (but cannot) show that Bluegreen "knew about and agreed to facilitate the scheme" attributed to the Eichner Defendants. *Salinas v. U.S.*, 522 U.S. 52, 66 (1997).[9]

The Amended Complaint and its exhibits establish just the opposite. Far from showing that Bluegreen knew of and agreed to participate in the Eichner Defendants' scheme, they show that the New York Attorney General approved Bluegreen to put an end to the wrongdoing outlined in the Assurance of Discontinuance. *See* pp. 5-6, above. Plaintiffs do not allege a RICO conspiracy, and certainly not one involving Bluegreen. That independently mandates dismissal of Plaintiffs' RICO claim against Bluegreen.

*No causation.* The RICO statute requires that a RICO plaintiff show "that the defendant's violation not only was a 'but-for' cause of his injury, but was the proximate cause as well."

---

[9] *See Baisch v. Gallina*, 346 F.3d 366, 377 (2d Cir. 2003) ("a plaintiff must allege that the defendant 'knew about and agreed to facilitate the scheme.'"); *Kriss v. Bayrock Grp. LLC*, 2016 WL 7046816, *19 (S.D.N.Y. Dec. 2, 2016) (dismissing RICO conspiracy claims that lacked allegations that defendants "knew about and agreed to the fraudulent scheme").

*Sergeants Benevolent Ass'n Health and Welfare Fund v. Sanofi-Aventis U.S. LLP*, 806 F.3d 71, 86 (2d Cir. 2015). Plaintiffs have not bothered to link the injury they assert here to the RICO predicate acts they assert within that standard.

### III.   In the Alternative, if this Court Dismisses the RICO Claims, Plaintiffs' State Law Claims Should Be Dismissed for Lack of Supplemental Jurisdiction

Plaintiffs concede that the only basis for federal jurisdiction in this case is their RICO claim, with supplemental jurisdiction over the remainder of their claims under 28 U.S.C. § 1367. District courts may "decline to exercise supplemental jurisdiction" if they have "dismissed all claims over which [they] have original jurisdiction." 28 U.S.C. § 1367(c). Dismissal of Plaintiffs' RICO claim, as is mandated by established Supreme Court and Second Circuit precedent, would empower the Court to decline jurisdiction over any claims that survive dismissal—though there should be none.

## CONCLUSION

For the above reasons, Defendant Bluegreen requests that this Court grant its motion to dismiss it from this action with prejudice.

Dated: October 22, 2020

Respectfully submitted,

By:  *[signature: Grace L. Mead]*

    Grace L. Mead
    gmead@stearnsweaver.com
    David T. Coulter
    (*pro hac vice* application pending)
    dcoulter@stearnsweaver.com
    STEARNS WEAVER MILLER WEISSLER
      ALHADEFF & SITTERSON, P.A.
    Museum Tower, Suite 2200
    150 West Flagler Street
    Miami, Florida  33130
    Telephone:  (305) 789-3200
    Facsimile:   (305) 789-3395

     and

    Joseph Facciponti
    Joseph.Facciponti@mmlawus.com
    Gaurav Talwar
    Gaurav.Talwar@mmlawus.com
    MURPHY & MCGONIGLE
    1185 Avenue of the Americas
    New York, New York 10036

    *Attorneys for Defendant Bluegreen*
    *Vacations Unlimited, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 22, 2020, a copy of the foregoing Memorandum of Law, was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

I hereby certify under penalty of perjury that the above document was sent using the mode of service indicated on this 22nd day of October, 2020.

Joseph P. Facciponti