UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CHARLES R. ACKLIN, ET AL., | : | Civil Action No. 20-cv-7042-GHW |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| IAN BRUCE EICHNER, LESLIE H. EICHNER | : | |
| STUART P. EICHNER, SCOTT L. LAGER, T. | : | |
| PARK CENTRAL LLC, O. PARK CENTRAL | : | DEMAND FOR JURY TRIAL |
| LLC, PARK CENTRAL MANAGEMENT, LLC, | : | |
| MANHATTAN CLUB MARKETING GROUP, | : | |
| LLC, NEW YORK URBAN OWNERSHIP | : | |
| MANAGEMENT, LLC AND BLUEGREEN | : | |
| VACATIONS UNLIMITED, INC., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S OPPOSITION TO BLUEGREEN
VACATIONS UNLIMITED, INC.'S MOTION TO DISMISS AMENDED COMPLAINT**

Jean-Marc Zimmerman
Zimmerman Law Group
233 Watchung Fork
Westfield, NJ 07090
T: (908) 768-6408
E: jmz@zimllp.com

Steven M. Hoffberg
Hoffberg & Associates
29 Buckout Road
West Harrison, NY 10604
T: (914) 949-2300
E: steve@hoffberglaw.com

Attorneys for Plaintiffs

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

**INTRODUCTION** ............................................................................................................... 1

**I.      FACTS** ....................................................................................................................... 1

**II.      ARGUMENT** ........................................................................................................... 4

    **A.      Liabilities of TMC's Sponsor Determined by The** ........................................ 4

    **Timeshare Plan, The By-Laws, and The Assignment** ........................................ 4

    **B.      Plaintiffs' Complaint Satisfies Fed. R. Civ. P. 8(a)(2) and 9(b)** ................. 6

    **C.      APA Is Not An Integral Document** ............................................................ 6

    **D.      Corporate Successor Non-Liability Analysis Not Applicable** .................... 9

        **1.      The AOD Did Not Mandate Disruption of Continuity of Enterprise** ................. 11

        **2.      The APA Did Not Eliminate BlueGreen's Liability** ............................. 13

        **3.      APA Did Not Eliminate Continuity of Enterprise** ................................. 14

    **E.      BlueGreen Can Be Liable for Breach of Contract** .................................... 15

    **F.      BlueGreen Tortiously Interfered With Contracts** ..................................... 17

    **G.      BlueGreen Breached Fiduciary Duty They Owed To TMC And Its Members** ...... 18

    **H.      BlueGreen Committed Fraud and Civil RICO Violations** ......................... 20

**III.      CONCLUSION** ...................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*47 East 34th Street (NY), L.P. v. BridgeStreet Worldwide, Inc.*,
   No. 653057/2016, 2019 BL 433881 (Sup. Ct. N.Y. County Nov. 6, 2019) ................. 13

*Baisch v. Gallina*, 346 F.3D 366, 377 (2d Cir. 2003)...................................................... 25

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). ................................ 7

*City of New York v. Charles Pfizer & Co.*, 688 N.Y.S. 2d 23, 24 (1st Dep't 1999)......... 14

*City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 439 (2d Cir. 2008)........... 24

*Conte v. Emmons*, 895 F.3d 168, 172-73 (2d Cir. 2018) .................................................. 21

*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 46-48 (2d Cir. 1991). ................... 7

*D'Andrea v. Rafla-Demetrious*, 146 F.3d 63, 66 (2d Cir. 1998) ...................................... 21

*Delgado v. Matrix*, 613 N.Y.S. 2d 242, 243 (2d Dep't 1994) .......................................... 12

*Dristas v. Amchem Prods.*, 94 N.Y.S. 3d 264, 265 (1st Dep't 2019) ............................... 16

*Grant-Howard Assoc. v. General Housewares Corp.*,
   63 N.Y. 2d 291, 297-98 (N.Y. 1984)............................................................................. 15

*Haynes v. Kleinewafers and Limbo Corp.*, 921 F.2d 453, 458-59 (2d Cir. 1990)............ 15

*Heights v. Elec. Tool Co.*, 525 N.Y.S. 2d 653, 654 (2d Dep't 1998) ............................... 11

*In re New York City Asbestos Litig.*, 789 N.Y.S. 2d 484, 489 (1st Dep't. 2005).............. 12

In re *TBA Global, LLC v. Findus Partners*, 15 N.Y.S. 3d 769, 779-80 (1st Dep't 2015) 15

*Ivory Dev. v. Roe*, 25 N.Y.S. 3d 686, 692-93 (3d Dep't 2016)......................................... 14

*Jerdonek v. 41 West 72 LLC*, 36 N.Y.S. 3d 17 (1st Dep't 2016)...................................... 12

*Kretzmer v. Firesafe Prods. Corp.* , 815 N.Y.S. 2d 340, 341 (N.Y. 2005) ...................... 15

*Kriss v. Bayrock Grp. LLC*, 2016 WL 7046816, * 19 (S.D.N.Y. Dec. 2, 2016) .............. 25

*Oorah, Inc. v. Covista Commc'ns*, 30 N.Y.S. 3d 626, 627-28 (1st Dep't) ....................... 14

*Pasternack v Laboratory Corp. of Am. Holdings,* 27 N.Y.3d 817, 827 (2016)................ 24

*Premium Mortgage Corp. v. Equifax, Inc.*, 583 F.3d 103, 107-088 (2d Cir. 2009) ......... 21

*R&D Elecs. Inc. v. NYP Mgmt. Co.*, 78 N.Y.S. 3d 834, 837 (4th Dep't 2018) ............... 15

*Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) ............................................................ 24

*Rivera v. Anderson United Co.*, 727 N.Y.S. 2d 447 (2d Dep't 2001) ............................ 16

*Salinas v. United States*, 522 U.S. 52, 66 (1997) ............................................................. 25

*Sementz v. Shereling & Walden, Inc.*, 7 N.Y.3d 194, 196 (N.Y. 2006) .......................... 11

*Simpson v. Ithaca Gun Co.*, 856 N.Y.S. 2d 397, 398-99 (4th Dep't 2008) ..................... 16

*SNS Bank, N.V. v. Citibank, N.A.*, 777 N.Y.S. 2d 62, 64 (1st Dep't) ............................. 22

*Societe Nationale D'Exploitation Industrielle v. Salomon Brothers*,
    674 N.Y.S. 2d 648, 649 (1st Dep't 1998) .................................................................... 23

*Sullivan v. Merry, Inc.*, 30 N.Y.S. 2d 112, 114 (1st Dep't 2016) .................................... 22

*Sweatland v. Park*, 587 N.Y.S. 2d 54 (4th Dept. 1992) .................................................... 12

*Washington Mut. Bank v. SIB Mortg. Corp.*, 801 N.Y.S. 2d 821, 822 (2d Dep't 2005) .. 16

*Wass v. Cnty. of Nassau*, 60 N.Y.S. 3d 339 (2d Dep't 2017) .......................................... 11

*Worldcom Network Servs, Inc. v. Polar Commc'ns Corp.*,
    718 N.Y.S. 2d 337, 338 (1st Dep't 2000) .................................................................... 10

*Zinbarg v. Prof'l Bus. Coll. Inc.*, 117 N.Y.S. 3d 228 (1st Dep't 2020) ........................... 10

**Statutes**

18 U.S.C. § 1341 ................................................................................................................ 20

18 U.S.C. § 1343 ................................................................................................................ 20

18 U.S.C. § 1961(1) ........................................................................................................... 20

18 U.S.C. § 1961(5) ........................................................................................................... 20

18 U.S.C. § 1962 ................................................................................................................ 21

18 U.S.C. § 1962(c) ........................................................................................................... 20

18 U.S.C. § 1962(d) ........................................................................................................... 20

N-PCL § 717(a) .............................................................................................................. 5, 18

NY Gen. Obligations Law, § 5-703 ................................................................................. 16

**Rules**

Fed R. Civ. 12(b)(6) ............................................................................................................. 6

Fed R. Civ. 12(d) ................................................................................................................. 6

Fed R. Civ. P. 9(b) ............................................................................................................... 6

Fed. R. Civ. P 12(d) ............................................................................................................ 1

Fed. R. Civ. P. 8(a)(2) ......................................................................................................... 5

Fed. R. Civ. P. 9(b) ............................................................................................................. 1

## INTRODUCTION

Defendant BlueGreen Vacation Unlimited, Inc.'s ("BlueGreen") Motion to Dismiss ("Motion") Plaintiffs' Complaint should be denied because Plaintiffs have properly pled their allegations to satisfy the obligations of Fed. R. Civ. P. 8(a) and 9(b).  BlueGreen's Motion should also be denied because it violates Fed. R. Civ. P 12(d) as it relies on an extrinsic document, i.e., the Asset Purchase Agreement ("APA") dated March 15, 2018 between BlueGreen and the Eichner Defendants (hereinafter collectively "Defendants")[1], that was not integral to the Complaint and should therefore not be considered in deciding the Motion. Finally, the Motion should also be denied because, as shown below, BlueGreen has misrepresented numerous facts in this case and the applicability of the cases they cite that are distinguishable from and therefore not applicable to the distinct facts of this case.

## I.     FACTS

BlueGreen's wrongful actions as operator, i.e., Sponsor, of The Manhattan Club Timeshare Association, Inc. ("TMC"), gave rise to Plaintiff's Complaint. Dkt. 17, ¶¶ 109-209. The operative documents regarding BlueGreen's obligations as Sponsor are TMC's Declaration of Timeshare Plan dated May 1, 2012 ("Timeshare Plan"), TMC's Timeshare Plan By-Laws dated May 1, 2012 ("By-Laws"), and the Assignment dated June 21, 2018 ("Assignment") by which BlueGreen acquired timeshare interests from and thereby succeeded the Eichner Defendants as TMC's Sponsor.[2] The Eichner Defendants continued

---

[1] The APA is the subject of a Motion to Seal filed by BlueGreen on October 22, 2020. (Dkt. 75 and 77).

[2] Copies of the Timeshare Plan, the By-Laws and the Assignment are attached as Exs. 1-3, respectively, to the Declaration of Jean-Marc Zimmerman ("Zimmerman Decl.") submitted in opposition to BlueGreen's motion. As distributed to TMC members, the By-Laws are attached as Ex. C to the Timeshare Plan.

to manage TMC after BlueGreen became Sponsor, and were scheduled to continue to do so until 2021 when BlueGreen was to acquire TMC's management contract.

¶ 3.5 of the Timeshare Plan provides that TMC's "Board is controlled by [the] Sponsor" and the "Sponsor will control decisions affecting the management agreement" between TMC and the management company. ¶ 3.12 of the By-Laws provides that "Each director shall perform duties, and shall exercise powers, in good faith and with a view to the interests of the Timeshare Association." This language tracks the language of § 717(a) of the New York Not for Profit Corporation Law ("N-PCL") that pertains to the duties of directors and officers of New York State not for profit corporations like TMC.

BlueGreen became TMC's Sponsor in 2018 after the New York State Attorney General ("NYAG"), as reflected in the Assurance of Discontinuance ("AOD") dated August 14, 2017, forced the Eichner Defendants to sell their interest in TMC and pay a multi-million dollar sanction, and barred them for life from the timeshare industry, because they committed numerous wrongful acts both in selling TMC timeshares and in operating TMC.[3] These wrongful acts included making numerous misrepresentations, omissions, and false promises to thousands of TMC members to induce them to purchase TMC timeshare interests, charging excessive yearly maintenance fees, and operating an oppressive reservations policy that prioritized transient and non-owner guests over members. These promises were integrally related to the role of Sponsor, with some of them being executory in nature.

---

[3] Copies of the AOD and the Second Affirmation of Assistant NYAG Serwat Farooq dated July 2, 2015 ("Farooq Affirmation") which detail the Eichner Defendants' wrongdoing at TMC are attached as Exs. 1-2, respectively, to the Complaint. Dkt. 17-1, 2.

As alleged in the Complaint, this wrongful conduct, e.g., refusing to buy timeshare interests back from members for the purchase price according to covenants made at time of acquisition, continued after BlueGreen became Sponsor. Dkt. 17, ¶¶ 208-210. BlueGreen also engaged in other wrongful conduct that arose only after becoming Sponsor, e.g., the foreclosure or threatened foreclosure, and the buy-back program where forgiven arrearages are not paid to TMC. Dkt. 17, ¶¶ 202-203.

In drafting their Complaint, Plaintiffs relied on: the AOD; the Farooq Affirmation; the Timeshare Plan; the By-Laws; the Assignment; the Affidavit of TMC's General Manager and Managing Director Joshua A. Wirshba ("Wirshba Affidavit") dated August 27, 2018 attesting that BlueGreen was TMC's Sponsor; the N-PCL; Title 13, Part 24 of the New York Codes, Rules and Regulations that pertain to Timeshare Plans; Plaintiffs' own documents and recollections; and public documents such as the online post from www.businesswire.com dated June 22, 2018.[4]

Plaintiffs' claims are not predicated on the terms of the APA but rather on the duties and obligations attendant to the role of TMC Sponsor, irrespective of the identity of the Sponsor. Plaintiffs did not, and had no need, to rely on the APA. Especially, as it was never disclosed to them (or others) prior to the filing of their Complaint. Plaintiffs were not parties to the agreement, the agreement does not negate, weaken or otherwise undermine their claims against the Defendants, and Plaintiffs would not be prejudiced by its disclosure. Quite simply, the APA is a self-serving document that has not been

---

[4] Copies of the Wirshba Affidavit and the www.businesswire.com post are attached as Exs. 4-5, respectively, to the Zimmerman Decl.

authenticated or otherwise proven to define the present or ultimate rights and responsibilities between the Defendants.

Moreover, various provisions of the APA require the Sponsor and/or Directors they appoint, to take certain specific actions that appear to violate the Director's fiduciary duty and obligations to the TMC members. *See*, for example, APA, Section 3.2(c)(iii)(1) (payment of management fees) and APA, Section 10.3 (payment of timeshare charges and real estate taxes). Other provisions of APA direct BlueGreen to violate the Timeshare Plan. *See*, for example, APA, Section 10.7 (transient rental of unreserved time to the general public). Thus, rather than resolving issues in favor of BlueGreen, the APA appears to inculpate them in a conspiracy to commit fraud, violate provisions of N-CPL, breach fiduciary duties owed to TMC members, and violate the AOD.

## II.   ARGUMENT

### A.  Liabilities of TMC's Sponsor Determined by The Timeshare Plan, The By-Laws, and The Assignment

Contrary to BlueGreen's assertion at p. 11 of their Brief (Dkt. 73), the Complaint clearly pleads bases for liability against Bluegreen, based on the Timeshare Plan, the By-Laws and the Assignment. Also, contrary to BlueGreen's assertion at p. 9 of their Brief, Plaintiffs are not merely seeking to hold BlueGreen liable for the Eichner Defendants' misdeeds. Rather, Plaintiffs seek to hold BlueGreen liable both for their own wrongs committed after they became Sponsor and assumed the position's attendant duties and obligations previously agreed to, and owed to, TMC members by their predecessor Sponsor the Eichner Defendants, and for the wrongs they perpetrated together with the Eichner Defendants who managed TMC while BlueGreen was successor Sponsor. The role of TMC Sponsor was established by the Eichner Defendants, and nothing in the Timeshare Plan,

the By-Laws, or the deeded timeshare interests sold to Plaintiffs and other TMC members permits a party who claims to be the Sponsor to abdicate the position's appurtenant responsibilities.

Under ¶ 3.5 of the Timeshare Plan, the Sponsor controls both TMC's Board and decisions affecting TMC's management. Therefore, under ¶ 3.12 of the By-Laws and N-PCL § 717(a), from the time they became TMC's Sponsor in June 2018 (until the date they supposedly ceased being so)[5], BlueGreen had an obligation to prevent any wrongful conduct at TMC – especially of the kind admitted to in the AOD - whether of their own doing or resulting from the Eichner Defendants' continued management of TMC, and they are liable for any such wrongful conduct that occurred under their watch as TMC Sponsor. BlueGreen's failure while Sponsor to remedy and prevent the wrongs identified in the Complaint - including terminating the Eichner Defendants' management contract breached the fiduciary duty they owed to TMC members.

Further evidence of BlueGreen's agreement to assume and be liable for the Eichner Defendants' wrongful conduct at TMC is found in ¶ 2 of the Assignment where BlueGreen "agree[d] to be bound by, and agree[d] to perform, all of the obligations of Assignor [the Eichner Defendants] in connection with Assignee's [BlueGreen] exercise of the Developer Rights". Developer Rights are defined in the Assignment as "The Timeshare Declaration [Plan], [and] the other Timeshare Project Documents [e.g., Exhibits A and A-1]".

---

[5] While the AOD contemplates in ¶ 64 that the sale to a Purchaser might fail due to a default by the Purchaser, it required the appointment of a Monitor under the auspices of the Office of the Attorney General (OAG) in such event. No such appointment was ever announced, nor was evidence publicly disclosed or presented to TMC members that Bluegreen breached the APA.

**B.  Plaintiffs' Complaint Satisfies Fed. R. Civ. P. 8(a)(2) and 9(b)**

Fed. R. Civ. P. 8(a)(2) provides that a pleading that states a claim for relief must include "a short and plain statement of the claim showing that the pleader is entitled to relief". Plaintiffs' Complaint satisfies this rule as it sets forth facts describing BlueGreen's allegedly wrongful conduct and asserts how that conduct allegedly violates the law entitling plaintiffs to relief.

Fed R. Civ. P. 9(b) provides that in alleging fraud or mistake "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Plaintiffs' Complaint satisfies this rule as the allegations of fraudulent conduct for which BlueGreen is allegedly liable are set forth with great particularity. This includes explicitly citing to the AOD and the Farooq Affirmation and reproducing verbatim the frauds identified therein in the Complaint. Dkt. 17, ¶ 192-193. Incidentally, and contrary to BlueGreen's assertion at p. 12 of their Brief, plaintiffs do not claim that BlueGreen's acquisition of the Eichner Defendants' TMC timeshare interests was fraudulent. Rather, the frauds at issue involve BlueGreen's actions while TMC's Sponsor, such as for example offering to forgive annual maintenance fee arrearages in exchange for delinquent members deeding their interests back to TMC and hence to BlueGreen, without BlueGreen having any intention to actually pay such arrearages to TMC.

**C.  APA Is Not An Integral Document**

Under Fed R. Civ. 12(d), the general rule is that a court may not consider documents that are extrinsic to the Complaint when ruling on a motion to dismiss for failure to sate a claim under Fed R. Civ. 12(b)(6).  A court can only consider extrinsic

documents if they are integral to the Complaint. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 46-48 (2d Cir. 1991). A document is integral to the Complaint if the plaintiff relies on the document's terms and effect when drafting the Complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

Contrary to BlueGreen's assertion at p. 16 of their Brief, and as explained above, Plaintiffs did not have knowledge of, consider or rely upon the terms of the APA to prepare their Complaint. They did not need to. Instead, they relied on the integral documents attached as Exs. 1-5 to the Zimmerman Decl. Also contrary to BlueGreen's assertion at p. 16 of their Brief, Plaintiffs have not used the APA as both a sword and a shield. However, BlueGreen presented it in their Motion, and Plaintiffs would be remiss in not addressing it in this response.  The APA is therefore not an integral document and should not be considered by the Court in deciding the Motion.

Moreover, in addition to not being an integral document, the APA is not the most significant or operative document regarding the nature and extent of BlueGreen's interactions with TMC and the Plaintiffs, and whether Plaintiffs' Complaint properly states a claim. The APA is not dispositive on the issue of BlueGreen's liability for the wrongs they are accused of having committed against Plaintiffs. BlueGreen's repeated focus on the APA is misplaced. The APA only evinces an intention by BlueGreen to acquire the Eichner Defendants' TMC timeshare interests and does not address the issue of liabilities and obligations that arise as a result of being TMC's Sponsor, or of succeeding the Eichner Defendants as TMC's Sponsor with full knowledge of the covenants previously made to Plaintiffs. BlueGreen's focus on the APA detracts from focusing on the documents that are most significant and operative in this case, i.e., The

Timeshare Plan, the By-Laws, the Assignment, and the AOD. The APA's terms are irrelevant to plaintiffs' action against BlueGreen as it is their actions as TMC's Sponsor, and not their purchase of the Eichner Defendants' timeshare interests that are at issue. Therefore, the APA does not absolve BlueGreen of liability for the wrongs committed after they became TMC's Sponsor, but rather documents a continuity of enterprise under which the egregious policies and schemes established during the Eichner Defendants' tenure as TMC Sponsor, continued or accelerated under BlueGreen's tenure.

Moreover, BlueGreen's focus on the APA fails to refute, let alone address, the Complaint's specific allegations of BlueGreen's wrongful conduct. Dkt. 17, ¶¶ 109-209. Instead, BlueGreen simply claims they did nothing wrong, and are not liable for continuing allowing the continuation of practices the Eichner Defendants' admitted in the AOD to be wrong.

Incidentally, BlueGreen's claim that the acquisition intended by the APA document did not close, see Tr. of Oct. 15, 2020 Conference at 13:6, seems to be refuted by the Assignment attached as Ex. 3 to the Zimmerman Decl. which recites that "Assignee [defendant BlueGreen] has acquired all of Assignor's [defendants T. Park and O. Park] respective rights, title, and interest in and to certain designated real and personal property within the Timeshare Project" and was recorded with the City of New York Department of Finance, Office of the City Register. Even if the APA was terminated, BlueGreen is still liable for the wrongs they committed as TMC's Sponsor irrespective of any provision in the APA that purports to absolve them of such liability.

### D. **Corporate Successor Non-Liability Analysis Not Applicable**

The acquisition at issue in this case is factually distinct from the common situation in which the assets of a first company are purchased by a second company, and then a third-party sues the second company to recover for contractual or tort claims arising from actions taken by the first company, and a determination must be made whether the second company is liable for the third-party's claims.

This case, by contrast, involves three distinct business entities: 1) a first entity that owns timeshare interests in and is the Sponsor of a second entity; 2) a second entity that is a New York State not-for-profit corporation timeshare having many thousands of timeshare interests owned by timeshare members; and 3) a third entity that purchased the first entity's timeshare interests in the second entity, thereby succeeding the first entity as and becoming the Sponsor of the second entity.

The assets BlueGreen purchased in this case, i.e., the Eichner Defendants' TMC timeshare interests, are incidental to the Sponsor role BlueGreen assumed and succeeded to, and that gave rise to the duties and obligations owed to TMC members and their resultant liability for failing to do so as exemplified by the wrongs complained of by numerous TMC members in the Complaint.

The mere transfer of timeshare interests does not convey the role of Sponsor, since at least 14,000 other timeshare interests were purchased from the Eichner Defendants without the purchasers of those interests also becoming Sponsor. Therefore, in order to become Sponsor, BlueGreen had to have received something more than timeshare interests from the Eichner Defendants. That something was more was the

benefits, duties and obligations attendant with being TMC's Sponsor, which duties and obligations are now denied by BlueGreen.

None of the cases BlueGreen cites in their brief involve determining whether a successor Sponsor of a timeshare is bound by agreements and obligations entered into by the predecessor Sponsor of the timeshare. Consequently, those cases - including those employing successor-liability analysis to determine whether an asset purchaser is liable for the actions or obligations of an asset seller, are not applicable to the facts of this case.

The cases BlueGreen cites are also distinguishable on other grounds. For example, the cases BlueGreen cites in support of the general rule that a purchaser of assets does not assume the asset seller's liabilities are distinguishable from and unlike the facts of this case on the following grounds: *Zinbarg v. Prof'l Bus. Coll. Inc.*, 117 N.Y.S. 3d 228 (1st Dep't 2020) – employee sued asset purchaser on severance agreement employee entered into with asset seller; *Worldcom Network Servs, Inc. v. Polar Commc'ns Corp.*, 718 N.Y.S. 2d 337, 338 (1st Dep't 2000) – fact that three individuals who formed ETS were once employed by Polar is insufficient to serve as a predicate for the imposition of successor liability on ETS; *Wass v. Cnty. of Nassau*, 60 N.Y.S. 3d 339 (2d Dep't 2017) – asset purchaser not liable for personal injury based on product liability caused by product sold by asset seller; and *Heights v. Elec. Tool Co.*, 525 N.Y.S. 2d 653, 654 (2d Dep't 1998) – asset purchaser not liable for personal injury caused by product sold by asset seller. Therefore, these cases do not support finding that BlueGreen is not liable for the wrongs it is accused of having committed as TMC's successor Sponsor.

1.   <u>The AOD Did Not Mandate Disruption of Continuity of Enterprise</u>[6]

The cases BlueGreen cites in support of the assertion that the AOD mandates the disruption of any continuity of enterprise at TMC are distinguishable from and unlike the facts of this case on the following grounds: *Sementz v. Shereling & Walden, Inc.*, 7 N.Y.3d 194, 196 (N.Y. 2006) - plaintiffs in the case against BlueGreen have not argued the product line exception theory rejected in *Sementz*; *In re New York City Asbestos Litig.*, 789 N.Y.S. 2d 484, 489 (1st Dep't. 2005) - tort case in which asset purchaser sued for injuries caused by product sold by asset seller; *Delgado v. Matrix*, 613 N.Y.S. 2d 242, 243 (2d Dep't 1994) - no facts to support continuity of enterprise exception; *Sweatland v. Park*, 587 N.Y.S. 2d 54 (4th Dept. 1992) - tort case in which asset purchaser sued for injuries caused by product sold by asset seller; and *Jerdonek v. 41 West 72 LLC*, 36 N.Y.S. 3d 17 (1st Dep't 2016) - determination that the board rather than the Sponsor of a condominium exercised control over and was therefore liable for injuries sustained by plaintiff in a common element, i.e., area, of the condominium, was not dependent on the number of board seats held by the Sponsor. Therefore, these cases do not support finding that the AOD mandates the disruption of any continuity of enterprise at TMC.[7]

While the AOD may have sought to remedy the Eichner Defendants' wrongdoing, neither its existence nor the NYAG purported approval of BlueGreen as purchaser of the

---

[6] BlueGreen admits at p. 14 of their Brief that the AOD "enabled continuity [of enterprise] at [TMC]".

[7] TMC existed in the same form both before and after the change in Sponsor form the Eichner Defendants to BlueGreen. More specifically, it continued to exist as the same New York State not for profit corporation, under the same operational management, offering the exact same services, and employing the same wrongful practices. TMC with BlueGreen as Sponsor is more than a mere continuation of TMC with the Eichner Defendants. It is the same entity. Accordingly, BlueGreen is liable both for their own wrongful actions as successor Sponsor to the Eichner Defendants and for the Eichner Defendants' wrongful conduct as TMC's manager that BlueGreen failed to prevent or rectify while TMC's Sponsor. *47 East 34th Street (NY), L.P. v. BridgeStreet Worldwide, Inc.*, No. 653057/2016, 2019 BL 433881 (Sup. Ct. N.Y. County Nov. 6, 2019)

Eichner Defendants' TMC timeshare interests mean that BlueGreen did not engage in wrongdoing after they became TMC's Sponsor. BlueGreen is not the white knight they claim to be. Rather, they are a large, multimillion-dollar public company that saw an opportunity to benefit financially by becoming TMC's Sponsor, and upon doing so, continued many of the wrongful practices begun by the Eichner Defendants that harmed TMC's members and gave rise to the AOD, and initiated new programs that violate the AOD.

For example, ¶ 61 of the AOD specifically provides that "Respondents [the Eichner Defendants] and their agents and employees, including The Manhattan Club, shall not engage in any act directly or indirectly relating to the offer, purchase, sale, issuance, advertisement, marketing, promotion, distribution, negotiation, exchange or transfer of any timeshare interest . . ." Notwithstanding this provision, and as described in the Complaint, while operating TMC as Sponsor, BlueGreen violated this provision by means of their buyback program. Dkt. 17, ¶¶ 150, 154, 191, 202-205, 210, 213-216, 237-241, 248-253, 280. The buyback program included the following frauds and/or breaches:

    i.    offering to buyback timeshares for $100 instead of the purchase price paid as members were promised.

    ii.    releasing claims for maintenance fee arrearages to the detriment of TMC members.

    iii.    failing to properly account for the tax liabilities arising for forgiving arrearages.

    iv.    failing to compensate TMC for timeshare interests bought back that were added to the inventory available for BlueGreen to allocate or sell.

    v.    improperly using unpaid maintenance fees, i.e., arrearages, in calculating payments to be made to the Eichner Defendants.

Also, contrary to BlueGreen's assertion at p. 19 of their Brief, the AOD does not contradict the Complaint. BlueGreen is liable for their wrongful actions at TMC after becoming Sponsor as alleged in the Complaint.

2.   The APA Did Not Eliminate BlueGreen's Liability

Similarly, the cases BlueGreen cites in support of the assertion that the APA eliminated any liability for BlueGreen are distinguishable from, and unlike, the facts of this case on the following grounds: *Oorah, Inc. v. Covista Commc'ns*, 30 N.Y.S. 3d 626, 627-28 (1st Dep't) - asset purchaser not liable for contract at issue since it was not included on schedule of assets purchased; *City of New York v. Charles Pfizer & Co.*, 688 N.Y.S. 2d 23, 24 (1st Dep't 1999) - asset purchaser not liable for tort caused by product sold by asset seller prior to the asset purchase; *Ivory Dev. v. Roe*, 25 N.Y.S. 3d 686, 692-93 (3d Dep't 2016) - continuation exception to non-liability of successor does not apply because asset was not "extinguished" and asset purchaser did not agree to assume asset seller's obligations; *Kretzmer v. Firesafe Prods. Corp.* , 815 N.Y.S. 2d 340, 341 (N.Y. 2005) - fact that asset purchaser "expressly disclaimed assumption of any liability" of asset seller was only one of many facts considered by court in finding no successor liability; and *Haynes v. Kleinewafers and Limbo Corp.*, 921 F.2d 453, 458-59 (2d Cir. 1990) and *Grant-Howard Assoc. v. General Housewares Corp.*, 63 N.Y. 2d 291, 297-98 (N.Y. 1984) - indemnification cases. Therefore, these cases do not support finding that the APA eliminated or precluded any liability for BlueGreen.

3. <u>APA Did Not Eliminate Continuity of Enterprise</u>

Likewise, the cases BlueGreen cites in support of the assertion that the APA eliminated any continuity of enterprise at TMC are distinguishable from, and unlike, the facts of this case on the following grounds: In re *TBA Global, LLC v. Findus Partners*, 15 N.Y.S. 3d 769, 779-80 (1st Dep't 2015) - asset purchaser not liable for fee that asset seller agreed to pay to financial advisor who brokered the asset sale; *R&D Elecs. Inc. v. NYP Mgmt. Co.*, 78 N.Y.S. 3d 834, 837 (4th Dep't 2018) - interpleader case brought by bank to determine whether money in account of successor company should be used to pay judgment third party attained against predecessor company; *Simpson v. Ithaca Gun Co.*, 856 N.Y.S. 2d 397, 398-99 (4th Dep't 2008) - surrender of assets by debtor to secured creditor is not a merger; *Washington Mut. Bank v. SIB Mortg. Corp.*, 801 N.Y.S. 2d 821, 822 (2d Dep't 2005) - employee not entitled to sue new employer for judgment employee obtained against his former employer that ceased operating when he went to work for new employer because of a lack of continuity of ownership; *Dristas v. Amchem Prods.*, 94 N.Y.S. 3d 264, 265 (1st Dep't 2019) - injured party in tort case failed to plead continuity of ownership in trying to hold company liable as successor to company that manufactured product that caused injury; and *Rivera v. Anderson United Co.*, 727 N.Y.S. 2d 447 (2d Dep't 2001) - product line exception to successor non-liability does not apply. BlueGreen's liability is not premised on the Eichner Defendants' ownership of TMC timeshare interests or any continuity of ownership by them. It is rather predicated on the assumption of the rights and responsibilities of the Sponsor.  Therefore, these cases do not support finding that the APA eliminated any continuity of enterprise at TMC.  In any event, Plaintiffs' Complaint does not claim that BlueGreen is liable under the continuity

14

of enterprise theory exception to the general rule that the purchaser of a company's asset is not liable for the seller's debts or liabilities created by contract or tort.

BlueGreen and the Eichner Defendants acted jointly in operating and managing, respectively, TMC while committing fraudulent acts. The APA acts at most in this context as an indemnification agreement between them and does not prevent third parties from seeking to hold them responsible for their wrongful conduct at TMC. The Plaintiffs were not parties to the APA, were not made aware of its terms, and therefore are not bound by its terms. As a result, an agreement to keep the APA secret from the Plaintiffs cannot override any resulting liability the Defendants may have as a result of the Plaintiffs being damaged by the APA.  Likewise, the mere existence of the unauthenticated APA should not be considered by the Court in deciding the Motion to Dismiss as it was not integral to the Complaint, and especially absent any discovery into the APA, the history of the APA, the current relationship between the Defendants, and their dispute that supposedly resulted in an arbitration proceeding that they settled.

**E.  BlueGreen Can Be Liable for Breach of Contract**

Plaintiffs properly pled their claim of breach of contract against BlueGreen.[8] Plaintiffs do not allege that BlueGreen was involved in offering timeshare interests to them. But rather, upon becoming TMC's successor Sponsor, BlueGreen had an obligation to honor the promises made by their predecessor Sponsor as material consideration and inducement to Plaintiffs to enter into the agreements to purchase their respective

---

[8] In order to recover from a defendant for breach of contract, a plaintiff must prove, by a preponderance of the evidence, (1) the existence of a contract between the plaintiff and the defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach. *Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of New York,* 375 F.3d 168, 177 (2d Cir.2004)

timeshare interests and accept the attendant liabilities arising from such purchase. Especially, since as TMC's Sponsor BlueGreen had the ability to control TMC's operations and an obligation to honor promises made to keep annual maintenance fees low, enable same-day and short-notice reservations to be easily made, and to buy back members' timeshare interests for the purchase price paid, which were all promises made by the Sponsor in that role.

BlueGreen's contention that their purchase of assets, i.e., the Eichner Defendants' TMC timeshare interests, did not result in their assuming responsibility for honoring such contracts or liability in the event they failed to do so, is inapposite because BlueGreen's liability is premised on their having become TMC's Sponsor and not on their having purchased timeshare interests.

BlueGreen's assertion at p. 21 of their Brief that "Plaintiffs' contract claims are plainly barred by the statute of frauds. NY Gen. Obligations Law, § 5-703" is not correct. The obligation of TMC's Sponsor to buy back the timeshare interests at the price members paid is documented in the AOD, ¶ 43 (executed by the Eicher Defendants, and known to BlueGreen when it succeeded them as TMC's Sponsor), and which provides:

> 43. During the period from 2011 through 2014, certain members of the sales staff employed by Sponsors made numerous oral representations to certain prospective purchasers in connection with the offering for sale of timeshare interests that were contrary to the terms of the Offering Plans, including but not limited to, misrepresentations concerning (i) the existence of a cancellation period, (ii) the fact that the purchase of the timeshare interest was not to be viewed as an investment in real estate, and (iii) **the Sponsors' willingness to buy back the timeshare interest at the price paid by the purchaser**.[9]

---

[9] While this admission against interest applies to promises made to prospective purchasers including certain of the Plaintiffs during the time-period covered by the AOD, the same promises were made to all TMC members. Moreover, the provision in Article 16 of the Timeshare Plan that originated with the Eichner Defendants, by which TMC's Sponsor has a right of first refusal to buy back timeshare interests from TMC members, lends credence to the fact that a promise was made to all prospective members that they could sell their timeshare interests back to TMC for the purchase price as an inducement for them to buy.

Plaintiffs performed under their respective contracts by paying the purchase price to acquire their timeshare interests, and then timely paying their yearly maintenance fees. As Sponsor, BlueGreen succeed to the right to assess and collect annual maintenance fees from TMC members including Plaintiffs, and to foreclose on the timeshare interests of members if such payments were not made. They therefore have a corresponding obligation under such contract to honor the promises made by their predecessor Sponsor, the Eichner Defendants.

BlueGreen's failure to do so as alleged in the Complaint constitutes a breach of those contracts.

### F.  BlueGreen Tortiously Interfered With Contracts

Plaintiffs properly pled their claim of tortious interference against BlueGreen.[10] By taking actions, or failing to take actions, to honor contractual agreements that the Eichner Defendants entered into with Plaintiffs, which agreements BlueGreen knew of as they were disclosed in the AOD, BlueGreen tortiously interfered with such contracts thereby damaging the Plaintiffs.  For example, BlueGreen's admission in their Motion that they never intended to honor the agreements made by the Eichner Defendants with the Plaintiffs exhibits a clear and unmistakable attempt to interfere with such contacts and the Eichner Defendants' ability to perform, since the obligations arising from those contracts could only be fulfilled by the Sponsor. BlueGreen was not an agent of the Eichner Defendants, had a separate role at TMC, and at the time of the tortious

---

[10] Under New York State law, the elements of tortious interference with contract are: 1) the existence of a valid contract between the plaintiff and a third party; 2) the defendant's knowledge of that contract; 3) the defendant's intentional procurement of the third-party's breach of the contract without justification; 4) actual breach of the contract; and 5) damages resulting therefrom. *Lama Holding Co. v. Smith Barney*, 88 N.Y. 2d 413, 424 (N.Y. 1996).

interference was a third party capable of tortuously interfering with the Plaintiffs' agreements with the Eichner Defendants.  It appears that BlueGreen sought to carefully craft terms in the APA which purport to extinguish the continuing liability for the covenants made by the predecessor Sponsor as material inducements to Plaintiffs and TMC members in general to purchase their TMC timeshare interests.

The cases BlueGreen cites to demonstrate that Plaintiffs have failed to properly plead their tortious interference claim are distinguishable from and unlike the facts of this case on the following grounds: *Premium Mortgage Corp. v. Equifax, Inc.*, 583 F.3d 103, 107-088 (2d Cir. 2009) - state claims related to consumer reports preempted by federal law so cause of action fails; *Conte v. Emmons*, 895 F.3d 168, 172-73 (2d Cir. 2018) - no intent or causation resulting from state's investigation of plaintiff's business. State had no ulterior purpose other than law enforcement goal; and *D'Andrea v. Rafla-Demetrious*, 146 F.3d 63, 66 (2d Cir. 1998) - no tortious interference where Complaint failed to allege breach of contract. Therefore, these cases do not support finding that the plaintiffs failed to properly plead their allegations of tortious interference against BlueGreen.

### G. **BlueGreen Breached Fiduciary Duty They Owed To TMC And Its Members**

Plaintiffs properly pled their claim of breach of fiduciary duty against BlueGreen.[11] By virtue of being TMC's Sponsor, BlueGreen appointed four of the seven members of TMC's Board of Directors. BlueGreen therefore controlled the Board and had the ability and an obligation under the Timeshare Plan, the By-Laws, N-PCL § 717(a), and the Assignment, to act in the best interests of TMC's members.  Moreover,

---

[11] Under § 349(h) of the General Business Law of New York State, the elements of a breach of fiduciary duty are: 1) consumer-oriented conduct by defendant; 2) such conduct being misleading in a material way; and 3) plaintiff suffered injury as a result of the misleading conduct. *Stutman v. Chemical Bank*, 95 N.Y. 2d 24, 29 (2000).

since the Eichner Defendants continued to manage TMC while BlueGreen was Sponsor, BlueGreen had an obligation and owed a duty to TMC members to ensure that the Eichner Defendants did not continue the wrongful practices they engaged in that gave rise to the AOD.?

The wrongs that BlueGreen is accused of are things that were in their control as Sponsor to rectify and prevent but that they failed to do. This includes failing to discontinue the Eichner Defendants' wrongful practices in charging excessive maintenance fees, operating an oppressive reservations policy, and refusing to buy-back members' timeshare interests for their purchase price.

Whether BlueGreen acquired any units pursuant to their $100 foreclosure/buy-back and forgiveness of arrearages program is not determinative of whether they engaged in, or conspired to engage in, wrongful conduct that breached a duty they owed to TMC's members. The offer to do so was wrongful, *inter alia,* since BlueGreen did not intend to pay the forgiven arrearages back to TMC, thereby damaging and breaching their duty to TMC's members.

The cases BlueGreen cites to demonstrate that plaintiffs have failed to allege that BlueGreen breached a fiduciary duty are distinguishable from the facts of this case on the following grounds: *Sullivan v. Merry, Inc.*, 30 N.Y.S. 2d 112, 114 (1st Dep't 2016) - plaintiff failed to allege a relationship where defendant was under a duty to act for plaintiff's benefit, so no breach of a fiduciary duty; *SNS Bank, N.V. v. Citibank, N.A.*, 777 N.Y.S. 2d 62, 64 (1st Dep't) - debtor-creditor relationship did not give rise to a fiduciary duty; and *Societe Nationale D'Exploitation Industrielle v. Salomon Brothers*, 674 N.Y.S. 2d 648, 649 (1st Dep't 1998) - disparity of knowledge between sophisticated institutional

investor and defendant's allegedly incomplete disclosure does not give rise to a fiduciary duty of disclosure. Therefore, these cases do not support finding that the plaintiffs failed to properly plead their allegations that BlueGreen breached their fiduciary duty.

Incidentally, Plaintiffs' counsel's comment during the Court hearing held on October 15, 2020 that they "didn't know what [BlueGreen's TMC] directors did or did not do", Tr. of Oct. 15, 2020 Conference at 10:16, has to do with the specific statements made or actions taken by individual directors, but it does not mean and has nothing to do with the fact that as alleged in the Complaint, BlueGreen's TMC directors allowed wrongful conduct to continue at TMC after BlueGreen became TMC's Sponsor.

### H. __BlueGreen Committed Fraud and Civil RICO Violations__

Plaintiffs properly pled their fraud claim against BlueGreen.[12] Plaintiffs also properly pled their RICO claim against BlueGreen as the Complaint adequately pleads both a substantive RICO claim under 18 U.S.C. § 1962(c), and a RICO conspiracy claim under 18 U.S.C. § 1962(d).

Plaintiffs' substantive RICO claim properly allege that BlueGreen participated in the "(1) conduct [and operation] (2) of an enterprise [TMC] (3) through a pattern (4) of racketeering activity", to enrich themselves by defrauding TMC members. *City of New York v. Smokes-Spirits.com*, *Inc.*, 541 F.3d 425, 439 (2d Cir. 2008) and *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). Plaintiffs alleged the requisite predicate acts of racketeering activity under 18 U.S.C. § 1961(1) to be mail fraud under 18 U.S.C. §

---

[12] Under New York State law, the elements of a common-law fraud claim are "a misrepresentation or a material omission of fact which was false and known to be false by [the] defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury" *Pasternack v Laboratory Corp. of Am. Holdings,* 27 N.Y.3d 817, 827 (2016).

1341 and wire fraud under 18 U.S.C. § 1343; and alleged hundreds of related predicate acts by BlueGreen over a continuous extended period of time to establish a pattern of racketeering activity under 18 U.S.C. § 1961(5) directed against hundreds of victims, i.e., TMC members who BlueGreen sought to fleece by their own actions and by acting together with the Eichner Defendants. As alleged in the Complaint, the maintenance fees and reservation system policies were fraudulent, and these activities were conducted through the mail and interstate wires.

Plaintiffs' RICO conspiracy claim properly alleges that together with the Eichner Defendants, BlueGreen "knew about and agreed to facilitate" the Defendants' schemes intended to defraud the Plaintiffs and other TMC members. *Salinas v. United States*, 522 U.S. 52, 66 (1997).

Plaintiffs' RICO claims properly allege that they were injured in their property by reason of BlueGreen's violation of 18 U.S.C. § 1962, and that such racketeering activity was the proximate cause of their injuries.

The cases BlueGreen cites to demonstrate that plaintiffs failed to properly plead their RICO allegations are distinguishable from the facts of this case on the following grounds: *Baisch v. Gallina*, 346 F.3D 366, 377 (2d Cir. 2003) - plaintiff had no RICO standing as he was not the target of the racketeering enterprise. Also, plaintiff's injury did not result from predicate acts committed by the RICO enterprise; and *Kriss v. Bayrock Grp. LLC*, 2016 WL 7046816, * 19 (S.D.N.Y. Dec. 2, 2016) - contrary to BlueGreen's contention, the court did not dismiss all the RICO claims, but rather distinguished between violations of substantive RICO laws and conspiracy to violate RICO laws, and

which parties were liable for each offense. Therefore, these cases do not support finding

that the plaintiffs failed to properly plead their RICO allegations against BlueGreen.

### III.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that BlueGreen's Motion

to Dismiss be denied. If, however, the Court is inclined to grant the Motion, Plaintiffs

respectfully request leave to be allowed to amend their Complaint.


Dated: November 12, 2020

                                     Respectfully submitted,

                                     By:/s/ Jean-Marc Zimmerman
                                     Jean-Marc Zimmerman
                                     Zimmerman Law Group
                                     233 Watchung Fork
                                     Westfield, NJ 07090
                                     T: (908) 768-6408
                                     E: jmz@zimllp.com

                                     Steven M. Hoffberg
                                     Hoffberg & Associates
                                     29 Buckout Road
                                     West Harrison, NY 10604
                                     T: (914) 949-2300
                                     E: steve@hoffberglaw.com

                                     Attorneys for Plaintiffs