**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

—————————————————————————— X

CHARLES R. ACKLIN, et al.,                    :
                                              :
                   Plaintiffs,                :
                                              :     Civil Action No.
          v.                                  :
                                              :     20-cv-07042 (GHW)
IAN BRUCE EICHNER, et al.,                    :
                                              :
                   Defendants.                :
                                              :
—————————————————————————— X

**MEMORANDUM OF LAW IN SUPPORT OF**
**THE TMC DEFENDANTS' MOTION TO DISMISS**

KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, NY 10019

*Oral Argument Requested*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ........................................................................................... 1

PLAINTIFFS' ALLEGATIONS ........................................................................................... 3

   I.     PLAINTIFFS PURCHASE TMC TIMESHARE INTERESTS ................................ 3

   II.    ALLEGED PRE-PURCHASE REPRESENTATIONS ...................................... 4

   III.   NEW YORK STATE ATTORNEY GENERAL INVESTIGATION ........................... 4

   IV.   DEFENDANT BLUEGREEN'S WRONGDOING ................................................... 4

ARGUMENT ....................................................................................................................... 5

   I.     PLAINTIFFS' CLAIMS ARE TIME-BARRED ................................................... 5

      A.   The Fraud Claim Is Untimely ................................................................... 5

      B.   The RICO Claim Is Untimely ................................................................... 6

      C.   The Breach of Contract Claims Are Untimely ........................................... 7

      D.   The Tortious Interference with Contract Claim Is Untimely ....................... 9

      E.   The GBL § 349 Claim Is Untimely ........................................................... 9

   II.    PLAINTIFFS FAIL TO PLAUSIBLY STATE ANY CLAIMS .................................. 10

      A.   Plaintiffs Fail To Adequately Plead A RICO Claim .................................. 10

      B.   Plaintiffs Fail to Adequately Plead a Fraud Claim ..................................... 15

      C.   Plaintiffs Do Not Adequately Plead Breach of Contract Claims .................. 17

      D.   Plaintiffs Fail to Adequately Plead a Tortious Interference with Contract Claim ........ 20

      E.   Plaintiffs Fail To Adequately Plead A Claim Under GBL § 349 ................. 22

   III.   THE TMC DEFENDANTS CANNOT BE LIABLE FOR ANY ALLEGED
CONDUCT ATTRIBUTABLE TO BLUEGREEN .................................................. 23

   IV.   THE CASE SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER
JURISDICTION .................................................................................................... 24

   V.   CERTAIN PLAINTIFFS HAVE NO STANDING TO MAINTAIN THIS SUIT .......... 25

CONCLUSION .................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABB Indus. Sys. v. Prime Tech., Inc.*,
    120 F.3d 351 (2d Cir. 1997).................................................................................7

*Albunio v. Int'l Safety Grp., Inc.*,
    15-cv-152, 2016 WL 1267795 (S.D.N.Y. Mar. 30, 2016)......................................14

*Alpha Capital Anstalt v. Schwell Wimpfheimer & Assoc. LLP*,
    Fed. Sec. L Rep. P. 100071 (S.D.N.Y. Mar. 30, 2018). ........................................16

*Am. Nat. Theatre and Academy v. Am. Nat. Theatre Inc.*,
    05-cv-4535, 2006 WL 4882916 (S.D.N.Y. Sept. 27, 2006) ...................................18

*Ash v. Jacobson*,
    16-cv-9548, 2020 WL 2848178 (S.D.N.Y. June 1, 2020).....................................24

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................................10

*Backus v. U3 Advisors, Inc.*,
    16-cv-8990, 2017 WL 3600430 (S.D.N.Y. Aug. 18, 2017) ...................................16

*Baker-Rhett v. Aspiro AB*,
    324 F. Supp. 3d 407 (S.D.N.Y. 2018)....................................................................25

*Balderas v. Barmadon Mgt. LLC*,
    17-cv-7489, 2019 WL 1258921 (S.D.N.Y. Mar. 19, 2019)....................................24

*Beecher v. Riverdale Riding Corp.*,
    08-cv-6062, 2010 WL 5298017 (S.D.N.Y. Dec. 21, 2010)....................................14

*Bigsby v. Barclays Capital Real Estate, Inc.*,
    170 F. Supp. 3d 568 (S.D.N.Y. 2016).....................................................................12

*Bisk v. The Manhattan Club Timeshare Ass'n*,
    118 A.D.3d 585 (1st Dep't 2014) ...........................................................................25

*Borden v. City of New York*,
    16-cv-716, 2017 WL 744593 (S.D.N.Y. Feb. 24, 2017) ........................................25

*Cellucci v. O'Leary*,
    19-cv-2752, 2020 WL 977986 (S.D.N.Y. Feb. 28, 2020) ......................................18

*Chevron Corp. v. Donziger*,
  871 F. Supp. 2d 229 (S.D.N.Y. 2012)..................................................................................9

*CIT Bank, N.A. v. Nwanganga*,
  328 F. Supp. 3d 189 (S.D.N.Y. 2018)................................................................................10

*Cortec Indus., Inc. v. Sun Holding L.P.*,
  949 F.2d 42 (2d Cir. 1991)..................................................................................................3

*Dominguez v. Banana Republic, LLC*,
  19-cv-10171, 2020 WL 1950496 (S.D.N.Y. Apr. 23, 2020) ..............................................24

*Eaves v. Designs for Fin., Inc.*,
  785 F. Supp. 2d 229 (S.D.N.Y. 2011)..................................................................................7

*End Line Inv'rs, Ltd. v. Wells Fargo*,
  16-cv-7009, 2018 WL 3231649 (S.D.N.Y. Feb. 27, 2018) .................................................18

*Ezra v. Weitz & Luxenberg, P.C.*,
  794 F. App'x 27 (2d Cir. 2019) ...........................................................................................7

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
  385 F.3d 159 (2d Cir. 2004)..........................................................................................11, 17

*Flatiron Acquisition Veh. LLC v. CSE Mtge. LLC*,
  17-cv-8987-GHW, 2019 WL 1244294 (S.D.N.Y. Mar. 18, 2019)......................................19

*FPP, LLC v. Xaxis US, LLC*,
  764 F. App'x 92 (2d Cir. 2019) ..........................................................................................16

*Frand v. Woldiger*,
  18-cv-4816, 2019 WL 1897453 (S.D.N.Y. Apr. 29, 2019) .................................................19

*In re Fyre Festival Litig.*,
  399 F. Supp. 3d 203 (S.D.N.Y. 2019)............................................................................21, 22

*Garber v. Legg Mason, Inc.*,
  347 F. App'x 665 (2d Cir 2009) ...........................................................................................6

*Geiss v. Weinstein Co. Holdings*,
  383 F. Supp. 3d 156 (S.D.N.Y. 2019)................................................................................14

*Gross v. Waywell*,
  628 F. Supp. 2d 475 (S.D.N.Y. 2009)................................................................................14

*Hecht v. Commerce Clearing House, Inc.*,
  897 F.2d 21 (2d Cir. 1990)................................................................................................15

*Ibrahim v. Pena*,
  16-cv-7774, 2017 WL 3601246 (S.D.N.Y. Aug. 21, 2017) ....................................................10

*Int'l Bhd. of Teamsters v. Quest Diagnostics Inc.*,
  10-cv-1692, 2012 WL 13202126 (E.D.N.Y. Apr. 19, 2012) ...................................................7

*John Paul Mitchell Sys. v. Quality King Distributors, Inc.*,
  99-cv-9905, 2001 WL 910405 (S.D.N.Y. Aug. 13, 2001) ) ...................................................12

*Kalimantano GmbH v. Motion in Time, Inc.*,
  939 F. Supp. 2d 392 (S.D.N.Y. 2013).......................................................................11, 13, 14

*Kirk v. Heppt*,
  423 F. Supp. 2d 147, 151 (S.D.N.Y. 2006)...........................................................................14

*Knoll v. Schectman*,
  275 F. App'x 50 (2d Cir. 2008) .............................................................................................13

*Kumaran v. Natl. Futures Assn.*,
  20-cv-3668, 2020 WL 3630389 (S.D.N.Y. July 2, 2020).....................................................24

*In re Lehr Constr. Corp.*,
  551 B.R. 732 (S.D.N.Y. 2016), *aff'd* 666 F. App'x 66 (2d Cir. 2016)...................................23

*Mackenzie Architects, PC v. VLG Real Estates Developers*,
  15-cv-1105, 2016 WL 4703736 (N.D.N.Y. Sept. 8, 2016).....................................................7

*Maricultura Del Norte, S. de R.L. de C.V. v. Umami Sustainable Seafood, Inc.*,
  769 F. App'x 44 (2d Cir. 2019) .............................................................................................21

*McAllister v. Quick Park*,
  16-cv-9885, 2017 WL 4477057 (S.D.N.Y. Sept. 11, 2017) ...................................................5

*Mergers and Acquisition Services, Inc. v. Eli Glob*,
  15-cv-3723, 2017 WL 1157132 (S.D.N.Y. Mar. 27, 2017)...................................................21

*Mindspirit, LLC v. Evalueserve Ltd.*,
  346 F. Supp. 3d 552 (S.D.N.Y. 2018)..................................................................................8, 9

*Morse v. Rescap Borrower Claims Tr.*,
  14-cv-5800, 2015 WL 353931 (S.D.N.Y. Jan. 26, 2015), *aff'd sub nom. In re
  Residential Capital*, 628 F App'x 63 (2d Cir. 2016) ............................................................16

*Myers Indus., Inc. v. Schoeller Arca Sys., Inc.*,
  171 F. Supp. 3d 107 (S.D.N.Y. 2016).....................................................................................8

*N.F.L. Ins. Ltd. v. B & B Holdings, Inc.*,
  874 F. Supp. 606 (S.D.N.Y. 1995) ........................................................................................18

*Nasik Breeding & Research Farm Ltd. v. Merck & Co.*,
165 F. Supp. 2d 514 (S.D.N.Y. 2001)........................................................................15

*PetEdge, Inc. v. Garg*,
234 F. Supp. 3d 477 (S.D.N.Y. 2017).................................................................17, 23

*Pike v. N.Y. Life Ins. Co.*,
72 A.D.3d 1043 (2d Dep't 2010) ...............................................................................8

*Procapui-Productores de Camaroes De Icapui Ltda. v. Layani*,
07-cv-6627, 2008 WL 3338199 (S.D.N.Y. Jan. 11, 2008) ......................................13

*Procapui-Productores de Camaroes de Icapui Ltda. v. G.F. Higgins, Inc.*,
07-cv-6627, 2008 WL 3338200 (S.D.N.Y. Aug. 8, 2008) .......................................13

*Russell v. New York Univ.*,
15-cv-2185, 2017 WL 3049534 (S.D.N.Y. July 17, 2017), *aff'd* 739 F. App'x
28 (2d Cir. 2018)......................................................................................................24

*Saini v. Cigna Life Ins. Co. of New York*,
2018 Employee Benefits Cas. 144316 (S.D.N.Y. Apr. 24, 2018) ......................22, 23

*Sejin Precision Indus. Co., Ltd. v. Citibank, N.A.*,
726 F. App'x 27 (2d Cir. 2018) ...................................................................................6

*Sheppard v. Manhattan Club Timeshare Ass'n*,
11-cv-4362-PKC, 2012 WL 1890388 (S.D.N.Y. May 23, 2012)..............................22

*Shin v. Am. Airline, Inc.*,
726 F. App'x 89 (2d Cir. 2018) .................................................................................17

*Smith v. Manhattan Club Timeshare Ass'n*,
944 F. Supp. 2d 244 (S.D.N.Y. 2013)........................................................................22

*Solow v. Stone*,
994 F. Supp. 173 (S.D.N.Y. 1998), *aff'd*, 163 F.3d 151 (2d Cir. 1998)...................22

*Spool v. World Child Int'l Adoption Agency*,
520 F.3d 178 (2d Cir. 2008).....................................................................................14

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
547 F.3d 406 (2d Cir. 2008)........................................................................................6

*State St. Glob. Advisors Tr. Co. v. Visbal*,
431 F. Supp. 3d 322 (S.D.N.Y. 2020)..........................................................15, 17, 20

*Tardibuono-Quigley v. HSBC Mortg. Corp.*,
15-cv-6940, 2017 WL 1216925 (S.D.N.Y. Mar. 30, 2017)....................................12

*Wall v. CSX Transp.*,
    471 F.3d 410 (2d Cir. 2006) ................................................................................................17

*World Wrestling Entertainment, Inc. v. Jakks Pac., Inc.*,
    328 F. App'x 695 (2d Cir. 2009) .........................................................................................6

**Rules and Statutes**

13 NYCRR § 24.1 ................................................................................................................12

18 U.S.C. § 1962(c) ............................................................................................................11

18 U.S.C. § 1964(c) ............................................................................................................14

28 U.S.C. § 1367 ...........................................................................................................15, 24

CPLR 213(2) ........................................................................................................................7

CPLR 213(8) ........................................................................................................................5

CPLR 214(4) ....................................................................................................................9, 10

Fed. R. Civ. P. 9 .........................................................................................................*passim*

Fed. R. Civ. P. 12 .......................................................................................................*passim*

Fed. R. Civ. P. 17 ...............................................................................................................25

N.Y. Gen. Bus. Law § 349 ..........................................................................................*passim*

N.Y. Gen. Bus. Law § 352-e .............................................................................................12

Defendants Ian Bruce Eichner, Leslie H. Eichner, Stuart P. Eichner, Scott L. Lager, T. Park Central LLC, O. Park Central LLC, Park Central Management, LLC, Manhattan Club Marketing Group, LLC, and New York Urban Ownership Management, LLC (collectively, the "TMC Defendants") respectfully submit this memorandum of law in support of their motion, pursuant to Rules 9(b), 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (the "Rules"), to dismiss the Complaint (Dkt. No. 17, "Compl.").

## PRELIMINARY STATEMENT

This case is about 208 Plaintiffs who have soured on their respective ownership interests in a timeshare property developed by the TMC Defendants known as The Manhattan Club ("TMC"), despite having each enjoyed the benefits of those interests for no less than seven years, and in some cases as many as twenty-four years.[1]  Despite their long tenure as owners, Plaintiffs now cry foul about policies that govern reservations and the assessment of maintenance fees, even though the policies were disclosed in writing to Plaintiffs, are expressly incorporated in their deeded ownership interests, and have not changed since TMC's inception.  Plaintiffs also baselessly contend that they are entitled to rescind their purchases of TMC interests and receive full refunds, despite using their ownership interests for many years.

In the Complaint, Plaintiffs attempt to assert five causes of action against the TMC Defendants: (i) breach of contract, (ii) tortious interference, (iii) fraud, (iv) violation of GBL Section 349 (an inapplicable New York State statute prohibiting deceptive trade practices), and (v) in a failed attempt to obtain jurisdiction here, federal RICO.  All claims must be dismissed as a matter of law because they are time-barred and fail to state a claim.

---

[1] The only exceptions are the plaintiffs who are not actual TMC owners, and have no basis to bring these claims.

First, according to the Complaint itself, the alleged misconduct took place before 2013. Even treating all 208 Plaintiffs as if they had purchased their TMC interests on the most recent date that any one acquired their interest – in 2013 – the time to bring claims expired long ago. Accordingly, the Court should dismiss this action, in its entirety, without granting leave to amend.

Second, the Complaint fails to establish the elements of any of the causes of action against the TMC Defendants.  For instance, the claims for breach of contract and tortious interference with contract do not cite any terms of the contracts purportedly breached, much less append them.  Despite claiming fraud in the inducement, the Complaint does not set forth with requisite particularity the specifics of the alleged fraud, such as what the allegedly fraudulent representations consisted of, who made them, or when or to whom they were made.  And despite claiming a violation of GBL Section 349, the Complaint fails to plead what conduct was allegedly "deceptive," or how this (un-plead) conduct was directed at the public in general.

The Complaint's most profound pleading deficiency relates to the RICO claim, Plaintiffs' sole basis for jurisdiction before this Court.  Plaintiffs do not even attempt to satisfy the primary elements of a RICO cause of action, including pleading the existence of any predicate acts, any pattern of racketeering activity, or any agreement amongst the TMC Defendants to engage in any conspiracy, let alone damages.  Moreover, like Plaintiffs' fraud claim, the RICO claim also fails under Rule 9(b).  To the extent the RICO claim is dismissed, as it must be, there is no basis for the Court to exercise supplemental jurisdiction over any of the state law claims, to the extent any remain.

In addition to these fatal defects, certain Plaintiffs have no standing to bring the Complaint at all.  At least thirty-six Plaintiffs already released any claims they may have had related to their interests in TMC, and another seven never had any TMC ownership interests in the first place.

Based on the foregoing, as detailed further herein, this Court should dismiss the Complaint in its entirety, with prejudice.

## PLAINTIFFS' ALLEGATIONS

### I.    PLAINTIFFS PURCHASE TMC TIMESHARE INTERESTS

TMC is a timeshare property in Manhattan developed by the TMC Defendants, who, according to the Complaint, managed and operated TMC until defendant Bluegreen Vacations Unlimited, Inc. ("Bluegreen") assumed their rights and responsibilities in June 2018.  Compl. ¶¶ 128-140, 142.  The 208 Plaintiffs are individuals who reside in various locations, including New York.  *Id.* ¶¶ 1-127.  According to the Complaint, between 1996 and no later than 2013, each plaintiff entered into a contract with the TMC Defendants ("Purchase Contract"), either individually or jointly, to purchase their respective ownership interests in TMC.  *Id.*

As emphasized in each of their Purchase Contracts and recorded deeds, Plaintiffs' interests in TMC are subject to the rights and obligations set forth in the TMC Offering Plan. *See* Ex. A § 1 (each plaintiff "acknowledges having received and read a copy of the Offering Plan" and that the "Offering Plan is incorporated herein by reference").  Among other key documents, the Offering Plan contains the TMC Declaration, By-Laws, and rules promulgated by the TMC Board of Directors, including the "Timeshare Reservation Rules" (collectively, the "Governing Agreements").[2]  The Governing Agreements are explicitly incorporated into each Purchase Contract and deed.  Ex. A at § 11 ("Purchaser hereby accepts and approves the

---

[2]  The Purchase Contract and the deed for the first-named plaintiff in this action are attached as Exhibits A and B, respectively, to the accompanying Declaration of Andrew R. Kurland ("Kurland Decl."), and cited excerpts of the TMC Offering Plan, which contains the Governing Agreements, are attached thereto as Exhibit C.  The Court may consider these exhibits on this motion because they are an integral part of Plaintiffs' allegations (*see, e.g.*, Compl. ¶¶ 212, 233, 246, 176-178, 222).  *See Cortec Indus., Inc. v. Sun Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (courts may consider "documents [that] plaintiffs had either in [their] possession . . . and upon which they relied on in bringing suit.").  Moreover, Plaintiffs have admitted that they "relied" on the Governing Agreements when drafting the Complaint.  *See* Plaintiffs' Memorandum of Law in Opposition to Bluegreen's Motion to Dismiss (Dkt. No. 85).

Offering Plan (including the [Governing Agreements]) and agrees to abide and be bound by the terms and conditions thereof.  The sale of the Ownership Interest is subject and subordinate to the provisions of the [Governing Agreements].");  Ex. B at 1 (TMC ownership includes "the rights, obligations ... restrictions and other provisions set forth in [the Governing Agreements]").

## II.     ALLEGED PRE-PURCHASE REPRESENTATIONS

The Complaint alleges that the TMC Defendants made three types of misrepresentations which form the basis of all of Plaintiffs' causes of action against the TMC Defendants.  The first concerns Plaintiffs' ability to make "same-day or short notice" timeshare reservations.  *See, e.g.*, Compl. ¶ 222; *see also id.* ¶¶ 152, 160-166, 174-175.  The second concerns the maintenance fees that Plaintiffs would be required to pay in connection with their TMC interests.  *See, e.g.*, *id.* ¶¶ 153, 156-158, 167-169.  And the third concerns representations about Plaintiffs' ability to re-sell their timeshare interests.  *See, e.g.*, *id.* ¶¶ 147-151, 154, 170-173.

## III.    NEW YORK STATE ATTORNEY GENERAL INVESTIGATION

As described in the Complaint, in 2013, the New York Attorney General ("NYAG") began an investigation related to the TMC Defendants' operation and management of TMC.  *Id.* ¶¶ 188-190.  The NYAG commenced a legal proceeding focused on the conduct that forms the basis of all of Plaintiffs' claims against the TMC Defendants.  *Id.* ¶¶ 191-193.   In August 2017, the proceeding was resolved as documented in the public Assurance of Discontinuance that Plaintiffs attach to and quote in their Complaint ("AOD").  *Id.*; Dkt. 16-1.

## IV.    DEFENDANT BLUEGREEN'S WRONGDOING

The Complaint also contains numerous allegations concerning the alleged wrongdoing attributable to Bluegreen alone.  According to the Complaint, in 2018, defendant Bluegreen "assumed the rights and responsibilities" of the TMC Defendants, became their "successor in interest," and took control of TMC's Board of Directors, thereby dominating and controlling the

4

operation of TMC from that point forward.  Compl.  ¶¶ 142, 199.  As the TMC Defendants'

successor, the Complaint alleges that Bluegreen "assumed joint liability for the prior

wrongdoing" and "for the wrongdoing at TMC that continues today."  *Id.* ¶ 199.

Bluegreen's alleged wrongdoing includes failing to properly manage TMC, as well as

instituting the problematic "buy back" program that Plaintiffs describe in the Complaint.  *Id.*

¶¶ 200-202, 213-217.  According to the Complaint, the TMC Defendants had nothing to do with

the aforementioned conduct, which Plaintiffs attribute solely to Bluegreen.

<u>**ARGUMENT**</u>

**I.   PLAINTIFFS' CLAIMS ARE TIME-BARRED**

Rule 12(b)(6) of the Federal Rules of Civil Procedure mandates dismissal of any claim

filed after the expiration of its applicable statute of limitations.  *McAllister v. Quick Park*, 16-cv-

9885, 2017 WL 4477057, at *7 (S.D.N.Y. Sept. 11, 2017).  Here, the time for Plaintiffs to bring

each of their five causes of action against the TMC Defendants expired years ago.

**A.  The Fraud Claim Is Untimely**

The statute of limitations for a fraud claim is the greater of six years from the date of the

fraud or two years from the time the plaintiff discovered, or could with reasonable diligence have

discovered, the fraud.  CPLR 213(8).  The Complaint alleges that Plaintiffs relied on "material

misrepresentations" which "induce[d] them to purchase TMC timeshares" (Compl. ¶ 267), and

that all Plaintiffs purchased their interests in TMC more than six years ago.  *Id.* ¶¶ 1-127.  The

alleged fraud, therefore, took place more than six years ago.  The claim is not saved by the

"discovery rule," as, according to the Complaint, Plaintiffs discovered or could have discovered

the fraud more than two years ago.  "The test as to when fraud should with reasonable diligence

have been discovered is an objective one."  *Sejin Precision Indus. Co., Ltd. v. Citibank, N.A.*, 726

F. App'x 27, 30-31 (2d Cir. 2018).  Here, Plaintiffs would necessarily have been on notice of the

alleged fraud from the moment they experienced any of the harm described in the Complaint, such as, for example, being unable to make a "short notice" reservation.

Plaintiffs were also "on notice" of the fraud based on the NYAG investigation which, according to their Complaint, began in 2013. *See* Compl. ¶¶ 188-189. "[P]ublic reports of and lawsuits alleging fraud are sufficient to put a plaintiff on inquiry notice of fraud." *Sejin*, 726 F. App'x at 30. This investigation and lawsuit was widely covered in the media starting in late 2013.[3] Thus, even if Plaintiffs claimed to be ignorant of the purported "fraud" when it was taking place, they were "on notice" of it by the time the NYAG investigation commenced in 2013, and certainly before it concluded in 2017. *See* Compl. ¶¶ 190-193.

### B.  The RICO Claim Is Untimely

The statute of limitations for Plaintiffs' RICO claim is four years, and begins to run "when the plaintiff discovers – or should have reasonably discovered – the alleged injury." *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 328 F. App'x 695, 697 (2d Cir. 2009). The Complaint, however, alleges that TMC Defendants' various RICO violations began either in 1996 (Compl. ¶ 278) or 2012 (*id.* ¶¶ 277, 279). In any case, Plaintiffs' RICO claim is founded on the same purported wrongful conduct that Plaintiffs assert was investigated by the NYAG beginning in 2013. *Compare* Compl. ¶¶ 277-279 *with id.* ¶¶ 188-193. Again, the claim is time-barred, as this action was commenced more than four years from when Plaintiffs discovered, or should have discovered, the TMC Defendants' alleged wrongful activity. *See Int'l Bhd. of Teamsters v. Quest Diagnostics Inc.*, 10-cv-1692, 2012 WL 13202126, at *8 (E.D.N.Y. Apr. 19,

---

[3] *See, e.g.*, Isabel Vincent, Melissa Klein and Lois Weiss, Timeshare a Hotel Hell: Suit, N.Y. Post, December 1, 2013, available at https://nypost.com/2013/12/01/timeshare-a-hotel-hell-suit/. The Second Circuit has held that courts may consider on a motion to dismiss the existence of press coverage, without regard to the truth of its contents. *See Garber v. Legg Mason, Inc.*, 347 F. App'x 665, 669 (2d Cir 2009); *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 424-25 (2d Cir. 2008) (court properly took judicial notice of press coverage, prior lawsuits, and regulatory filings).

2012) (RICO claim dismissed where plaintiffs were on inquiry notice based on media reports of investigation into defendants' conduct).[4]

## C.  The Breach of Contract Claims Are Untimely

The statute of limitations for a breach of contract claim is six years.  CPLR 213(2).  The six-year time period begins accruing when the contract is breached, "even when the injury arises well after the breach occurred or when the injured party is ignorant of the breach."  *Ezra v. Weitz & Luxenberg, P.C.*, 794 F. App'x 27, 28-29 (2d Cir. 2019) (citations omitted); *ABB Indus. Sys. v. Prime Tech., Inc.*, 120 F.3d 351, 360 (2d Cir. 1997) (statute "begins to run from the day the contract was breached, not from the day the breach was discovered, or should have been.")

Here, the Complaint fails to specify, for each of the 208 Plaintiffs, when any of the alleged breaches occurred.  This alone renders the contract claims untimely.  *Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 260 (S.D.N.Y. 2011) (dismissing breach of contract claim where "Plaintiffs do not adequately allege when the breach occurred" such that the Court is "unable to conclude when the limitations period started running"); *Mackenzie Architects, PC v. VLG Real Estates Developers*, 15-cv-1105, 2016 WL 4703736, at *8 (N.D.N.Y. Sept. 8, 2016) (plaintiff failed to allege "facts sufficient plausibly to allege that the Amended Complaint was timely filed" where it "provides no date" for the breach or when the "obligations arose").

According to the Complaint, all Plaintiffs had entered into their respective Purchase Contracts by 2013 (Compl. ¶¶ 1-127), the year the NYAG began its investigation of the TMC Defendants' "wrongful practices," including specifically the three so-called "failures" that form

---

[4] According to the Complaint, the TMC Defendants were not involved in Bluegreen's "buy-back" campaign, which forms the basis of a portion of Plaintiffs' RICO claim.  *See* Compl. ¶¶ 199, 213, 280.  The TMC Defendants cannot be held liable for any of Bluegreen's alleged conduct even if that portion of the claim was arguably timely.

the basis of Plaintiffs' claims.  *Compare* Compl. ¶¶ 188-193 *with* ¶¶ 222, 236, 249.  Thus, any

alleged breach occurred at the latest by 2013, more than six years ago.

Plaintiffs apparently are attempting to circumvent the six-year statute of limitations under

the "continuing wrong doctrine" by alleging that the harms "are continuing" and that "each

maintenance fee invoiced and/or paid" and "each reservation attempted" constitutes a "new"

breach.  *See* Compl. ¶ 179.  This argument fails.

New York law is clear that the continuing wrong doctrine is inapplicable to a breach of

contract claim where a plaintiff alleges that the breach first "accrued on the date[] of execution"

of the contract and "fail[s] to allege that the Defendants committed any subsequent unlawful act"

distinct from the original purported wrong.  *Myers Indus., Inc. v. Schoeller Arca Sys., Inc.*, 171 F.

Supp. 3d 107, 119 (S.D.N.Y. 2016); *see also Mindspirit, LLC v. Evalueserve Ltd.*, 346 F. Supp.

3d 552, 593-94 (S.D.N.Y. 2018).  Yet, this is precisely what Plaintiffs attempt to argue here:

according to Plaintiffs, the TMC Defendants breached each of the Purchase Contracts from Day

1 as a result of their purported "failures" with respect to policies concerning reservations,

maintenance fees, and ability to resell their TMC interests.  Compl. ¶¶ 222, 236, 249.  That

"Plaintiffs may have continued to feel the loss of the value of [their TMC interests] over time"

by not being able to make desired reservations or by being required to pay maintenance is of no

matter, as "their failure to allege that the Defendants committed any additional wrongs precludes

application of the continuing wrong doctrine."  *See Myers*, 171 F. Supp. 3d at 119; *see also Pike*

*v. N.Y. Life Ins. Co.*, 72 A.D.3d 1043, 1048 (2d Dep't 2010) (continuing wrong doctrine

inapplicable where alleged breach occurred when plaintiffs entered the contract even though

plaintiffs periodically made the objectionable payments pursuant thereto).  Thus, regardless of

when, if ever, any particular plaintiff was unable to make a reservation (although the Complaint

is silent as to when that ever happened), paid an annual maintenance bill, or was unable to sell

his or her TMC interest (the Complaint does not allege that this ever actually happened to any plaintiff, either), the contract claims are still untimely. *Mindspirit*, 346 F. Supp. 3d at 593-94 (rejecting continuing wrong exception where offending policy was adopted more than six years ago because any "decision not to offer the buy-back program" to plaintiffs was merely the "continuing effects" of an alleged "single wrong").

### D.  The Tortious Interference with Contract Claim Is Untimely

The statute of limitations for a tortious interference with contract claim is three years from "when the defendant performs ... the alleged interference," regardless of when a plaintiff discovered the interference. *Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229, 257 (S.D.N.Y. 2012); CPLR 214(4).  Here, the sole allegation in the Complaint of tortious interference is that the TMC Defendants somehow "wrongfully interfered" with Plaintiffs' Purchase Contracts "by installing directors and imposing a management company that failed to engage in fair practices and dealings with Plaintiffs."  Compl. ¶ 258.  Even if this amounted to actionable "interference" which led to a breach of contract (and it does not), the Governing Agreements make clear that the management company was established and the TMC Defendant-affiliated Board Members were "install[ed]" (*id.*) at the inception of the Manhattan Club.  *See* Ex. C at 6, 9.  This means that their supposed "interference" must have taken place beginning at that time, and accordingly from the moment each particular plaintiff executed his or her Purchase Contract.  Additionally, the Complaint alleges that in 2013 the NYAG began its investigation into the *prior* misconduct of the TMC Defendants.  Compl. ¶ 188.  Under any theory, therefore, the alleged misconduct and interference had to have taken place more than three years ago.

### E.  The GBL § 349 Claim Is Untimely

The statute of limitations for a claim under Section 349 of the General Business Law "is three years from the date of accrual, which occurs when [Plaintiffs were] injured by the

deceptive act or practice that violated the statute, and is not dependent upon any date when discovery of the alleged deceptive practice is said to occur." *CIT Bank, N.A. v. Nwanganga*, 328 F. Supp. 3d 189, 203 (S.D.N.Y. 2018).[5]  Here, the sole allegation in the Complaint of a GBL § 349 violation is that the TMC Defendants' "representations, omissions and other actions referenced in ¶¶ 147-210, 221, 234 and 247 above were misleading."  Compl. ¶ 263.  This claim is thus time-barred, as the "actions" described in those paragraphs occurred no later than 2013, the year in which the NYAG began its investigation into these very same wrongful practices.

## II.   PLAINTIFFS FAIL TO PLAUSIBLY STATE ANY CLAIMS

Rule 12(b)(6) also requires dismissal where the plaintiff has failed to plausibly state a claim upon which relief can be granted.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Ibrahim v. Pena*, 16-cv-7774, 2017 WL 3601246, at *1 (S.D.N.Y. Aug. 21, 2017) ("Factual allegations must be enough to raise a right to relief above the speculative level ... and courts are not bound to accept as true a legal conclusion couched as a factual allegation....").  Accordingly, even if Plaintiffs had timely brought any of their claims, they still must be dismissed because they are "supported by mere conclusory statements" and "naked assertions devoid of further factual enhancement."  *Iqbal*, 556 U.S. at 678.

### A.  Plaintiffs Fail To Adequately Plead A RICO Claim

To state a RICO claim, the "plaintiff must show that he was injured by defendants' (1) conduct [(requiring two or more predicate acts)] (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 404 (S.D.N.Y. 2013).  Here, Plaintiffs' RICO claim is merely an impermissible rehash of their fraud and contract claims.  They allege that the conduct that forms the basis of those claims also

---

[5] A three-year limitations period also applies to a claim for breach of fiduciary duty.  *See infra* n.9; CPLR 214(4).

amounts to a conspiracy amongst all ten Defendants to "commit various mail and wire fraud schemes to defraud Plaintiffs in connection with their purchase and ownership of TMC timeshare interests[]" in violation of 18 U.S.C. § 1962(c).  Compl. ¶ 271.

Plaintiffs contend that the RICO "enterprise" at issue consists not of one or more of the TMC Defendants, but of nonparty The Manhattan Club Timeshare Association, Inc., the TMC owners' association of which all Plaintiffs are members.  *Id.* ¶¶ 1, 128, 274; Ex. C at 35. According to the Complaint, therefore, Plaintiffs are part of the alleged "enterprise."

First, Plaintiffs' RICO claim is fatally flawed because they fail to allege that the TMC Defendants "conducted or participated … in the conduct of" the purported enterprise's affairs "through a pattern of racketeering activity." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 175-76 (2d Cir. 2004).  Plaintiffs have not done so with respect to either of the alleged predicate acts described in the Complaint: mail and wire fraud related to reservations, maintenance fees, and ability to re-sell TMC interests.[6]  Among other things, Plaintiffs have not even attempted to differentiate between any of the Defendants – individuals and entities alike – nor explain how each participated in any of the alleged predicate acts.  *See* Compl. ¶¶ 277-282.

Plaintiffs also have not plead that any predicate acts took place to begin with.  As for the supposed mail fraud, Plaintiffs allege that all Defendants collectively – *i.e.*, all nine TMC Defendants plus Bluegreen – committed fraud by virtue of having used the mails to send the Offering Plan, Bylaws, and annual maintenance fee statements to Plaintiffs.  *Id.* ¶¶ 277-278. These documents purportedly "refute" the alleged representations and omissions – concerning reservations, maintenance fees, and the ability to resell TMC interests – that Plaintiffs contend Defendants made in order to induce Plaintiffs into purchasing their TMC interests.  *Id.*  In other

---

[6] Plaintiffs also allege a RICO violation solely against Bluegreen based on the "buy-back" campaign that Bluegreen developed and began administering in 2018.  Compl. ¶ 280.

words, Plaintiffs contend that because the Governing Agreements contradict purportedly inaccurate pre-purchase representations, the Governing Agreements, which Plaintiffs allege were sent by mail, were themselves fraudulent.

Plaintiffs' allegations of "mail fraud" impermissibly repackage the same allegations that form the basis of their purported fraudulent inducement cause of action, which, as a matter of law, cannot support a RICO claim. *John Paul Mitchell Sys. v. Quality King Distributors, Inc.*, 99-cv-9905, 2001 WL 910405, at *5 (S.D.N.Y. Aug. 13, 2001) ("a plaintiff who simply contends that it was defrauded into entering into a contract by another who never intended to honor the contract has not made any legally sufficient allegation of fraud, and cannot allege mail or wire fraud for purposes of a section 1962 RICO claim."). Moreover, Plaintiffs' explanation of the alleged mail fraud is nonsensical. The Offering Plan, which contains all of the Governing Agreements, was fully vetted and approved by the NYAG, such that it could not be "fraudulent." *See* Ex. C; N.Y. Gen. Bus. Law § 352-e; 13 NYCRR § 24.1. Further, Plaintiffs admit that the Governing Agreements are in fact the documents that control how TMC is operated, including related to fees, reservations, and ability to resell. *See* Compl. ¶¶ 176-178. They cannot claim "fraud" specifically because the stated rules and procedures merely have been complied with.[7] Plaintiffs' allegations accordingly confirm that there has been no mail fraud.

---

[7] Although not plead by Plaintiffs, it is also true that any claim that mail and wires were used to send information *contrary* to the governing documents could not be actionable based on the express provisions of the written Purchase Contracts which disclaim any prior or conflicting representations (*see* § II.B, *infra*). Any pre-purchase representations therefore could not form the basis of a RICO claim (or any other claim). Moreover, Plaintiffs cannot transform their purported contract claims into a RICO claim. *Bigsby v. Barclays Capital Real Estate, Inc.*, 170 F. Supp. 3d 568, 577 (S.D.N.Y. 2016) (the "mail and wire fraud allegations are nothing more than breach of contract claims, and therefore do not constitute predicate acts."); *Tardibuono-Quigley v. HSBC Mortg. Corp.*, 15-cv-6940, 2017 WL 1216925, at *11 (S.D.N.Y. Mar. 30, 2017) (dismissing claim because "at its heart" the alleged RICO violation is merely a contract claim.).

Plaintiffs' description of the supposed wire fraud is vaguer still. They allege that all Defendants (*i.e.*, again including Bluegreen) "have used the interstate wires to prevent Plaintiffs from being able to make same-day or short notice reservations to use their TMC timeshares." *Id.* ¶ 279. This contention is entirely conclusory; Plaintiffs offer no explanation of how or what "wires" were "used" in any way in connection with TMC reservations, let alone used to "prevent" Plaintiffs from making reservations. Moreover, as with the mail fraud claim, Plaintiffs fail to explain how compliance with the rules and procedures that govern reservations could in any way be "fraudulent."

Plaintiffs' RICO claim also fails as a matter of law because these vague and conclusory allegations describing the purported frauds plainly do not meet the heightened pleading requirements mandated by Rule 9(b), which requires a showing of the "contents of the communications, who was involved, where and when they took place, and explain why they were fraudulent." *Knoll v. Schectman*, 275 F. App'x 50, 51 (2d Cir. 2008). Conclusory allegations as to the fraudulent nature of the predicate acts, such as those in the Complaint, are patently insufficient to survive a motion to dismiss. *Id.*; *Procapui-Productores, etc. v. Layani*, 07-cv-6627, 2008 WL 3338199, at *4 (S.D.N.Y. Jan. 11, 2008) (dismissing RICO claim where plaintiff failed to particularize the specific amounts and dates of fraudulent invoices and payments); *see also Procapui-Productores, etc. v. G.F. Higgins*, 07-cv-6627, 2008 WL 3338200, at *2 (S.D.N.Y. Aug. 8, 2008). Here, Plaintiffs make the blanket assertion that all ten Defendants used the mail and wires at unspecified times and in unspecified manners to carry out a purported scheme. These allegations are insufficient pursuant to Rule 9(b).

Plaintiffs also fail to plead any "pattern" of racketeering activity, which requires pleading that the purported acts of racketeering activity are related and continuous. *Kalimantano*, 939 F. Supp. 2d at 406. Here, Plaintiffs merely baldly conclude that a pattern exists. Compl. ¶ 281.

They have failed to plead with requisite specificity the "variety of predicate acts" and "the presence of separate schemes" that would be necessary to establish the existence of a closed-ended pattern. *Kalimantano*, 939 F. Supp. 2d at 412; *Gross v. Waywell*, 628 F. Supp. 2d 475, 494 (S.D.N.Y. 2009) ("RICO violations involving solely mail and wire fraud or little other variety in the predicate acts, a limited number of participants or victims, a discrete scheme with a narrow purpose or a single property … are generally insufficient to demonstrate closed-ended continuity, and thus to satisfy 'pattern' element of a plausible RICO claim."). There also is no presumption of an open-ended pattern of continuity, because TMC is a legitimate venture, as fully vetted by the NYAG. *See Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008). Moreover, mere allegations of fraud are insufficient to show a threat of continued criminal activity for purposes of establishing open-ended continuity. *See Albunio v. Int'l Safety Grp., Inc.*, 15-cv-152, 2016 WL 1267795, at *7 (S.D.N.Y. Mar. 30, 2016). Simply put, Plaintiffs fail to plead any type of "pattern" at all. That is because no pattern in fact exists.

Additionally, even if there were a pattern of predicate acts, Plaintiffs still have not established that their alleged injuries were proximately caused by the TMC Defendants' purported RICO violations of mail and wire fraud. *Geiss v. Weinstein Co. Holdings*, 383 F. Supp. 3d 156, 170-71 (S.D.N.Y. 2019) ("[A] plaintiff 'does not have standing if he suffers an injury that was . . . not proximately caused by the racketeering activity or RICO predicate acts, even though the injury was proximately caused by some non-RICO violation committed by the defendants."); *Beecher v. Riverdale Riding Corp.*, 08-cv-6062, 2010 WL 5298017, at *5 (S.D.N.Y. Dec. 21, 2010) (plaintiff lacked standing to bring RICO claim where none of the alleged injuries were proximately caused by alleged RICO violations, and instead resulted from mere breach of contract or negligence); *Kirk v. Heppt*, 423 F. Supp. 2d 147, 151 (S.D.N.Y. 2006) ("[p]laintiffs have not pled and will be unable to demonstrate that [d]efendant's mailing of

fraudulent invoices was the proximate cause of their alleged injuries[,]" which arose from the defendant's alleged negligence, and were not "the result of the [d]efendant's racketeering activity"). Here the only injury Plaintiffs allege is related to their (non-viable) contract and fraudulent inducement claims. Compl. ¶¶ 285-286. These injuries were not caused by any mail or wire fraud, and therefore are not cognizable under 18 U.S.C. § 1964(c).

Lastly, Plaintiffs also fail to adequately state a claim for conspiracy under Section 1962(d). Because Plaintiffs have failed to plead any underlying RICO violation, there can be no RICO conspiracy, either. Moreover, Plaintiffs have not even attempted to plead "that each defendant, by words or actions, *manifested an agreement* to commit two predicate acts in furtherance of the common purpose of a RICO enterprise." *Nasik Breeding & Research Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514, 540 (S.D.N.Y. 2001) (emphasis added); *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25, 26 at n.4 (2d Cir. 1990) ("a RICO civil conspiracy complaint, at the very least, must allege specifically… a conscious agreement among the defendants."). Here, the conclusory allegation that *all ten* Defendants "agreed to utilize TMC to carry out the fraudulent schemes" is palpably insufficient to form the basis of any conspiracy claim. Compl. ¶ 276. Accordingly, Plaintiffs' § 1962(d) claim must be dismissed. After it is, because there are no more questions of federal law plead in the Complaint, the entire case should be dismissed as well pursuant to 28 U.S.C. § 1367(c). *See* § IV, *infra*.

## B. Plaintiffs Fail to Adequately Plead a Fraud Claim

"To state a claim for fraud in the inducement, [Plaintiffs] must allege: (i) a material misrepresentation of a presently existing or past fact; (ii) an intent to deceive; (iii) reasonable reliance on the misrepresentation by appellants; and (iv) resulting damages." *State St. Glob. Advisors Tr. Co. v. Visbal*, 431 F. Supp. 3d 322, 352 (S.D.N.Y. 2020) (Woods, J.). Plaintiffs

also "must allege specific facts as to the fraud, including the misleading statements, speaker, time, place, individuals involved, and specific conduct at issue." *Id.* (citing Rule 9(b)).

As with Plaintiffs' RICO claim which is premised on (non-existent) mail and wire fraud, the standalone fraud claim must be dismissed as well because Plaintiffs fail to allege – let alone plead with the particularity required pursuant to Rule 9(b) – what specific conduct by which defendant(s) amounted to the alleged fraud, or when the conduct allegedly took place.  Plaintiffs instead simply repeat the vague allegation that the TMC Defendants either "communicated to Plaintiffs" or "failed to communicate to Plaintiffs" unspecified information about the reservation policies, maintenance fees, and ability to resell their TMC interests, which purportedly induced Plaintiffs into purchasing their interests.  *See* Comp. ¶¶ 147-177.  The Complaint does not detail the when, where, or how of these alleged communications (or lack of communications).  Further, the Complaint's references to conduct described in the AOD are of no moment, as Plaintiffs do not allege, nor does the AOD suggest, that any of that conduct described therein was directed at or in any way affected any of these particular Plaintiffs.

This Court routinely dismisses fraud claims that fail to set forth these most basic facts. *See Morse v. Rescap Borrower Claims Tr.*, 14-cv-5800, 2015 WL 353931, at *6 (S.D.N.Y. Jan. 26, 2015) (Woods, J.), *aff'd sub nom. In re Residential Capital*, 628 F App'x 63 (2d Cir. 2016) (dismissing claim where "fraud claims do not meet the heightened pleading standard of Rule 9(b) because he fails to identify with particularity 'the time, place, speaker, and content of the alleged misrepresentations'"); *Backus v. U3 Advisors, Inc.*, 16-cv-8990, 2017 WL 3600430, at *9 (S.D.N.Y. Aug. 18, 2017) (Woods, J.) (fraud claim must include "the who, what, when, where, and how: the first paragraph of any newspaper story").

Dismissal is also warranted because Plaintiffs have failed to allege reasonable reliance. And, even if they had, any inference of reliance would be entirely unreasonable because the

Purchase Contracts expressly disclaim reliance on any extraneous representations.  Ex. A §§ 20, 33.  Well-established New York law holds that such disclaimers are grounds for dismissal of fraud claims.  *See Backus*, 2017 WL 3600430, at *9 (dismissing fraud claim based on alleged prior oral promises which were contradicted by a written agreement); *Alpha Capital Anstalt v. Schwell Wimpfheimer & Assoc. LLP*, Fed. Sec. L Rep. P. 100071 (S.D.N.Y. Mar. 30, 2018).

Finally, the fraud claim must also be dismissed because it is duplicative of the contract claims that Plaintiffs try (but fail) to assert.  *FPP, LLC v. Xaxis US, LLC*, 764 F. App'x 92, 93 (2d Cir. 2019).  In setting forth their fraud claim, Plaintiffs explicitly incorporate the exact same allegations as the breach of contract claims.  *See* Compl. ¶ 267.  Yet, "[f]alse statements indicating an intent to perform under a contract are insufficient to support a claim of fraud." *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 491 (S.D.N.Y. 2017) (Woods, J.).  Plaintiffs must instead "demonstrate a fraudulent misrepresentation collateral or extraneous to the contract." *See State St.*, 431 F. Supp. 3d at 352; *see also Wall v. CSX Transp.*, 471 F.3d 410, 416 (2d Cir. 2006) ("allegations that defendant entered into a contract while lacking the intent to perform it are insufficient to support a fraud claim.").  Here Plaintiffs have failed to do so.

### C. Plaintiffs Do Not Adequately Plead Breach of Contract Claims

Plaintiffs ostensibly assert three breach of contract claims against the TMC Defendants: The first concerns Plaintiffs' alleged inability to make same-day or short notice reservations (Compl. ¶ 222); the second concerns the amount of annual maintenance fees Plaintiffs were charged (*id.* ¶ 236); and the third concerns Plaintiffs' alleged inability to sell their TMC interests. (*id.* ¶ 249).  All three claims must be dismissed for three reasons.  *First*, Plaintiffs have failed to specify what contract provision(s) have been breached; *second*, there can be no oral agreement that could form the basis of any of the claims of breach; and *third*, Plaintiffs' Purchase Contracts and the Governing Agreements explicitly refute all of Plaintiffs' claims.

### 1.   Plaintiffs Fail to Identify the Contract Provisions That Have Been Breached

Fundamental to each of the three claims is Plaintiffs' assertion that the contract that the TMC Defendants supposedly breached is each plaintiff's respective Purchase Contract. *See, e.g.*, Compl. ¶¶ 212, 233, 246.  All three claims must be dismissed, however, because Plaintiffs have not identified any provision(s) of their respective contracts that were allegedly breached. *Shin v. Am. Airline, Inc.*, 726 F. App'x 89, 90-91 (2d Cir. 2018) (affirming dismissal of contract claim where plaintiff filed to identify any provision that was allegedly breached).

In fact, the Complaint is devoid of any terms of the Purchase Contracts whatsoever, giving the Court no choice but to dismiss these claims. *Cellucci v. O'Leary*, 19-cv-2752, 2020 WL 977986, at *9 (S.D.N.Y. Feb. 28, 2020) (citations omitted) (dismissing claim where plaintiff did not allege any terms of contracts that were breached, attach the contracts, or summarize their essential terms); *Am. Nat. Theatre and Academy v. Am. Nat. Theatre Inc.*, 05-cv-4535, 2006 WL 4882916, at *4 (S.D.N.Y. Sept. 27, 2006) (dismissing claims where plaintiff "failed to allege what the terms of the contract were").

Plaintiffs also cannot establish a breach of any purported pre-contractual oral representations purportedly made by the TMC Defendants.  "Where an alleged contract is oral, plaintiff has a particularly heavy burden to establish objective signs of the parties' intent to be bound." *See N.F.L. Ins. Ltd. v. B & B Holdings, Inc.*, 874 F. Supp. 606, 613 (S.D.N.Y. 1995). As with the claimed breaches of their Purchase Contracts, Plaintiffs do not set forth any details or terms of any oral agreement.  They clearly have not met their "heavy burden" to establish that one exists.

Moreover, there can be no oral agreement – and certainly no breach of that agreement – where "the Oral Agreement contradicts an express provision of the Written Agreement." *End Line Inv'rs, Ltd. v. Wells Fargo*, 16-cv-7009, 2018 WL 3231649, at *4 (S.D.N.Y. Feb. 27, 2018).

As set forth below, here all alleged representations concerning Plaintiffs' ability to make "short notice" reservations, the amount of maintenance fees Plaintiffs would be charged, and Plaintiffs' ability to resell their TMC interests, are directly contradicted by the terms of the written Purchase Contracts, Offering Plan and Governing Agreements.  Additionally, even if some unspecified oral agreement did exist, each plaintiff's written Purchase Contract explicitly "supersedes any and all understandings and agreements between the parties with respect to the subject matter [t]hereof" (Ex. A § 33) and makes clear that "no oral representations or statements shall be considered a part of" the parties' agreement.  *Id.* § 20.  Finally, any oral agreement would also be barred by the Statute of Frauds.  *See Frand v. Woldiger*, 18-cv-4816, 2019 WL 1897453, at *2 (S.D.N.Y. Apr. 29, 2019), citing N.Y. Gen. Obligations Law § 5-703.

### 2.   The Governing Agreements Refute Plaintiffs' Contract Claims

Plaintiffs have not identified how the TMC Defendants breached the Purchase Contracts, let alone any other agreements, because each of Plaintiffs' claims is "premised on a contractual obligation that does not exist" – and that is actually disclaimed – in the Governing Agreements. Ex. A § 1, Ex. B at 1.  *See Flatiron Acquisition Veh. LLC v. CSE Mtge. LLC*, 17-cv-8987-GHW, 2019 WL 1244294, at *13 (S.D.N.Y. Mar. 18, 2019) (Woods, J.) (dismissing contract claim based on an alleged "breach of a duty that the Purchase Agreement does not create").  Plaintiffs themselves admit this fact.  *See, e.g.*, Compl. ¶ 178 ("TMC's Offering Plan and Bylaws contradict the promises made").

Although Plaintiffs claim that the TMC Defendants failed to "enable Plaintiffs to easily make same-day or short notice reservations to use their TMC timeshares" (Comp. ¶ 222), the Offering Plan makes crystal-clear that Plaintiffs "cannot be assured that any specific use period will be available when a reservation request is made" and that Plaintiffs' rights "to make a reservation is subject to certain priority reservation rights in favor of the Management

Company."  Ex. C at 5-6.  The "Timeshare Reservation Rules," an integral part of the Governing

Agreements, similarly confirm that reservations are "first come, first served" and Plaintiffs

"cannot be assured that any specific use period will be available when a reservation request is

made.  The earlier a reservation request is submitted, the better the chance that the desired

reservation confirmation can be secured."  Ex. C at 70.  As a matter of law, therefore, the

Governing Agreements refute all of Plaintiffs' claims with respect to any purported inability to

make the "short notice" reservations that they might desire.

Plaintiffs' second and third claims for breach of contract fare no better.  With respect to

the ambiguous yet also contradictory allegations that the TMC Defendants failed to "keep annual

maintenance fees low," and/or that the fees "would likely decrease," and/or "would increase no

more than the cost of living" (Compl. ¶¶ 234-236), the Governing Agreements establish that

TMC's Board of Directors "may, at its sole discretion, from time to time increase or decrease the

amount of" fees.  Ex. C at 62.  And with respect to Plaintiffs' alleged inability to sell their TMC

interests on the open market or back to defendants (Compl. ¶¶ 248-249), their respective

Purchase Contracts make clear that each Plaintiff purchased their interest "with no expectation

that Purchaser will receive any assistance from Sponsor or any of its agents or affiliates in the

resale or rental of his Ownership Interest…."  Ex. A § 18.  Moreover, the Offering Plan provides

that there is no "formal program pursuant to which Sponsor agrees to buy-back any Ownership

Interest" and discloses that "there is no established market for the rental or resale of Ownership

Interests."  Ex. C at 5.  For these reasons, all of Plaintiffs' contract claims must be dismissed

with prejudice.

**D.  Plaintiffs Fail to Adequately Plead a Tortious Interference with Contract Claim**

For Plaintiffs to succeed on their tortious interference claim they must allege "[1] the

existence of a valid contract between the plaintiff and a third party, [2] defendant's knowledge of

that contract, [3] defendant's intentional procurement of the third-party's breach of the contract without justification, [4] actual breach of the contract, and [5] damages resulting therefrom." *State St.*, 431 F. Supp. 3d at 348.  Here, Plaintiffs base their claim on one allegation: that the TMC Defendants supposedly "wrongfully interfered with the contract between Plaintiffs and TMC by installing directors and imposing a management company that failed to engage in fair practices and dealings with Plaintiffs, and otherwise failed to provide a fair and reasonable reservation management system, and to avoid undue escalation of annual maintenance fees." Compl. ¶ 258.

This sentence, however involved, cannot form the basis of a tortious interference claim because Plaintiffs have not established how their Purchase Contracts have been breached (they have not been).  *See* § II.C, *supra*; *Mergers and Acquisition Servs. v. Eli Glob*, 15-cv-3723, 2017 WL 1157132, at \*15 (S.D.N.Y. Mar. 27, 2017) (Woods, J.) ("to succeed on a claim for tortious interference, a plaintiff must prove that the underlying contract has been breached").

The claim also must be dismissed because the same alleged conduct that forms the basis of Plaintiffs' breach of contract claims forms the basis of this claim (and Plaintiffs' other tort claims).  *Maricultura Del Norte, S. de R.L. de C.V. v. Umami Sustainable Seafood, Inc.*, 769 F. App'x 44, 55 (2d Cir. 2019).  In setting forth their tortious interference claim, Plaintiffs allege that the TMC Defendants "failed to provide a fair and reasonable reservation system, and to avoid undue escalation of annual maintenance fees."  Compl. ¶ 258.  These extremely vague allegations mirror the allegations that form the basis of Plaintiffs' contract claims (*see id.* ¶¶ 222-225, 236) which are in fact expressly incorporated in the duplicative tort claim.  Compl. ¶ 259.

Finally, the Complaint also does not set forth the requisite "cause and effect relationship between [the TMC Defendants'] acts and [TMC's] failure to perform its duties under the contracts."  *See In re Fyre Festival Litig.*, 399 F. Supp. 3d 203, 221 (S.D.N.Y. 2019).  Rather, the

Complaint merely alleges that the TMC Defendants tortiously interfered with the Purchase

Contracts by "installing [the] directors" of TMC.  Compl. ¶ 258.  Yet, this "offers only

conclusory assertions about causation" which are insufficient to set forth the claim.  *See In Fyre*

*Festival*, 399 F. Supp. 3d at 221.[8]

### E.  Plaintiffs Fail To Adequately Plead A Claim Under GBL § 349

In order to adequately state a GBL § 349 claim, Plaintiffs must plead non-conclusory

allegations that establish "[i] the defendant directed deceptive acts at consumers; [ii] the

defendant's acts mislead in a material way; and [iii] an injury, as a result of the defendant's

acts."  *See Saini v. Cigna Life Ins. Co. of New York*, 2018 Employee Benefits Cas. 144316

(S.D.N.Y. Apr. 24, 2018) (dismissing "conclusory" GBL claim).  Plaintiffs have not done so.  In

their GBL Section 349 claim, Plaintiffs simply parrot the elements of the claim without

application; they groundlessly jump to the conclusion that the "sales of TMC timeshare interests

to Plaintiffs was each a consumer-oriented act," and that the TMC Defendants' "representations,

omissions and other actions" were "misleading in violation" of this state statute.  Compl. ¶ 263.

Essentially the same conclusory § 349 claims were dismissed in two earlier lawsuits

brought by similarly situated purchasers of TMC interests.  *Sheppard v. Manhattan Club*

*Timeshare Ass'n*, 11-cv-4362-PKC, 2012 WL 1890388, at *6 (S.D.N.Y. May 23, 2012)

(dismissing GBL § 349 claim based on conclusory allegations regarding availability of TMC

units and defendants' alleged "deceptive acts or practices"); *Smith v. Manhattan Club Timeshare*

*Ass'n*, 944 F. Supp. 2d 244, 248 (S.D.N.Y. 2013) (GBL claim barred by *res judicata* where

---

[8] Even if Plaintiffs were able to establish a tortious interference claim, the members, officers, and directors of an entity are not third parties, and therefore cannot be held liable for allegedly causing the entity to breach a contract. *Solow v. Stone*, 994 F. Supp. 173, 181-82 (S.D.N.Y. 1998), *aff'd*, 163 F.3d 151 (2d Cir. 1998).  Because the Complaint alleges that the individual TMC Defendants were members and/or officers of TMC (*see* Compl. ¶¶ 131-141), the tortious interference claim as against those individuals must be dismissed for this additional reason as well.

plaintiff's allegations were "virtually indistinguishable" from the GBL allegations in *Sheppard*).

But even if Plaintiffs' GBL claim were plead sufficiently here, it still must be dismissed, because

a "private contract dispute" "does not constitute a deceptive act or practice that is 'consumer-

oriented' under section 349." *Saini*, 2018 Empl. Benefits Cas. 144316.[9]

## III.   THE TMC DEFENDANTS CANNOT BE LIABLE FOR ANY ALLEGED CONDUCT ATTRIBUTABLE TO BLUEGREEN

The TMC Defendants cannot be liable as a matter of law for any alleged conduct

attributable to Bluegreen during the time period that Bluegreen was in "control" of TMC.  *See*

Compl. ¶¶ 200-205.  As alleged in the Complaint, in June 2018, Bluegreen "assumed the rights

and responsibilities" of the TMC Defendants, became TMC Defendants' "successor in interest,"

"purchased TMC's inventory and the future right to control the management contract," and had

majority control of TMC's Board of Directors.  Compl.  ¶¶ 142, 199.  Thus, beginning in June

2018, Bluegreen was in "control" of TMC, and is solely liable as a matter of law for any

"wrongdoing" at TMC during this period, including the "'buy back' campaign" and any

purported tax liability incurred by Plaintiffs.  *See* Compl. ¶¶ 142, 199-200, 213-217.  During the

period that Bluegreen was in control of TMC, the TMC Defendants were merely Bluegreen's

agents.  It is black-letter law that "the acts of agents, and the knowledge they acquire while

acting within the scope of their authority are presumptively imputed to their principles."  *In re

Lehr Constr. Corp.*, 551 B.R. 732, 738 (S.D.N.Y. 2016) (Woods, J.), *aff'd* 666 F. App'x 66 (2d

Cir. 2016).

---

[9] To the extent Plaintiffs intended their GBL § 349 claim to be a claim for breach of fiduciary duty, that fails as well. The Complaint does not plead the existence of any fiduciary duty owed by the TMC Defendants, or a breach thereof. That is because no such duty exists. *See PetEdge*, 234 F. Supp. 3d at 498 (dismissing fiduciary duty claim because parties' relationship was set forth in a contract (such as the Purchase Contracts)).

**IV.    THE CASE SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION**

Because Plaintiffs are not completely diverse from defendants, Plaintiffs included a federal RICO claim in their Complaint in attempt to obtain jurisdiction in this Court.  Courts can entertain state law claims that are part of the same case or controversy as federal statutory claims pursuant to 28 U.S.C. § 1367(a).  In the event that all federal claims are dismissed from an action, however, the Court should decline to exercise supplemental jurisdiction over remaining state law claims.  *See* 28 U.S.C. § 1367(c)(3); *Kumaran v. Natl. Futures Assn.*, 20-cv-3668, 2020 WL 3630389, at *5 (S.D.N.Y. July 2, 2020) (Woods, J.).  Notably, as this Court recently acknowledged, "[b]oth the Second Circuit and the Supreme Court have held that when the federal claims are dismissed the state claims *should* be dismissed as well" and in fact, "[t]his is the usual case."  *Ash v. Jacobson*, 16-cv-9548, 2020 WL 2848178, at *6-7 (S.D.N.Y. June 1, 2020) (Woods, J.).

As set forth above, Plaintiffs have failed to adequately plead the RICO claim, and even if they had, it would be untimely.  That claim therefore must be dismissed.  Even if any of Plaintiffs' other claims remain (though all such claims should be dismissed on the same grounds, as well), this Court should not waste its resources adjudicating Plaintiffs' remaining pure state law claims, and should dismiss any such remaining claims.  *See Balderas v. Barmadon Mgt. LLC*, 17-cv-7489, 2019 WL 1258921, at *5 (S.D.N.Y. Mar. 19, 2019) (Woods, J.); *Dominguez v. Banana Republic, LLC*, 19-cv-10171, 2020 WL 1950496, at *5 (S.D.N.Y. Apr. 23, 2020) (Woods, J.); *Russell v. New York Univ.*, 15-cv-2185, 2017 WL 3049534, at *40 (S.D.N.Y. July 17, 2017) (Woods, J.), *aff'd* 739 F. App'x 28 (2d Cir. 2018).

## V.    CERTAIN PLAINTIFFS HAVE NO STANDING TO MAINTAIN THIS SUIT

Pursuant to Rule 12(b)(1), "a court must dismiss a claim if … it determines that the

plaintiff lacks standing to prosecute it."  *Baker-Rhett v. Aspiro AB*, 324 F. Supp. 3d 407, 415

(S.D.N.Y. 2018) (Woods, J.).  In addition to all of the fatal issues endemic to each of Plaintiffs'

claims as detailed above, forty-three of the 208 Plaintiffs have no standing to sue to begin with:

- Thirty-six Plaintiffs previously relinquished their interests in TMC, at which time they executed broad releases pursuant to which they waived any and all potential claims against the TMC Defendants.[10]  Kurland Decl. Ex. D.  *See Borden v. City of New York*, 16-cv-716, 2017 WL 744593, at *4 (S.D.N.Y. Feb. 24, 2017) (Woods, J.).

- Seven plaintiffs have no standing because they never had any legal ownership interest in TMC to begin with, as their purported TMC interests are owned by trusts; the individuals have no standing to pursue any of the trusts' purported claims themselves as individual plaintiffs.[11]  Kurland Decl. Ex. E.  *See* Fed. R. Civ. P. 17(a)(1)(E).

- Two plaintiffs, Michael D. Hebert and Wade Chilcoat, also never had any legal ownership interest in TMC.  Their purported ownership interests are owned solely by family members. They accordingly are not proper plaintiffs here.  *See* Kurland Decl. Ex. F.

- Nicholas P. Bigotti brought an earlier action based on the same conduct that forms the basis of his claims here.  His case was already dismissed, rendering the claims here barred by *res judicata*.  *Bisk v. The Manhattan Club Timeshare Ass'n*, 118 A.D.3d 585 (1st Dep't 2014).

## CONCLUSION

For the foregoing reasons, the TMC Defendants' motion should be granted in its entirety

and the action dismissed as against them, with prejudice, and they should be awarded such

further relief as the Court deems just and proper.

---

[10] The Plaintiffs who released all potential claims are: Maribel Acutanza; Philip D. Acutanza; Carmelo Alu; Linda Alu; Bonny K. Collins; Rollin P. Collins; Joseph L. Coreno; Michelle Coreno; Patricia H. Dayan; Raymond Dayan; Richard S. Dillon; Susan H. Dillon; Alexandra Feng; Patricia Chen Feng; Andrea V. Franklin; Daniel J. Franklin; Janine Getek; Donna C. Getreuer; Thomas R. Getreuer; Kurt Grimm; Margaret A. Grimm; Paul A. Jordan; Ulla P. Jordan; Audrey Kaufman; Dale R. Kichline, Jr.; Mary Ann Kichline; David R. Mann; Suzanne C. Mann; Charles McMonigle; Kathy McMonigle; Joan H. Orr; Brigitte Tutschka; Richard Weiss; George M. Worton; Rosanne E. Worton; Richard Zierdt.  A compilation of their releases is attached as Exhibit D to the Kurland Decl.

[11] These Plaintiffs include: Arla Bowers; Larry Bowers; Dana C. Drew; Lucille Graessle; Sharon Van de Grift; Paul A. Jordan; and Ulla P. Jordan (though the Jordans also already released their claims).  The Purchase Contracts and deeds for the TMC interests these Plaintiffs claim to own (but do not) are attached as Exhibit E to the Kurland Decl.

Dated:  New York, New York
        November 25, 2020

Respectfully submitted,

KASOWITZ BENSON TORRES LLP

By: /s/ Jennifer S. Recine
     Jennifer S. Recine
     Andrew R. Kurland
     Jeffrey Ephraim Glatt
1633 Broadway
New York, NY 10019
Telephone:  (212) 506-1700
Facsimile:  (212) 506-1800

*Attorneys for Defendants Ian Bruce Eichner, Leslie H. Eichner, Stuart P. Eichner, Scott L. Lager, T. Park Central LLC, O. Park Central LLC, Park Central Management, LLC, Manhattan Club Marketing Group, LLC, and New York Urban Ownership Management, LLC*

26