UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                      :

CHARLES R. ACKLIN, *et al.*,             :

                                            :

                             Plaintiffs, :           1:20-cv-7042-GHW

                                            :

              -against-                 :       **MEMORANDUM OPINION &**

                                            :                    **ORDER**

IAN BRUCE EICHNER; LESLIE H. EICHNER; :
STUART P. EICHNER; SCOTT L. LAGER; T. :
PARK CENTRAL LLC; O. PARK CENTRAL :
LLC; PARK CENTRAL MANAGEMENT, LLC; :
MANHATTAN CLUB MARKETING GROUP, :
LLC; NEW YORK URBAN OWNERSHIP :
MANAGEMENT, LLC; *and* BLUEGREEN :
VACATIONS UNLIMITED, INC., :

                                            :

                             Defendants. :

                                            :
-------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/18/2024

GREGORY H. WOODS, United States District Judge:

       Plaintiffs own timeshares in a luxury building located in Manhattan. Faced with high annual

fees, with significant obstacles making reservations, and with no option to sell back their timeshare

interests at or near the original purchase price, Plaintiffs filed suit. They asserted 12 claims under

federal and state law, including one based on purported acts of mail or wire fraud under the federal

Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, and a

related claim for conspiracy under the same statute. Because Plaintiffs had to plead that they were

the victim of fraud for their RICO claims to proceed, they contended that the trouble they have

been experiencing with their timeshare interests was due to fraudulent conduct by those in charge of

operating the timeshare property.

       Earlier this year, the Court dismissed Plaintiffs' RICO claims, based in part on the

conclusion that the alleged misconduct by the defendants is not fraudulent in nature. The Court

also declined to exercise supplemental jurisdiction over Plaintiffs' remaining claims and dismissed all

of Plaintiffs' claims.  By then, Plaintiffs had filed three complaints—the last of which was filed after an earlier opinion by the Court that also analyzed and dismissed Plaintiffs' claims.  As Plaintiffs had failed to adequately plead a claim for relief three times and had not shown that they would succeed in a fourth attempt, the Court declined to grant Plaintiffs leave to amend the complaint and issued judgment against Plaintiffs, closing the case.

Plaintiffs had thirty days to appeal the dismissal.  Just after those thirty days had expired, Plaintiffs filed a motion to seek relief from the judgment under Federal Rule of Civil Procedure 60(b).  In their motion, Plaintiffs argue that the Court misunderstood the facts alleged in their complaint and that the Court would not have dismissed their claims if it had not done so.  Plaintiffs also request, in the alternative, permission to re-open the case and amend their complaint again after they have had an opportunity to conduct discovery.  Because Plaintiffs raise arguments that could have been asserted in a timely appeal, Plaintiffs' motion is untimely and should be denied on that basis alone.  Plaintiffs' motion also fails on the merits because Plaintiffs do not identify any mistake by the Court that warrants vacatur of the Court's prior opinion and resulting judgment, and because they do not show extraordinary circumstances warranting a fourth bite at the apple following the entry of judgment.  Accordingly, Plaintiffs' motion is denied in full.

## I.    BACKGROUND[1]

The Court assumes the reader's familiarity with the underlying facts of this case as summarized in the Court's February 26, 2024 memorandum opinion and order.  *See* Dkt. No. 152 (the "MTD Opinion") at 2–8 (summary of allegations and procedural history).[2]  In that opinion, the

---

[1] Unless otherwise noted, the facts referenced in this opinion are drawn from the Second Amended Complaint, Dkt. No. 111 (the "SAC"), and the documents attached to the Second Amended Complaint, and they are accepted as true for the purposes of this opinion.  *See, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).  However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] The Court uses the capitalized terms defined in the MTD Opinion.

Court dismissed Plaintiffs' RICO claims and declined to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims. *Id.* at 29. The Court denied Plaintiffs leave to amend and directed that judgment be entered for Defendants. *Id.*

On March 27, 2024, thirty days after the Court issued the MTD Opinion, one Plaintiff, Charles Acklin, filed a one-page motion for an extension of time to file a notice of appeal. Dkt. No. 154. In that motion, he argued that he had good cause for not having filed an appeal within the time to appeal—which he acknowledged expired that day—because he "instead filed today a [m]otion under Fed. R. Civ. P. 60(b)(1) and (b)(6) . . . seek[ing] [r]elief from the Court's Memorandum Order entered on [February] 26, 2024 . . . ." *Id.* The next day, all of the Plaintiffs filed the same motion to extend. Dkt. No. 158. The Court denied both motions on April 1, 2024, on the basis that the motions were untimely and failed to show excusable neglect or good cause, as required by Federal Rule of Appellate Procedure 4(a)(5)(A). Dkt. No. 159 at 1–3.

As referenced in his solo motion to extend, Mr. Acklin filed a motion for relief from judgment under Federal Rule of Civil Procedure 60(b)(1) and 60(b)(6) on March 27, 2024. Dkt. No. 155. The supporting memorandum of law and other materials were filed the next day. Dkt. No. 156. Then, also on March 28, all of the Plaintiffs filed a motion for relief from the MTD Opinion (the "Rule 60(b) Motion"), which attached additional supporting documents that were not attached to Mr. Acklin's supporting materials earlier that day. Dkt. No. 157.[3]

In their motion, Plaintiffs invoke Rule 60(b)(1), which permits relief from judgment on grounds of "mistake, inadvertence, surprise, or excusable neglect," and Rule 60(b)(6), which permits the same relief for "any other reason that justifies relief." Dkt. No. 157-1 ("Mem.") at 1–2 (citing Fed. R. Civ. P. 60(b)(1), (6)). Plaintiffs argue that the Court's dismissal of Plaintiffs' RICO claims

---

[3] Because the later-filed motion was filed by all Plaintiffs and is more fulsome than the earlier-filed motion by Mr. Acklin, the Court examines the later-filed motion—unless otherwise stated—in this opinion, but the Court's analysis applies to the earlier-filed motion as well.

was based on the Court's mistaken understanding of the facts alleged in the SAC and that, had the

Court correctly understood the allegations, it would not have dismissed Plaintiffs' claims. *Id.* at 1.

Plaintiffs ask that the Court vacate its dismissal of Plaintiffs' claims on that basis. *Id.* In the

alternative, Plaintiffs request that the case be reopened to allow them to amend the complaint after

an opportunity to conduct discovery. *Id.* Plaintiffs argue that an amendment would not be futile

and attach a Proposed Third Amended Complaint (the "PTAC") in support of this argument. *Id.*;

*see also* Dkt. No. 157-2 (PTAC). Plaintiffs assert that the PTAC adequately alleges their claims on its

own but do not explain why discovery would be necessary if so.

The Eichner Defendants filed their opposition on April 17, 2024. Dkt. No. 161 ("Eichner

Opp."). They argue that Plaintiffs' motion should be denied as an untimely motion for

reconsideration under the local rules of this District. *Id.* at 5–7. They also argue that Plaintiffs'

motion is governed only by Rule 60(b)(1) because Plaintiffs' motion is based on a purported mistake

by the Court, and that the motion should be denied because the Court did not make a mistake in the

MTD Opinion. *Id.* at 7–12. The Eichner Defendants contend that Plaintiffs should not be granted

leave to replead, having already failed to amend after the benefit of the Court's analysis of their

claims, and that Plaintiffs are not entitled to conduct discovery after their claims have been

dismissed. *Id.* at 12–14.

Defendant BlueGreen also filed its opposition on April 17, 2024. Dkt. No. 160 ("BlueGreen

Opp."). BlueGreen argues that Plaintiffs' motion is only governed by Rule 60(b)(6) because it seeks

leave to amend after judgment and the Second Circuit has held that such a request is governed by

Rule 60(b)(6). *Id.* at 3. BlueGreen asserts that Rule 60(b)(6) requires a showing of "extraordinary

circumstances," which Plaintiffs have failed to meet. *Id.* at 3–5. BlueGreen also argues that

Plaintiffs' motion—and the allegations in the SAC itself—fails to identify why BlueGreen in

particular should remain in the case, given that Plaintiffs' arguments and allegations largely focus on the Eichner Defendants. *Id.* at 5–8.

On April 24, 2024, Plaintiffs filed a reply to each opposition brief. Dkt. No. 162 ("Eichner Reply"); Dkt. No. 163 ("BlueGreen Reply"). Plaintiffs argue that Defendants have "failed to sustain their burden to demonstrate that the Plaintiffs' allegations of RICO violations in the SAC were not plausibly plead[ed] with the requisite specificity . . . ." *See* Eichner Reply at 4–5; *see also* BlueGreen Reply at 3. Plaintiffs also argue that they should be permitted to conduct discovery before repleading because BlueGreen and the Eichner Defendants are engaged in a private arbitration proceeding that involves facts that are relevant to Plaintiffs' claims, but Defendants have purportedly refused to provide those details voluntarily. *See* BlueGreen Reply at 4.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 60(b) provides that, "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding . . . ." Fed. R. Civ. P. 60(b). Under Rule 60(b)(1), a party may seek relief based on "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). "[A] 'mistake' under Rule 60(b)(1) includes a judge's errors of law." *Kemp v. United States*, 596 U.S. 528, 533–34 (2022). "Rule 60(b)(6) provides a catchall for 'any other reason that justifies relief'" and is only available "when Rules 60(b)(1) through (b)(5) are inapplicable." *Id.* at 533. "Even then, 'extraordinary circumstances' must justify reopening" a case. *Id.* (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 n.11 (1988)).

"A motion under Rule 60(b) must be made within a reasonable time—and for [subsections] (1), (2), and (3)[,] no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). What constitutes "a reasonable time . . . is to be determined based on 'the particular circumstances of the case,' taking into account the reason for any delay, the

possible prejudice to the non-moving party, and the interests of finality." *Thai-Lao Lignite (Thailand) Co. v. Gov't of the Lao People's Democratic Republic*, 864 F.3d 172, 182 (2d Cir. 2017) (quoting *PRC Harris, Inc. v. Boeing Co.*, 700 F.2d 894, 897 (2d Cir. 1983)).

"Rule 60(b)(1) and Rule 60(b)(6) are 'mutually exclusive,' such 'that any conduct which generally falls under the former cannot stand as a ground for relief under the latter.'" *Mandala v. NTT Data, Inc.*, 88 F.4th 353, 359 (2d Cir. 2023) (quoting *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012) (internal quotation marks omitted)). As such, when "a party's Rule 60(b) motion is premised on grounds fairly classified as mistake, inadvertence, or neglect, relief under Rule 60(b)(6) is foreclosed." *Id.* (quoting *Stevens*, 676 F.3d at 67); *see also id.* (explaining that this is a "threshold issue" because "the two provisions are subject to different filing limitations" under Rule 60(c)).

"A denial of a motion to vacate a judgment under Rule 60(b) is reviewed for abuse of discretion . . . ." *Id.* (internal quotation marks and citations omitted); *see also Thai-Lao Lignite (Thailand) Co.*, 864 F.3d at 182 ("[T]he decision whether to grant such relief is addressed to the sound discretion of the district court."). A district court abuses its discretion if its Rule 60(b) "ruling is based on an erroneous view of the law or on a clearly erroneous assessment of the evidence."[4] *Mandala*, 88 F.4th at 359 (internal quotation marks and citation omitted). "In exercising that discretion [in ruling on a Rule 60(b) motion], courts aim to 'strike[ ] a balance between serving the ends of justice and preserving the finality of judgments.'" *Thai-Lao Lignite (Thailand) Co.*, 864 F.3d at 182 (alteration in original) (quoting *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986)). In short, Rule

---

[4] In 2022, the Supreme Court clarified that litigants may seek relief from judgment based on a purported error of law by the district court under Rule 60(b)(1). *See Kemp*, 596 U.S. at 533–34. While *Mandala* states that all Rule 60(b) motions are reviewed for abuse of discretion, the Circuit may ultimately elect to apply a different standard of review for a Rule 60(b)(1) challenge based on a court's purported legal error, because "[t]here are few principles of judicial review more well-established than the rule that appellate courts consider legal questions . . . *de novo*." *Chavis v. Chappius*, 618 F.3d 162, 169 (2d Cir. 2010).

60(b) motions "should be broadly construed to do substantial justice, yet final judgments should not be lightly reopened." *Nemaizer*, 793 F.2d at 61 (internal quotation marks and citations omitted).

"The burden is on the moving party to demonstrate that it is entitled to relief, and courts generally . . . require that the evidence in support of the motion to vacate a final judgment be highly convincing." *Thai-Lao Lignite (Thailand) Co.*, 864 F.3d at 182 (internal quotation marks and citations omitted); *accord Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 53 (2d Cir. 2021). "[B]ecause vacatur under Rule 60(b) is an equitable remedy, courts may deny Rule 60(b) relief if the moving party is found to have acted inequitably." *Thai-Lao Lignite (Thailand) Co.*, 864 F.3d at 182.

## III.    DISCUSSION

### A.    Plaintiffs' Motion Is Governed by Rule 60(b)(1) as to the Court's Purported Mistakes and by Rule 60(b)(6) as to Plaintiffs' Request for Leave to Amend

Plaintiffs' Rule 60(b) motion seeks two categories of relief, each of which is governed by a different subsection of Rule 60(b). The "[p]roper characterization of Plaintiffs' Rule 60(b) motion is a threshold issue . . . ." *Mandala*, 88 F.4th at 359. "Rule 60(b)(1) and Rule 60(b)(6) are mutually exclusive, such that any conduct which generally falls under the former cannot stand as a ground for relief under the latter." *Id.* (internal quotation marks omitted). First, Plaintiffs seek the vacatur of the Court's MTD Opinion, based on purported mistakes made by the Court in dismissing Plaintiffs' claims. Mem. at 1. Second, in the alternative, Plaintiffs ask for leave to replead after an opportunity to conduct discovery. *Id.* As recent decisions of the Supreme Court and the Second Circuit make clear, these two grounds are each governed by a different subsection of Rule 60(b).

Plaintiffs' request for relief based on the assertion that the Court erred in dismissing Plaintiffs' claims is governed by Rule 60(b)(1). Rule 60(b)(1) governs relief from a judgment based on "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). Plaintiffs assert that the Court erred in holding that the SAC failed to adequately plead a RICO claim because the

Court misunderstood the facts alleged in the SAC. Mem. at 1; *see also* Eichner Reply at 2 ("This Rule 60(b) Motion was not filed . . . for the Court to reconsider the outcome of its [MTD Opinion] based on undisputed facts or law. . . . [I]t was filed because . . . the Court misunderstood numerous significant facts of this case . . . ."). Plaintiffs assert that the SAC adequately pleads elements of their RICO claims in much of the same way as they did when the Court was deciding Defendants' motions to dismiss. The Court understands, therefore, that Plaintiffs are challenging the MTD Opinion in part based on purported errors of law by the Court. "[T]he term 'mistake' in Rule 60(b)(1) includes a judge's legal errors." *Kemp*, 596 U.S. at 534. Accordingly, Plaintiffs' request to vacate the judgment in this matter based on purported mistakes by the Court is governed by Rule 60(b)(1).

Plaintiffs' request, in the alternative, for leave to amend their complaint after conducting discovery is governed by Rule 60(b)(6). "When post-judgment relief is sought for the purpose of curing a pleading deficiency, [the Second Circuit] typically applies Rule 60(b)(6) to consider whether the circumstances warrant vacatur." *Mandala*, 88 F.4th at 360–61. Accordingly, Plaintiffs' request for leave to amend is governed by Rule 60(b)(6).

## B.    Plaintiffs' Motion Is Untimely Because It Was Not Filed Within a Reasonable Time

### 1.    Plaintiffs' Request for Relief Under Rule 60(b)(1) Is Untimely

Plaintiffs' motion is denied as untimely to the extent it seeks relief under Rule 60(b)(1). "A motion filed under Rule 60(b) must be made within a reasonable time . . . ." Fed. R. Civ. P. 60(c)(1). The time to file a motion under Rule 60(b)(1), (2), or (3) is specifically limited to "no more than a year after the entry of the judgment or order or the date of the proceeding." *Id.* "The one-year limitation period for Rule 60(b)[(1)–(3)] motions is absolute." *Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemp. Dance, Inc.*, 466 F.3d 97, 100 (2d Cir. 2006) (internal quotation

marks omitted).  The one-year limit is also a ceiling, and "a Rule 60(b)(1) motion may be rejected as untimely if not made within a reasonable time even though the one-year period has not expired." *Suazo v. Bryant Props. 769 LLC*, No. 21 Civ. 2996 (KPF), 2024 WL 967226, at *4 (S.D.N.Y. Mar. 5, 2024) (internal quotation marks and citation omitted); *accord* Wright & Miller, 11 Fed. Prac. & Proc. Civ. § 2866 (3d ed.) ("The one-year period represents an extreme limit, and the motion may be rejected as untimely if not made within a 'reasonable time' even though the one-year period has not expired.").

The "reasonable time" to file a Rule 60(b)(1) motion that challenges a district court opinion in place of an appeal must be such that it prevents attempts to circumvent the deadline to file an appeal.  "It is well settled that '[a]n appeal from an order denying a Rule 60(b) motion brings up for review only the denial of the motion and not the merits of the underlying judgment for errors that could have been asserted on direct appeal.'"  *Lora v. O'Heaney*, 602 F.3d 106, 111 (2d Cir. 2010) (citation omitted).  Therefore, as the Second Circuit has warned, "[i]n no circumstances . . . may a party use a Rule 60(b) motion as a substitute for an appeal it failed to take in a timely fashion." *Stevens*, 676 F.3d at 67.  In other words, an appeal of a Rule 60(b)(1) challenge to a court's purported legal error could in theory become an appeal of the merits of the underlying judgment but filed after the time to appeal the original judgment had expired.

This concern is mitigated by the general rule that a Rule 60(b)(1) motion challenging a district court's purported error of law is ordinarily not "made within a reasonable time" if it is filed after the deadline for appealing the same underlying order or judgment.  *See e.g.*, *Niederland v. Chase*, 425 F. App'x 10, 12 (2d Cir. 2011) (summary order) ("Rule 60(b)(1) motions to reopen . . . are generally deemed untimely if made after the deadline for filing a notice of appeal.").  That deadline to appeal is 30 days, except in circumstances not relevant here or unless the clock is otherwise extended.  Fed. R. App. P. 4(a)(1)(A) ("In a civil case, . . . the notice of appeal . . . must be filed with

a district clerk within 30 days after entry of the judgment or order appealed from."). The Supreme

Court in *Kemp* noted with approval the Seventh Circuit's rule that "a Rule 60(b) motion filed after

the time to appeal has run that seeks to remedy errors that are correctable on appeal will typically

not be filed within a reasonable time." *See Kemp*, 596 U.S. at 538 (citing *Mendez v. Republic Bank*, 725

F.3d 651, 660 (7th Cir. 2013)) ("[W]e note that Courts of Appeals have used [the 'reasonable time'

standard of Rule 60(c)(1)] to forestall abusive litigation by denying Rule 60(b)(1) motions alleging

errors that should have been raised sooner (*e.g.*, in a timely appeal)."); *see also Blitch v. United States*, 39

F.4th 827, 834 (7th Cir. 2022) (reiterating this general rule after *Kemp*). The Second Circuit has also

endorsed this rule, by noting, in *dicta*, that a Rule 60(b)(1) motion should "not be permitted past the

deadline for filing a notice of appeal," to "prevent[] Rule 60(b)(1) from becoming a way to assert an

otherwise time-barred appeal." *See In re 310 Assocs.*, 346 F.3d 31, 35 (2d Cir. 2003) (per curiam)

(citing *Schildhaus v. Moe*, 335 F.2d 529, 531 (2d Cir. 1964) (Friendly, J.)).

Plaintiffs' bid for relief under Rule 60(b)(1) based on a purported error by the Court was not

made "within a reasonable time" because Plaintiffs failed to file their Rule 60(b) motion within the

30-day period to appeal the Court's MTD Opinion and related judgment. First, all but one of the

Plaintiffs failed to file anything within those 30 days. Only one Plaintiff (Mr. Acklin) filed a two-

page notice of a motion seeking relief from judgment in that period, filing the notice on the last day

on which he could have appealed the MTD Opinion. Dkt. No. 155. Mr. Acklin did not file the

memorandum of law and supporting factual materials in support of the motion until the next day.

Dkt. No. 156 (136 pages). It was also later that day that all the Plaintiffs filed a motion for relief

from judgment and supporting documents—which totaled almost six times the size of Mr. Acklin's

earlier motion papers. Dkt. No. 157 (813 pages). Notably, Plaintiffs themselves identify the late-

filed motion as their motion, citing to their later-filed Rule 60(b) motion as the "Rule 60(b)(1)

Motion" in their reply briefs, rather than the two-page notice of motion filed by Mr. Acklin on March 27. *See* Eichner Reply at 1 (citing to Dkt. No. 156 as the "Rule 60(b)(1) Motion").

Second, the substantive portion of both motions was not filed until after the deadline to appeal had expired. Local Civil Rule 7.1(a) of this District provides that "all motions . . . must include . . . [a] memorandum of law, setting forth the cases and other authorities relied on in support of the motion, . . . and [s]upporting affidavits and exhibits thereto containing any factual information and parts of the record necessary for the decision of the motion." This rule makes clear that a motion is not simply the notice of motion; it is comprised of the sum of its parts—the notice of motion, the brief, and all supporting factual materials. *See, e.g.*, *U.S. ex rel. Colucci v. Beth Israel Med. Ctr.*, No. 06 Civ. 5033 DC, 2012 WL 3577995, at *1–2 (S.D.N.Y. Aug. 16, 2012) (Chin, Circuit Judge, sitting by designation) ("Clearly, the rules contemplate that all motion papers will be filed together. [To interpret the rules otherwise] would allow parties to file incomplete motion papers at the deadline, permitting them to file other necessary papers at their leisure, nullifying the purpose of the time limits imposed by Rule 60."), *aff'd sub nom. Colucci v. Beth Israel Med. Ctr.*, 531 F. App'x 118 (2d Cir. 2013). Both sets of Plaintiffs' opening briefs in support of their motion and supporting materials—in other words, all of the substantive portions of their motion—were filed after the 30-day deadline had expired.

The 30-day default rule is not a bright-line rule and depends on the circumstances of the case at hand. *See Mendez*, 725 F.3d at 660 ("[T]he practice of requiring a Rule 60(b) motion to correct the court's own error to be filed before the time to appeal runs is a sensible one provided that it is flexibly applied." (internal quotation marks and citation omitted)).[5] What constitutes "a reasonable

---

[5] In *Mendez*, the Seventh Circuit permitted an exception to this general rule where a litigant had filed a timely appeal and was separately pursuing a Rule 60(b) motion at the district court level, because the timely appeal meant that "the concern about circumventing the deadline to appeal is absent." 725 F.3d at 659–61. This exception does not apply to Plaintiffs, who failed to file a timely notice of appeal.

time" must be "determined based on the particular circumstances of the case, taking into account the reason for any delay, the possible prejudice to the non-moving party, and the interests of finality." *Thai-Lao Lignite (Thailand) Co.*, 864 F.3d at 182 (internal quotation marks omitted).

Here, the balance weighs against deviating from the default rule that Rule 60(b)(1) motions raising issues that can be pursued on appeal must be filed within the time to appeal. First, Plaintiffs provide no explanation for why they waited to file their Rule 60(b) motion—therefore, the reason for any delay weighs against finding Plaintiffs' motion timely. *See, e.g.*, *Suazo*, 2024 WL 967226, at *5 ("As a general matter, a request for relief under Rule 60(b) is unreasonable and will not be granted where the applicant fails to move for relief promptly." (internal quotation marks and citation omitted)). Second, the possible prejudice to Defendants in finding the motion timely is modest but not trivial: they are prejudiced by the cost of defending against a motion and a possible appeal from a decision on that motion, as well as the loss of having certainty on the outcome of this lawsuit; on the other hand, Defendants have already incurred much of that cost, in defending against the Rule 60(b) Motion. The possible prejudice to Defendants weighs slightly against finding Plaintiffs' motion timely. Finally, the interests of finality weigh in favor of finding that Plaintiffs' request for relief under Rule 60(b)(1) is untimely, which would allow the Court's judgment against Plaintiffs to remain final and certain.

Plaintiffs' only argument in support of the timeliness of their motion is based on a misunderstanding of the law. Plaintiffs contend that a Rule 60(b) motion must be filed either within a reasonable time *or* within a year after the judgment from which the motion seeks relief, and that Plaintiffs' motion is timely because it was "filed within 30 or 31 days" of the MTD Opinion. Eichner Reply at 4–5. The one-year time limit to file a Rule 60(b)(1) motion is not an alternative to the "reasonable time" requirement of Rule 60(c)(1). "Rule 60(b)(1) motions, like all Rule 60(b) motions, must be made 'within a reasonable time.'" *Kemp*, 596 U.S. at 538 (quoting Fed. R. Civ. P.

60(c)(1)).  Aside from arguing that their motion is timely because it was filed within one year,

Plaintiffs provide no explanation for why they delayed the filing of their motion.

It is particularly appropriate to find that Plaintiffs failed to file their motion "within a

reasonable time" because Plaintiffs' motion is, by their own admission, "a substitute for an appeal [a

party] failed to take in a timely fashion." *Stevens*, 676 F.3d at 67.  Plaintiffs did not file a notice of

appeal within the 30-day time limit provided by Federal Rule of Appellate Procedure 4(a)(1)(A).

Instead, on the last day of that 30-day period, Plaintiffs filed a motion to extend the time to appeal.

Dkt. No. 154.  In the motion for an extension, Plaintiffs stated:  "Plaintiffs would like to appeal the

Court's [MTD Opinion] and for good cause did not file a notice of appeal within the required 30-

day time-period that expired today but instead filed today a Motion under Fed. R. Civ. P. 60(b)(1)

and (b)(6) . . . ."  *Id.*  In short, Plaintiffs' justification for not filing a timely appeal—and for seeking

an extension of time to appeal—was the filing of the Rule 60(b) Motion.  And, having failed to

preserve their time to appeal the MTD Opinion, Plaintiffs might have a second opportunity to

appeal if the Court were to accept their Rule 60(b) Motion as timely filed.  *See generally Kemp*, 596 U.S.

at 538 (noting that the "reasonable time" standard permits courts to "forestall abusive litigation" by

denying Rule 60(b)(1) motions that "should have been raised sooner (e.g., in a timely appeal)").[6]

---

[6]  The Court follows the Second Circuit and other courts that use the 30-day deadline to appeal as the default boundary
for filing a timely Rule 60(b)(1) motion.  But it is also notable that the federal rules provide a slightly shorter 28-day
window of opportunity for a litigant to challenge a judgment before the district court before proceeding to an appeal, which
Plaintiffs also missed.  "If a party files in the district court . . . [a Rule 60 motion for relief] under the Federal
Rules of Civil Procedure . . . the time to file an appeal runs for all parties from the entry of the order disposing of the last
such remaining motion . . . if the motion is filed within the time allowed for filing a motion under Rule 59."  Fed. R.
App. P. 4(a)(4)(A)(vi).  Federal Rule of Civil Procedure 59, in turn, provides that "[a] motion to alter or amend a
judgment must be filed no later than 28 days after the entry of the judgment."  Fed. R. Civ. P. 59(e).  As the advisory
notes to the 2023 amendment of this rule explains, this 28-day window "[r]ecogni[zes] that it makes sense to await the
district court's decision on [certain post-judgment] motions before pursuing an appeal . . . ."  Fed. R. App. P. 4 advisory
committee's notes to 2023 amendment.  If filed within this period, a Rule 60(b) motion allows the district court an
opportunity to re-examine and correct an error before the case proceeds to the court of appeals.  *See, e.g.*, *Rumsey v. N.Y.
State Dep't of Corr. Servs.*, 580 F. Supp. 1052, 1054 (N.D.N.Y. 1984) ("[P]rovided the movant is not thereby permitted to
avoid the time constraints required for taking a timely appeal[,] . . . no good purpose is served by requiring the parties to
appeal to a higher court, . . . when the [district] court is equally able to correct its decisions . . . ." (internal quotation
marks and citation omitted)); *see also Mendez*, 725 F.3d at 660 (noting "sensible" practice of permitting "a Rule 60(b)
motion to correct the court's own error" if filed before the time to appeal expires).  Plaintiffs, however, did not file their

The concern that a litigant could, in effect, file an untimely appeal in the form of a Rule 60(b) motion is precisely the concern that underpins the expectation that Rule 60(b) motions that could have been brought as an appeal should ordinarily be filed within the 30-day time to appeal.

Accordingly, Plaintiffs failed to make their request for relief under Rule 60(b)(1) within a reasonable time, and their Rule 60(b) Motion as to the Rule 60(b)(1) relief is denied as untimely.[7]

### 2.    Plaintiffs' Request for Relief Under Rule 60(b)(6) Is Untimely

Plaintiffs' request for leave to amend (and conduct discovery) under Rule 60(b)(6) also was not made within a reasonable time.  A motion for relief under Rule 60(b)(6) must be filed within "a reasonable time"—without the one-year cap imposed on Rule 60(b)(1).  *See* Fed. R. Civ. P. 60(c)(1). "[A] Rule 60(b)(6) motion requires 'extraordinary circumstances,' which 'typically do not exist where the applicant fails to move for relief promptly.'"  *Grace v. Bank Leumi Trust Co. of N.Y.*, 443 F.3d 180, 190 n.8 (2d Cir. 2006) (citations omitted); *see also Gater Assets Ltd.*, 2 F.4th at 53 ("A party moving for relief under Rule 60(b) generally must . . . show good cause for the failure to act sooner . . . ." (internal quotation marks and citation omitted)).  As just explained, Plaintiffs provide no reason for their failure to promptly move for leave to amend following the MTD Opinion, Defendants would suffer some prejudice if Plaintiffs' motion is considered timely, and the interest of finality weigh against finding the motion timely.  Accordingly, Plaintiffs also failed to request relief under Rule 60(b)(6) within a reasonable time.

For the reasons just stated, Plaintiffs' Rule 60(b) Motion is denied as untimely.

---

Rule 60(b) Motion within this 28-day window of opportunity to automatically trigger a reset of the time to appeal, which further supports the conclusion that their motion was not filed within a reasonable time.

[7] Defendants argue that Plaintiffs' motion should be denied as an untimely motion for reconsideration.  Because the Court finds Plaintiffs' motion is untimely based on the definition of a "reasonable time" under Rule 60(c)(1), the Court does not need to address whether Plaintiffs' motion is untimely because it was not filed within the 14-day window provided for in the local rules to file a motion for reconsideration.  *Compare Lora*, 602 F.3d at 111 ("An untimely motion for reconsideration is treated as a Rule 60(b) motion."), *and Ross v. Cooper*, No. 90 Civ. 304 (PGG), 2008 WL 5062727, at *2 (S.D.N.Y. Nov. 24, 2008) (treating motion for reconsideration filed after the deadline provided in the local rules as a timely motion under Rule 60(b)), *with Group One Ltd. v. GTE GmbH*, No. 20-cv-2205 (MKB), 2023 WL 2710590, at *4–5 (E.D.N.Y. Mar. 30, 2023) (denying Rule 60(b) motion as an untimely motion for reconsideration under the local rules).

### C.    Plaintiffs Fail to Identify a Mistake Warranting Rule 60(b)(1) Relief

Even if the Court were to consider the Rule 60(b) Motion to be timely, Plaintiffs fail to

establish that they are entitled to relief under Rule 60(b)(1).  Plaintiffs seek relief from judgment

based on purported mistakes made by the Court in its MTD Opinion, which dismissed all of

Plaintiffs' claims.  Mem. at 1.  "The burden is on the moving party to demonstrate that it is entitled

to relief, and courts generally require that the evidence in support of the motion to vacate a final

judgment be highly convincing."  *Thai-Lao Lignite (Thailand) Co.*, 864 F.3d at 182 (internal quotation

marks and citation omitted).

To adequately plead a RICO violation under 18 U.S.C. § 1962, Plaintiffs must allege

"(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Kim v. Kimm*, 884

F.3d 98, 103 (2d Cir. 2018) (quoting *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001)).

"'Racketeering activity' encompasses, among other things, any act indictable for crimes enumerated

under 18 U.S.C. § 1961(1)(B), which include . . . acts of mail fraud (18 U.S.C. § 1341) and wire fraud

(18 U.S.C. § 1343)."  *Bigsby v. Barclays Capital Real Estate, Inc.*, 298 F. Supp. 3d 708, 716–17 (S.D.N.Y.

2018), *aff'd*, 841 F. App'x 331 (2d Cir. 2021).

Plaintiffs assert a cause of action against Defendants for a pattern of racketeering activity

based on alleged wire and mail fraud in violation of RICO, under 18 U.S.C. § 1962(c).  SAC ¶¶ 290–

307.[8]  The federal mail and wire fraud statutes prohibit the use of the mail or a wire communication

to execute "any scheme or artifice to defraud, or for obtaining money or property by means of false

or fraudulent pretenses, representations, or promises."  *United States v. Greenberg*, 835 F.3d 295, 305

(2d Cir. 2016) (quoting 18 U.S.C. §§ 1341, 1343).  Therefore, a complaint alleging mail and wire

---

[8] The other federal claim asserted in the SAC is a conspiracy to violate RICO.  SAC ¶¶ 308–317.  The Court dismissed Plaintiffs' RICO conspiracy claim based on Plaintiffs' failure to adequately plead a RICO violation.  MTD Opinion at 26.

fraud must plead "(1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme." *Id.*

A RICO claim based on mail or wire fraud is subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013). Rule 9(b) requires that the complaint "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy that requirement, the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). Although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b), a claim of fraud must be supported by allegations "that give rise to a strong inference of fraudulent intent." *S.Q.K.F.C., Inc. v. Bell Atl. Tricon Leasing Corp.*, 84 F.3d 629, 634 (2d Cir. 1996). A plaintiff can satisfy this requirement by "(1) alleging facts to show that defendants had both motive and opportunity to commit fraud, or by (2) alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.*

Rule 9(b) serves to "provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit." *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) (quoting *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991)). "When the predicate acts of a civil RICO claim are grounded in fraud, the concerns associated with pleading fraud with particularity take on even greater importance." *Mathon v. Feldstein*, 303 F. Supp. 2d 317, 322–23 (E.D.N.Y. 2004); *see also Nat'l Union Fire Ins. Co. of Pittsburgh v. Archway Ins. Servs. LLC*, No. 11 Civ. 1134 (WHP), 2012 WL 1142285, at *3 (S.D.N.Y. Mar. 23, 2012) ("[C]ourts scrutinize RICO claims, particularly those based solely on predicate acts of wire fraud.").

16

Plaintiffs assert that the dismissal of their claims was "based on the Court mistakenly misapprehending certain critical facts" alleged in the SAC. Mem. at 1; Eichner Reply at 2 ("Plaintiffs respectfully submit that the Court misunderstood numerous significant facts of this case . . . ."). In support of this argument, Plaintiffs present a table listing what they contend are the Court's mistaken assertions about the SAC. Mem. at 9–20. In the remainder of their briefing, Plaintiffs assert that they adequately pleaded a RICO violation in the SAC. *Id.* at 2–9, 21–22. The Court first addresses the table of the Court's purported mistaken comprehension of the SAC before turning to the remainder of Plaintiffs' arguments for Rule 60(b)(1) relief.

### 1. Plaintiffs' Table Does Not Identify Any Mistake by the Court Warranting Rule 60(b)(1) Relief

Plaintiffs' table largely fails to identify mistakes by the Court, and any mistakes it identifies do not warrant vacatur of the dismissal of Plaintiffs' claims. Plaintiffs' table contains 22 rows[9] that list ways in which the Court purportedly misunderstood the allegations in the SAC. Mem. at 10–20. Each row has a corresponding response from Plaintiffs that purport to summarize and cite allegations from the SAC that refute the Court's understanding of the SAC. *Id.*

In Row 1 of the table, Plaintiffs challenge the Court's primary conclusion in the MTD Opinion but do not identify facts alleged in the SAC that the Court missed or misconstrued. Plaintiffs challenge the Court's summary statement, in the introduction to the MTD Opinion, that the SAC fails to plead a claim for relief under RICO because it does not adequately allege fraudulent conduct by Defendants that caused Plaintiffs injury. MTD Opinion at 1–2; *see also id.* at 14–16 (noting "'fraudulent [conduct]' does not mean any type of misconduct"). In response, Plaintiffs cite specific portions of the SAC and contend that the Court's conclusion was wrong. Mem. at 10–11 (citing to SAC ¶¶ 188, 193, 200, 205, 215, 235, 254, 262–63, 266).

---

[9] While Plaintiffs' chart ends at Row 23, it does not contain a Row 10. Mem. at 13–14.

The allegations in the SAC on which Plaintiffs rely in Row 1 are either conclusory—and therefore cannot adequately plead the elements of a claim—or consistent with the alleged facts analyzed in the MTD Opinion.  For example, Plaintiffs' first citation to the SAC is to this allegation: "Each year since 2011, Defendant Urban . . . sent fraudulent TMC maintenance fee statements . . . by mail or wire to all Plaintiffs . . . ."  SAC ¶ 188.  This allegation is conclusory, in that simply describing Defendants' conduct as "fraudulent" is not sufficient to plead fraudulence.  *See, e.g.*, *Knoll v. Schectman*, 275 F. App'x 50, 51 (2d Cir. 2008) (summary order) (affirming dismissal of RICO claim because mere descriptions of the predicate acts as "fraudulent accounting" or similar descriptors is conclusory and insufficient to plead a claim).  The next cited portion of the SAC alleges that Plaintiffs' maintenance fee statements "are fraudulent because they were [sent] . . . before the members' maintenance fee due dates, . . . without regard for contractual obligations."  *Id.* ¶ 193.  But the Court also already explicitly rejected the assertion that Plaintiffs' maintenance fee statements were fraudulent based on Defendants' alleged demands for the early payment of the fees.  *See* MTD Opinion at 16 (noting that such allegations, "while perhaps troubling[,] do not plead deception by themselves").[10]  In their citations to the SAC, Plaintiffs do not identify any part of the alleged facts that the Court mischaracterized or otherwise misunderstood.

Plaintiffs' assertions in Row 1 are instead characterizations of the SAC that the Court already considered in the MTD Opinion.  Plaintiffs contend that the SAC adequately alleges that Defendants engaged in deceptive conduct causing injury to Plaintiffs in a number of ways, including by:  "inflating management fees; sending fraudulently assessed maintenance fee statements to

---

[10] One assertion by Plaintiffs in Row 1 also does not reflect any allegation found in the SAC.  Plaintiffs represent that timeshare interests bought back from TMC's timeshare interest holders were "subsequently made available to Defendant Manhattan Marketing," Mem. at 10, but that allegation is not found in the SAC.  *See* SAC ¶ 4 (alleging that "the timeshare interests [that were bought back were] transferred to the Sponsor").  As explained below, allegations that were not before the Court at the time it decided the MTD Opinion cannot form the basis for a mistake by the Court.  This detail—to whom timeshare interests that Defendants bought back went—also has no relevance to the Court's analysis.

Plaintiffs; sending materially false annual budgets to Plaintiffs; [and] falsely advising Plaintiffs that rooms were unavailable when such rooms were in fact rented to non-member third parties as part of a Transient Rental Program[.]"  Mem. at 10.  But the Court addressed each of these assertions in the MTD Opinion.  *See, e.g.*, MTD Opinion at 14–16 (explaining that Plaintiffs' issue with TMC's budget, management fees, and maintenance fees do not amount to pleading that they were fraudulent); *id.* at 20 (noting Plaintiffs do not dispute the truthfulness of the representation that rooms were unavailable).  Plaintiffs do not point to anything in the SAC that the Court missed.

Many of the entries in Plaintiffs' chart are variations of Plaintiffs' assertions in Row 1 and fail to identify a mistake by the Court for the same reasons.  In Rows 3, 9, 12, 16, 17, and 20, Plaintiffs assert that the SAC adequately pleads fraudulent conduct.[11]  *See* Mem. at 3–18.  In support, Plaintiffs cite to portions of the SAC.  But these portions of the SAC are consistent with the Court's description of the alleged facts at issue, and Plaintiffs' assertions about the SAC are ones the Court already considered in the MTD Opinion.  For example, in Rows 9, 12, and 16, Plaintiffs assert that the alleged difficulties that they experienced in making timeshare reservations—such as not being able to make reservations on short notice or having to make early payments of their maintenance fees before they could make a reservation—amount to fraudulent conduct by Defendants.  *See* Mem. at 13, 14, 17.  But the Court examined these allegations and held that they failed to describe deceptive conduct.[12]  MTD Opinion at 19–20.  Plaintiffs identify no mistake in that assessment of the SAC's allegations:  while Plaintiffs allegedly expected to be able to make reservations without difficulty, the fact that they were not able to do so does not in itself constitute fraudulent conduct.

---

[11] Plaintiffs also assert in Row 3 that they adequately pleaded that Plaintiffs were injured as a result of Defendants' conduct.  The Court addresses this and other entries in the table relating to causation separately below.

[12] In Row 9, Plaintiffs represent that the SAC alleged that the annual maintenance fees were "based on a pro rata share" of the TMC's annual budget.  Mem. at 13.  This is not an allegation that is found in the SAC, though it is found in the PTAC.  *See* PTAC ¶ 263.  As explained later in this opinion, Plaintiffs cannot purport to have identified a mistake by the Court based on allegations that were not before the Court when it issued the MTD Opinion.

Plaintiffs do not point to any statement by Defendants that they adequately allege to be false or deceptive. *Id.* at 20 ("Plaintiffs do not allege that rooms were, in fact, available to fulfill each reservation request [despite Defendants' representations that the rooms were unavailable]. Rather, Plaintiffs find fault with *why* no rooms were available . . . .").[13]

Rows 3, 17, and 20 are similar. Row 3 explicitly refers to Plaintiffs' assertions in Row 1 and cites to portions of the SAC that are consistent with the MTD Opinion's description of the allegations. *See* Mem. at 11 ("Plaintiffs alleged that the Eichner Defendants' actions set forth above in Row 1 constituted a scheme that . . . involved false and materially misleading statements . . . .") (citing to SAC ¶¶ 1–7, 11, 13, 179, 208, 221, 294–95, 297, 300, 315, 421, 427). Row 17 objects to the Court's conclusion that the SAC's allegations regarding TMC's annual budget and maintenance fee statements might plead breaches of contract but not fraudulent conduct, while Row 20 objects to the Court's conclusion that the SAC fails to adequately plead fraudulent conduct in relation to Defendants' alleged offers to buy back timeshare interests in exchange for $100 and forgiveness of any debt owed on overdue maintenance fees. *Id.* at 17, 18–19 (Row 17, citing SAC ¶¶ 2, 4, 9–10; Row 20, citing SAC ¶¶ 4, 6, 9). Again, Plaintiffs fail to identify any allegation the Court misunderstood in the MTD Opinion.

Other portions of Plaintiffs' table contest other bases for the Court's dismissal of Plaintiffs' claims but fail to identify any mistake by the Court in making each determination. In Row 15, Plaintiffs contest the Court's conclusion that the SAC failed to plead scienter on the part of any

---

[13] As the Court noted in the MTD Opinion, Plaintiffs do not base their RICO claims on any purported representation or omission made by Defendants at the time of purchase. *See* MTD Opinion at 20 n.26, 22 n.30 (citing SAC ¶¶ 290–307); *see also* Dkt. No. 94 at ECF p. 27 ("Plaintiffs are not alleging the actionable frauds at issue under the RICO statutes to be the misstatements and material omissions made to induce Plaintiffs to purchase their timeshare interests."). Plaintiffs do not assert in their motion that this characterization of their RICO claims is in error. This may be because Plaintiffs would be barred from proceeding on such a claim. *See generally* MTD Opinion at 22 n.30 (noting that Plaintiffs' claims may be time-barred if based on purported fraudulent conduct at the time of purchase); *see also* *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 273–74 (2d Cir. 2011) (citing 18 U.S.C. § 1964(c)) (noting amendment to RICO that "bar[s] civil RICO claims based on allegations of securities fraud").

Defendant. Mem. at 16. In the MTD Opinion, the Court noted that a general incentive to obtain

profit is not sufficient to allege a "strong inference of fraudulent intent." MTD Opinion at 19 n.23

(citing *Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 423 (E.D.N.Y. 2017) and *ABF*

*Cap. Mgmt. v. Askin Ca. Mgmt., L.P.*, 957 F. Supp. 1308, 1327 (S.D.N.Y. 1997)). Row 15 asserts that

"Plaintiffs' allegations [supporting scienter] were not solely based on the fact that the Eichner

Defendants stood to gain economically from their actions" but that "they were based on specific

actions taken to obtain funds by fraud . . . ." Mem. at 16 (citing SAC ¶¶ 2, 4, 9–10). This is not an

identification of allegations the Court missed or misunderstood in the SAC. Rather, it is a new

argument that allegations of fraudulent conduct can also establish scienter. "An argument based on

hindsight regarding how the movant would have preferred to have argued its case does not provide

grounds for Rule 60(b) relief . . . ." *Smith v. Cnty. of Nassau*, No. CV 10-4874 (MKB) (ETB), 2013

WL 3863918, at *2 (E.D.N.Y. July 24, 2013) (quoting *Paddington Partners v. Bouchard*, 34 F.3d 1132,

1147 (2d Cir. 1994)). The argument also fails on its merits—not only does the SAC fail to

adequately allege fraudulent conduct, as explained in the MTD Opinion, the Court is not aware of

any authority providing that unfavorable conduct alone establishes fraudulent intent, and Plaintiffs

cite none.

      Row 13 also fails to identify an error in the Court's understanding of the factual allegations.

Plaintiffs assert that the SAC adequately "alleged that the Eichner Defendants owed [Plaintiffs] a

fiduciary duty." Mem. at 15 (citing SAC ¶¶ 7, 10, 12, 180–82, 201, 215, 286, 342, 419, 432); *see also*

*id.* at 21–22 (arguing that the sponsor and board of a timeshare association owe fiduciary duties to

members). In support, Plaintiffs cite to portions of the SAC that simply state that Defendants owed

Plaintiffs a fiduciary duty, which is too conclusory to be taken as fact. *See, e.g.*, *Krys v. Butt*, 486 F.

App'x 153, 156 (2d Cir. 2012) (summary order) (affirming dismissal of fiduciary duty claims where

individual defendant's fiduciary duty was only alleged in conclusory fashion and as derivative of the

corporation's duty); *Galvstar Holdings, LLC v. Harvard Steel Sales, LLC*, No. 16 Civ. 7126 (GBD), 2017 WL 1535383 (S.D.N.Y. Apr. 20, 2017) (finding fiduciary duty inadequately pleaded where "Plaintiffs provide only conclusory allegations of the supposed 'trust and confidence' between [Defendants] on the one hand and Plaintiffs on the other"), *aff'd in relevant part,* 722 F. App'x 12, 16 (2d Cir. 2018) (summary order).  Plaintiffs also cite to allegations in the SAC stating that Defendants owed a fiduciary duty by virtue of their role as a sponsor of TMC, *see, e.g.*, SAC ¶ 182, but sponsors and managing agents do not owe a fiduciary duty to the interest owners.  *See, e.g., Caprer v. Nussbaum*, 825 N.Y.S.2d 55, 69 (2d Dep't 2006) ("There is no fiduciary relationship between the sponsor and the [entity]."); *Makhnevich v. Bd. of Managers of 2900 Ocean Condo.*, 193 N.Y.S.3d 9, 11 (1st Dep't 2023) ("[T]he managing agent is a fiduciary as to the [entity], but not as to the individual unit owners." (quoting *Caprer*, 825 N.Y.S.2d at 69–70)).  In neither their assertions nor citations to the SAC do Plaintiffs identify any error in the Court's understanding of the SAC's allegations.[14]

Rows 7, 14, and 23 in Plaintiffs' table challenge the Court's conclusion that Plaintiffs failed to adequately plead each Defendant's liability under the heightened pleading standard of Rule 9(b) but fail to identify any error.  *See* Mem. at 12, 15, 20.  In the MTD Opinion, the Court held that the SAC fails to plead the existence of an enterprise, which is a required element of a RICO claim.  MTD Opinion at 22.  The Court noted that the SAC fails to plead which specific Defendant engaged in what conduct and that the SAC instead relies on the relationship and position of each Defendant to each other to ascribe specific actions to each Defendant.  *Id.* at 22–25; *see also id.* at 14, 18.  The Court concluded that those allegations were insufficient to meet the pleading requirements of a claim for mail or wire fraud under RICO.  *Id.* at 24–26.  Plaintiffs contest this conclusion in Row 23, but Plaintiffs only repeat the argument rejected by the Court in the MTD Opinion that

---

[14] As addressed separately below, Plaintiffs do identify an error of law in the Court's conclusion that the SAC failed to adequately allege the existence of a fiduciary duty between Plaintiffs and any Defendant.  But, for the reasons explained below, this is not an error that warrants relief under Rule 60(b).

Defendants' relationships and roles in relation to each other is sufficient to plead the existence of an enterprise. Mem. at 20 ("Plaintiffs alleged the role of each of the Eichner Defendants played in the wrongful scheme . . . . Each of the Eichner Defendants is defined by their role in the interconnected web of companies . . . ."). Plaintiffs only cite to one paragraph of the SAC, which does not allege anything about the Eichner Defendants. SAC ¶ 5 (stating that BlueGreen continued the "scheme . . . initially perpetrated by the Eichner Defendants").[15] Similarly, in Rows 7 and 14, Plaintiffs again rely on the purported relationships and roles of Defendants in relation to each other to argue that the SAC's allegations were sufficient to establish each Defendant's liability. Mem. at 12–13 (Row 7); *id.* at 15–16 (Row 14). These rows fail to identify any erroneous understanding of the SAC by the Court, and they assert an argument that the Court already rejected without pointing to an error in that analysis.

Plaintiffs' table does identify, however, an error in the Court's understanding of the SAC's allegations as to causation. In the MTD Opinion, the Court held that Plaintiffs had failed to plead a causal link between their complaints about TMC's budget—such as the management fee that TMC paid to Defendant Urban—and any injury to Plaintiffs in relation to the maintenance fees they paid. MTD Opinion at 12–14. In Rows 3, 4, 5, 6, and 8 of the table in the Rule 60(b) Motion, Plaintiffs contest this conclusion, citing to various paragraphs in the SAC. *See* Mem. at 11–12, 13 (citing to SAC ¶¶ 1–7, 11, 13, 179, 208, 221, 294–95, 297, 300, 315, 421, 427 in Row 3; citing to SAC ¶¶ 306, 317, 323, 329–30, 346, 358, 363, 367, 378, 381, 385, 425, 434 in Row 4; citing to SAC ¶¶ 190, 200 in Row 5; citing to SAC ¶¶ 2, 190, 195–96, 215, 237 in Row 6).[16]

---

[15] This citation also fails to identify any error by the Court. In the MTD Opinion, the Court addressed Plaintiffs' assertion that BlueGreen continued the Eichner Defendants' misconduct. The Court separately analyzed the SAC's allegations about BlueGreen to conclude that the SAC failed to plead with the requisite specificity to adequately allege an enterprise. *See* MTD Opinion at 25–26.

[16] As discussed below, Row 8 does not cite to any part of the SAC. *See* Mem. at 13.

Plaintiffs point to specific portions of the SAC that adequately allege that Plaintiffs were charged higher maintenance fees—and suffered other harm—as a result of these alleged faults in the budget. The Court correctly concluded in the MTD Opinion that there are gaps in the SAC's allegations between the specific faults Plaintiffs found in TMC's budgeting process and a corresponding effect on Plaintiffs' maintenance fees. *See, e.g.*, MTD Opinion at 14 ("Plaintiffs do not . . . assert that lower revenues from other sources or higher expenses reflected on the annual budget would have resulted in higher maintenance fees charged to Plaintiffs. . . . Plaintiffs also fail to plead how a higher management fee paid to Urban injures *Plaintiffs* rather than TMC . . . ."). But, as Plaintiffs point out, the SAC alleges that Plaintiffs were charged "inflated" maintenance fees because of Defendants' purported mismanagement of TMC's budget and that Defendants' alleged conduct decreased—even rendered "worthless"—the value of Plaintiffs' timeshare interests. SAC ¶¶ 2, 190, 200, 306. Based on these allegations, and drawing all reasonable inferences in Plaintiffs' favor as the Court must in a Rule 12(b)(6) analysis, the Court concludes that the SAC adequately alleges a causal link between the alleged faults Plaintiffs find in TMC's budget and injury to Plaintiffs. For example, although the SAC does not trace how the burden of the alleged over-payment of management fees to Urban were passed onto Plaintiffs, it can be reasonably inferred that TMC having to incur a higher expense resulted in higher maintenance fees charged to Plaintiffs.[17]

This error, however, is not one that warrants relief from the judgment under Rule 60(b)(1). In the MTD Opinion, the Court held that the SAC failed to adequately plead causation as to the maintenance fee statements, one of three categories of predicate acts of fraud asserted in the SAC.

---

[17] This is a close question. The SAC alleges that Urban's fees were tied to TMC's expected revenue—that is, the SAC represents that TMC first determined its expected revenue, including the membership maintenance fees it expected to collect, and then determined Urban's fee based on that amount. *See* SAC ¶¶ 190–91 (alleging that Urban's management fee was "a percentage of TMC's estimated annual operating budget" or "up to 20% of TMC's annual assessment of maintenance fees plus transient rentals and other income"). This suggests that the causal effect went in the opposite direction: the maintenance fees determined Urban's fees. But the Court credits the other portions of the SAC that allege—albeit with less specificity—the purportedly inflated fees paid to Urban resulted in the payment of higher maintenance fees by Plaintiffs.

MTD Opinion at 12–14. But the Court also separately held that the SAC failed to plead that the predicate acts in question—the maintenance fee statements—were fraudulent. *Id.* at 14–19. That holding alone supports the dismissal of Plaintiffs' RICO claims that are based on the maintenance fee statements. Also, the Court dismissed Plaintiffs' RICO claims on other independent bases— such as the SAC's failure to adequately plead scienter or each Defendant's liability—that are standalone bases for dismissal.[18]

The remaining entries in Plaintiffs' table address portions of the MTD Opinion that were immaterial to the Court's ultimate conclusions and have no bearing on Plaintiffs' entitlement to relief under Rule 60(b)(1). In Row 2, Plaintiffs object to the following quotation the Court used in its citation to another decision of this District: "[C]ivil RICO has resulted in a flood of what are and should be state court cases that are being refrained and brought in federal court as RICO actions." MTD Opinion at 11 (citing *Nat'l Union Fire Ins. Co. of Pittsburgh v. Archway Ins. Serv. LLC*, No. 11 Civ. 1134 (WHP), 2012 WL 1142285, at *3 (S.D.N.Y. Mar. 23, 2012)). In response, Plaintiffs argue that they "are availing themselves of a law that Congress intended to federalize certain claims for civil fraud . . . ." Mem. at 11. But the generalized observation about civil RICO suits that was quoted in the MTD Opinion—and Plaintiffs' objections to it—was not material to the Court's analysis and conclusions in the MTD Opinion.

---

[18] The remainder of these rows challenging the Court's holding regarding causation fail to show that the Court made any other mistake in the MTD Opinion. Other than what the Court just discussed, the remainder of the citations to the SAC in Row 4 point to portions of the SAC that list the elements of Plaintiffs' other causes of action. Mem. at 11–12.

Rows 4, 5, and 8 also rely on assertions about Plaintiffs' allegations that are not actually found in the SAC. To bolster the causal link between TMC's budget and Plaintiffs' maintenance fees, Rows 4 and 5 represent that there is a "direct pro rata relationship between the false budget and the fees charged to Plaintiffs" and that the maintenance fees are "allocated pro rata to Plaintiffs." *See* Mem. 11–12. The SAC does not allege how Plaintiffs' maintenance fees are determined based on the budget, much less that they were done on a pro rata basis. Row 8 also makes representations about the alleged facts of the case that are not found in the SAC—tellingly, it does not cite to the SAC at all. *See id.* at 13. As discussed in more depth later, allegations that were not before the Court for its consideration when it issued the MTD Opinion cannot form the basis of any mistake by the Court.

Similarly, in Rows 11, 18, 19, 21, and 22, Plaintiffs respond to footnotes in the MTD Opinion in which the Court noted inconsistencies in the SAC, but none of these details were material to the Court's ultimate conclusions.  In Row 11, Plaintiffs object to the Court's observation that any revenue allegedly received from the Transient Rental Program—a program that was used to rent out rooms at TMC separately from the timeshares—would presumably have resulted in *lower* maintenance fees charged to Plaintiffs, rather than *higher* maintenance fees.  Mem. at 14 (citing MTD Opinion at 15 n.19).  Row 18 responds to the Court's point that the SAC appears to contradict itself in part because it alleges both that Defendant Urban "performs no work for its management fee" but also that Urban engaged in a number of acts as TMC's management, such as denying requests by Plaintiffs to reserve rooms at TMC.  *Id.* at 17–18 (citing MTD Opinion at 20 n.24).  In Rows 19 and 22, Plaintiffs object to the Court's observation that, contrary to Plaintiffs' assertions of fraud and deceit, the offering plan for the TMC timeshares explicitly warns that timeshare holders may not be able to make reservations on short notice and disclaims the existence of any formal program obligating TMC's sponsor to buy back any timeshare interests.  *Id.* at 18, 19–20 (citing MTD Opinion at 20 n.25, 22 n.30).  And in Row 21, Plaintiffs contest the Court's statement that the SAC incorrectly represents that the Assurance of Discontinuance ("AOD") with the NYAG only applies to the Individual Eichner Defendants when it applies to all of the Eichner Defendants, though Plaintiffs agree with the Court that the AOD was entered into between the NYAG and the Eichner Defendants.[19]  *Id.* at 19 (citing MTD Opinion at 21 n.27).  The Court did not rely on any of these

---

[19] Plaintiffs' assertion in Row 21 is based on a misunderstanding of the Court's statement.  The SAC uses the label "Eichner Respondents" for identifying the Individual Eichner Defendants and then represents that the AOD "precludes the Eichner Respondents" from engaging in certain activity.  SAC at 6 n.3, ¶ 214.  In the MTD Opinion, the Court clarified that it understood the AOD to apply to all of the Eichner Defendants, not just those defined by the SAC as the Eichner Respondents.  MTD Opinion at 21 n.27.

details in analyzing the adequacy of Plaintiffs' allegations in the MTD Opinion, however. Plaintiffs

therefore fail to identify in these rows any mistake that could warrant relief under Rule 60(b)(1).[20]

### 2. Plaintiffs Fail to Identify Any Other Mistake by the Court Warranting Relief from Judgment

Plaintiffs fail to identify any mistake warranting relief from judgment under Rule 60(b)(1) in

the remainder of their briefing. *See* Mem. at 2–9, 21–22; Eichner Reply at 2–4; BlueGreen Reply at

2–4. Plaintiffs assert that the SAC adequately pleads the elements of a RICO claim. Mem. at 2–9.

Specifically, Plaintiffs assert that the SAC adequately alleges three categories of predicate acts of

fraud for a RICO claim: (1) TMC's annual budgets, which incorporated inflated management fees

paid to Defendant Urban and maintenance fees charged to Plaintiffs; (2) the maintenance fee

statements sent to Plaintiffs, reflecting the purportedly inflated fees; and (3) buyback offers made to

Plaintiffs to buy back their TMC timeshare interests in exchange for $100 and forgiveness of any

arrearages on overdue maintenance fees. *Id.* at 3.[21]

Plaintiffs fail to show a mistake by the Court in its understanding of the allegations relevant

to its ruling in the MTD Opinion because they rely on allegations not found in the SAC. In support

of their assertion that TMC's maintenance fees, management fees, and annual budget were

fraudulent, Plaintiffs represent that:

> In a properly run membership association, the annual maintenance fees are supposed
> to be based on good faith projections of expenses. A management fee might then be

---

[20] Plaintiffs also do not establish that any of these observations by the Court were incorrect.

[21] These three categories are different from the MTD Opinion, but this is not a material difference. The MTD Opinion—and the SAC—divides the purported predicate acts into the following three categories: TMC's maintenance fee statements; Defendants' operation of the timeshare reservation system; and the buyback offers. *Compare* MTD Opinion at 12, *with* SAC ¶ 303 (listing predicate RICO acts); *see also id.* ¶¶ 188–203 ("Fraudulent Maintenance Fees" section); *id.* ¶¶ 204–212 ("Fraudulent Implementation of Reservations" section); *id.* ¶¶ 213–220 ("Fraudulent Buy Back Offers" section). By contrast, the Rule 60(b) Motion lists the annual budget as a separate predicate act for their RICO claim but leaves out Defendants' operation of the timeshare reservation system as a predicate act. Mem. at 3. Both the SAC and the MTD Opinion discussed TMC's annual budget as part of the maintenance fee statements; that is, Plaintiffs' theory of the case is that TMC's annual budget was fraudulent and resulted in fraudulent maintenance fee statements that were sent to Plaintiffs. *See, e.g.*, SAC ¶ 190 ("These [maintenance fee] statements are fraudulent because they are calculated based on estimated budgets that repeatedly and intentionally overstate TMC's annual revenue . . . ."). Given this, the Court discussed Plaintiffs' allegations and arguments regarding TMC's annual budget items in relation to the maintenance fee statements in the MTD Opinion. *See* MTD Opinion at 12–16.

> assessed according to a formula.  Annually (or more frequently), a budget
> reconciliation should be performed . . . .  *This never happened at TMC.  From at least*
> *2011 to date, there has never been a reconciliation with the actual revenues received and expenses*
> *paid to correct the false projections included in the projected budgets.*

Mem. at 5 (emphasis added).  But these allegations—or even a reference to budget reconciliation—

are nowhere to be found in the SAC, the operative complaint that the Court analyzed and dismissed

in the MTD Opinion.[22]  Allegations not found in the SAC cannot form the basis of a mistake by the

Court warranting relief from judgment, given that the Court could not have considered any such

allegations when it dismissed Plaintiffs' claims.

Similarly, Plaintiffs' assertions about how Defendant Urban's management fees were

calculated after 2017 are not found in the SAC.  Plaintiffs draw a distinction between how Urban's

management fees were calculated from approximately 2011 to 2014, and how they were calculated in

2017 and afterwards.  Mem. at 6–8 ("Unlike the earlier budgets, e.g., 2011-2014 . . . after the AOD

was entered in 2017, Urban's fee was to have instead been calculated as a capped percentage of

annual expenses . . . .").  But this is not alleged in the SAC, which did not make a distinction

between different periods of how Urban's fees were calculated.[23]  *See, e.g.*, SAC ¶ 191 ("Urban is paid

---

[22] Even if this was alleged in the SAC, it would still fail to change the Court's conclusion in the MTD Opinion.  In the MTD Opinion, the Court concluded that, despite Plaintiffs' use of the word "fraudulent" to characterize TMC's budget and various items associated with the budget, Plaintiffs' complaints amount to a disagreement over how TMC determines its budget rather than deceptive conduct.  *See* MTD Opinion at 15 ("Instead, Plaintiffs object to *how* these items, including the budget and Urban's management fee, were calculated. . . . These are judgment calls made in determining TMC's annual budget; they do not plead with the specificity required by Rule 9(b) any 'element of deception.'").  Alleging that TMC should have performed frequent budget reconciliations or did not follow best practices of a "properly run membership association" falls short of identifying a misrepresentation or other deceptive conduct by Defendants.

[23] In support of these assertions about Urban's fees, Plaintiffs only cite to Paragraph 64(g) of the 2017 Assurance of Discontinuance ("AOD") that the Eichner Defendants entered into with the New York Attorney General.  *See id.* at 6; *see also* Dkt. No. 111-6.  This paragraph of the AOD limits Urban's management fee to "fifteen percent (15%) of the total actual expenses paid by [TMC], not including the management fee itself."  AOD ¶ 64(g).  The SAC does not allege that Urban's fees were calculated differently after 2017.  But, even assuming that this paragraph of the AOD is sufficient to reasonably infer that Urban's fees were calculated based on TMC's expenses after 2017, this does not alter the Court's analysis in the MTD Opinion.  There, the Court held that Plaintiffs failed to adequately plead proximate cause—that Urban's purportedly inflated fees resulted in any injury to Plaintiffs—or deceptive conduct in relation to Urban's fees.  MTD Opinion at 14–16.  This holding is not affected by a change in how Urban's fees were calculated after 2017.

a management fee of up to 20% of TMC's annual assessment of maintenance fees plus transient rentals and other income . . . .").

As part of their discussion about Urban's fee, Plaintiffs rely on an analysis of TMC's operating budgets for the years after 2017, but—again—the underlying alleged facts were not previously before the Court. Plaintiffs assert that an "examination of the Footnotes to Schedule B of TMC's Operating Budgets for years after 2017 reveals that the Eichner Defendants continued the financial improprieties . . . ." Mem. at 6. Specifically, Plaintiffs analyze the footnotes to Schedule B of TMC's 2018 and 2022 budgets and assert that those footnotes show Urban was paid too high a management fee in those years. *Id.* at 6–8. The SAC does not contain these allegations—nor were the 2018 or 2022 budgets attached to the SAC. They are, instead, attached to the PTAC, and were not before the Court when it issued the MTD Opinion. *See* Dkt. No. 157-10 (the "2018 Budget"); Dkt. No. 157-11 (the "2022 Budget"). Because these allegations are nowhere to be found in the SAC or supporting materials that were previously before the Court, Plaintiffs have failed to identify an error by the Court when it dismissed the SAC for inadequacies in its pleading.

Plaintiffs' failure to identify any mistake in the Court's understanding of the facts alleged in the SAC is showcased by the lack of virtually any citation to the SAC outside of the table of the Court's purported mistaken assertions. Other than in the table, Plaintiffs only cite to the SAC once. *See* Mem. at 4 (citing SAC ¶¶ 189, 195, 218). That citation is to three paragraphs in the SAC that are not relevant to the Court's analysis. Plaintiffs cite to those paragraphs in support of the contention that the SAC provides specific dates on which Defendants communicated by mail or wire to Plaintiffs. *Id.* But the Court did not engage in any analysis that turned on these details in the MTD Opinion. The Court held that the SAC failed to plead with the specificity required by Rule 9(b). MTD Opinion at 15–16 & nn.20–22. As discussed later in this opinion, this holding was based on

Plaintiffs' failure to provide the contents of the allegedly fraudulent statements, not that the SAC failed to plead the dates on which the statements occurred.

The remainder of Plaintiffs' assertions in support of their request for relief under Rule 60(b)(1) are the same arguments the Court rejected in the MTD Opinion, which the Court re-examines for error. It has been traditionally the rule in this Circuit that a Rule 60(b) "motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995); *see also Pastor v. P'ship for Children's Rts.*, 856 F. App'x 343, 345 (2d Cir. 2021) (summary order) ("[A] Rule 60(b) motion is properly denied where it seeks only to relitigate issues already decided."). In 2022, the Supreme Court clarified that a motion for relief under Rule 60(b)(1) may seek relief based on a purported error of law by the district court. *Kemp*, 596 U.S. at 533–34. In the aftermath of *Kemp*, it is not clear whether the rule in this Circuit remains that Rule 60(b)(1) cannot be used to relitigate an issue already decided. *But see Smith v. Hochul*, No. 5:21-cv-35 (LEK) (ATB), 2023 WL 2598841, at *6 (N.D.N.Y. Mar. 22, 2023) (denying portion of Rule 60(b)(1) motion that was based on recycled arguments that the court committed error of law), *appeal pending*, No. 23-686 (2d Cir. filed Apr. 24, 2023). Given this uncertainty in the law of the Circuit, the Court examines the MTD Opinion for potential legal error.

Having done so, the Court finds that Plaintiffs—outside of their table of the Court's purported mistakes, which the Court analyzed separately above—have identified one error of law in the MTD Opinion, but that error does not entitle Plaintiffs to relief from judgment. The MTD Opinion erred in finding that the SAC did not plead the existence of a fiduciary duty between Plaintiffs and any Defendant, because the SAC adequately alleges that two of the Defendants, Stuart Eichner and Scott Lager (the "Board Defendants"), owed Plaintiffs a fiduciary duty. The Court previously concluded that no alleged omission by Defendants could constitute fraudulent conduct

because the SAC did not adequately plead that any Defendant owed a duty to disclose the allegedly omitted information. MTD Opinion at 16–18, 21–22. The Court also concluded that, while a fiduciary duty can form the basis of a duty to disclose, Plaintiffs failed to adequately plead that any Defendant owed a fiduciary duty to Plaintiffs. *Id.* at 17–18. The SAC alleges that the Board Defendants served on TMC's Board of Directors (the "Board") from at least 2011 to 2017, during which time the Board was controlled by TMC's sponsor. SAC ¶ 183. The members of a board of directors of an entity owe a fiduciary duty to the members of that entity. *See Bowery 263 Condo. Inc. v. D.N.P. 336 Covenant Ave. LLC*, 95 N.Y.S.3d 35, 35 (1st Dep't 2019) (condominium context). This is true when the board is controlled by the sponsor of the entity. *See id.* Therefore, taking the allegations in the SAC as true, the Board Defendants owed Plaintiffs a fiduciary duty in their capacity as Board members.[24]

This error does not warrant Rule 60(b)(1) relief, however, because it does not ultimately change the Court's conclusions underlying the dismissal of Plaintiffs' claims in the MTD Opinion. Mail or wire fraud can be based on either affirmative misrepresentations or "by omissions of material information that the defendant has a duty to disclose." *United States v. Autuori*, 212 F.3d 105, 118 (2d Cir. 2000). A fiduciary duty can give rise to a duty to disclose. *See id.*; *see also United States v. Szur*, 289 F.3d 200, 211 (2d Cir. 2002) ("[W]hen dealing with a claim of fraud based on material omissions, it is settled that a duty to disclose arises [only] when one party has information that the other [party] is entitled to know because of a fiduciary or other similar relation of trust and confidence between them." (second and third alteration in original) (internal quotation marks and

---

[24] Plaintiffs did not raise this argument in their briefing in opposition to Defendants' motions to dismiss. Ordinarily, "[a]n argument based on hindsight regarding how the movant would have preferred to have argued its case does not provide grounds for Rule 60(b) relief . . . ." *Cnty. of Nassau*, 2013 WL 3863918, at *2 (quoting *Paddington Partners*, 34 F.3d at 1147). In light of the Supreme Court's recent holding that Rule 60(b)(1) challenges can be asserted on the basis of a Court's legal error, it is not clear whether this principle remains the rule in this Circuit. Out of caution, therefore, the Court assumes for the purposes of this opinion that it can consider new arguments raised in a Rule 60(b) motion.

citation omitted)).  "[A]bsent the existence of any such duty to disclose, a mail fraud claim premised on a material omission must fail . . . ."  *Bongiorno v. Baquet*, No. 20-CV-7288 (LJL), 2021 WL 4311169, at *21 (S.D.N.Y. Sept. 20, 2021) (citation and internal quotation marks omitted).

The SAC alleges that the Board Defendants owed Plaintiffs a duty as members of the Board—but it does not allege any omission that the Board Defendants made in their capacity as members of the Board.  Indeed, the SAC does not allege that either of the Board Defendants fraudulently withheld information with the specificity required by Rule 9(b), much less that they withheld information that they were obligated to disclose as Board members.  *See Sheppard v. Manhattan Club Timeshare Ass'n, Inc.* No. 11 Civ. 4362 (PKC), 2012 WL 1890388, at *8 (S.D.N.Y. May 23, 2012) ("When a breach of fiduciary duty claim is premised upon fraudulent misconduct, Rule 9(b) applies.").  Therefore, the Court's holding in the MTD Opinion that the SAC fails to adequately allege a fraudulent omission of information is unaffected by the error identified in Plaintiffs' motion.

As for the remaining arguments asserted in Plaintiffs' motion, Plaintiffs fail to identify any error of law made by the Court that warrants vacatur of the MTD Opinion.  For example, the Court held in the MTD Opinion that Plaintiffs failed to plead with particularity the circumstances constituting fraud, as required by Rule 9(b).  MTD Opinion at 11–12, 15–16, 20, 22 (citing Fed. R. Civ. P. 9(b)).  Plaintiffs identify no error in this holding, which alone justifies denial of Plaintiffs' request for relief under Rule 60(b)(1).  "[A]llegations of predicate mail and wire fraud acts should state the contents of the communications, who was involved, where and when they took place, and explain why they were fraudulent."  *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993).  Other than TMC's 2012 budget, Plaintiffs failed to provide a single copy of the statements they assert constitute Defendants' fraudulent statements—TMC's annual budget, maintenance fee

statements, and buyback offers—in or attached to the SAC.[25]  While Plaintiffs assert that the SAC

alleges the dates on which the purportedly fraudulent statements were made, *see* Mem. at 4 (citing

SAC ¶¶ 189, 195, 218), they do not dispute that the SAC fails to provide the actual contents of the

purportedly fraudulent communications.  *See, e.g.*, *Knoll*, 275 F. App'x at 51 ("Although the amended

complaint sets forth the dates, locations, senders and recipient of the allegedly fraudulent

communications, its assertions as to their contents and the reason each communication was

fraudulent are conclusory.").  This unchallenged holding alone—that Plaintiffs failed to plead the

contents of the purportedly fraudulent statements made by Defendants—is a sufficient basis to

dismiss Plaintiffs' RICO claims and, therefore, to deny Plaintiffs' request to vacate the judgment.[26]

Accordingly, because Plaintiffs fail to show a mistake by the Court that warrants relief from

judgment, Plaintiffs' request for the vacatur of the MTD Opinion based on Rule 60(b)(1) is denied.[27]

### D.    "Extraordinary Circumstances" Warranting Rule 60(b)(6) Relief

Again, even if the Court were to consider the Rule 60(b) Motion to be timely, Plaintiffs'

request for leave to amend the complaint is also denied because Plaintiffs fail to show extraordinary

circumstances warranting such relief.  As an alternative to relief from judgment based on a finding

of a "mistake" under Rule 60(b)(1), Plaintiffs seek leave to amend their complaint after an

opportunity to engage in discovery.  Mem. at 1.  In support of this request, Plaintiffs attach the

---

[25] Plaintiffs do not allege that the 2012 budget is representative of the other years in the relevant time period, and claims based on the 2012 budget alone would presumably be time-barred.  *See* MTD Opinion at 22 n.30 (noting the four-year statute of limitations for RICO claims).

[26] The MTD Opinion also concluded that the SAC fails to adequately allege scienter or individual liability of each Defendant with the particularity required by Rule 9(b), which constitute two additional independent bases for the dismissal of Plaintiffs' RICO claims that Plaintiffs fail to successfully challenge.  MTD Opinion at 19 n.23.

[27] Plaintiffs are incorrect in their representation that Defendants—the non-movants—hold the burden of proof.  *See* Eichner Reply at 4 ("[T]he Eichner Defendants have failed to sustain their burden to demonstrate that the Plaintiffs' allegations of RICO violations in the SAC were not plausibly plead[ed] . . . ."); BlueGreen Reply at 3 ("BlueGreen has failed to sustain its burden to demonstrate that the Plaintiffs' allegations of RICO violations in the SAC were not plausibly plead[ed] . . . .").  Plaintiffs, as the movants, hold the burden in a Rule 60(b) analysis.  *See Thai-Lao Lignite (Thailand) Co.*, 864 F.3d at 182 ("The burden is on the moving party to demonstrate that it is entitled to relief . . . .").  Plaintiffs must present evidence that is "highly convincing" to show their entitlement to relief.  *Id.*  Plaintiffs fail to meet that burden.

PTAC.  *Id.*; *see also* Dkt. No. 157-2 (PTAC).  Plaintiffs do not clarify whether they propose filing the PTAC or a modified version of the PTAC after the discovery they seek.

"Rule 60(b)(6) 'grants federal courts broad authority to relieve a party from a final judgment upon such terms as are just, provided that the motion . . . is not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5).'"  *Mandala*, 88 F.4th at 361 (quoting *Liljeberg*, 486 U.S. at 863); *see also Metzler Investment Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 143 (2d Cir. 2020) ("Rule 60(b)(6) [is] a catch-all provision . . . .").  "[I]t constitutes a grand reservoir of equitable power to do justice . . . [b]ut that reservoir is not bottomless."  *Mandala*, 88 F.4th at 361 (internal quotation marks and citations omitted).  "Relief under Rule 60(b)(6) is reserved for cases that present 'extraordinary circumstances.'"  *Id.* (quoting *Liljeberg*, 486 U.S. at 863–64).

"When vacatur is sought in order to obtain leave to file an amended complaint, special considerations come into play."  *Id.* (quoting *Williams v. Citigroup Inc.*, 659 F.3d 208, 212 (2d Cir. 2011) (per curiam)).  A request for leave to amend is ordinarily governed by Federal Rule of Civil Procedure 15, which provides that "[t]he court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  But "[w]here . . . a party does not seek leave to file an amended complaint until after judgment is entered, . . . 'due regard' must be given to *both* the 'philosophy favoring finality of judgments and the expeditious termination of litigation,' and the 'liberal amendment policy of Rule 15(a).'"  *Mandala*, 88 F.4th at 361 (emphasis in original) (quoting *Williams*, 659 F.3d at 213); *see also Metzler*, 970 F.3d at 146 (rejecting argument that post-judgment request for leave to replead should be solely governed by Rule 15 because "[d]oing so would allow the liberal amendment policy of Rule 15(a) to swallow the philosophy favoring finality of judgments whole" (internal quotation marks and citation omitted)).

A balance of the two competing interests can be obtained "by ensuring plaintiffs at least one opportunity to replead."  *Mandala*, 88 F.4th at 362 (quoting *Metzler*, 970 F.3d at 146) ("In most if not

all Second Circuit cases denying post-judgment leave to replead, the plaintiff had already taken at

least one shot at amendment.").  When the request is to amend a complaint for the first time, "it is

an abuse of discretion to deny post-judgment relief without any justifying reason," such as undue

delay, bad faith or dilatory motive, repeated failures to cure deficiencies by amendment, undue

prejudice, or futility.  *Id.* (internal quotation marks and citation omitted); *see also Honickman v. BLOM*

*Bank SAL*, No. 22-1039, 2024 WL 852265, at *1–2 (2d Cir. Feb. 29, 2024) (summary order)

(reversing denial of Rule 60(b)(6) motion seeking leave to file a first amended complaint because

district court only considered the Rule 60(b) standard but not the Rule 15(a) standard).

       On the other hand, "when a plaintiff already had multiple chances to state a claim, there is

little risk of manifest injustice in denying yet another go" in the post-judgment context.  *Mandala*, 88

F.4th at 362.  As the Second Circuit has remarked, "[i]t seems . . . self-evident that a plaintiff

afforded attempt after attempt—and consequently, additional time to investigate—might one day

succeed in stating a claim.  But the federal rules and policies behind them do not permit such

limitless possibility."  *Metzler*, 970 F.3d at 147 ("Rule 15 is liberal, yes, but it is also temperate.").

       Balancing the interests of preserving the finality of a judgment and the liberal amendment

policy of Rule 15(a), the Court concludes that Plaintiffs are not entitled to another bite at the apple.

Plaintiffs have already had the opportunity to correct the deficiencies in their pleading, having

substantively amended their complaint twice.[28]  Dkt. Nos. 1, 17, 111.  The last of those

amendments—the SAC—was done with the benefit of the Court's analysis in a written

memorandum opinion and order that was issued on September 27, 2021.  Dkt. No. 98; *see also* Dkt.

No. 103 (granting leave to amend).  In that order, the Court dismissed Plaintiffs' claims because the

operative complaint failed to adequately plead a RICO claim.  Dkt. No. 98.  The Court then again

---

[28] While Defendant BlueGreen emphasizes that Plaintiffs have filed eight complaints, BlueGreen Opp. at 4, BlueGreen includes in that count several submissions that were deficient for technical reasons.  *See* Dkt. Nos. 16, 104, 105, 108, 109. Plaintiffs corrected those technical errors in subsequent filings.

dismissed Plaintiffs' claims in the MTD Opinion, on much of the same grounds as in the earlier

order of dismissal. *See* MTD Opinion at 28–29 (noting "the same core deficiencies remain[ed]" in

the SAC as in the earlier complaint). Plaintiffs have had multiple opportunities to amend, once with

the benefit of the Court's analysis of their claims, and yet have failed to adequately plead a claim for

relief. Plaintiffs are not entitled to another opportunity—post-judgment—to correct their pleading.

*See, e.g.*, *Metzler*, 970 F.3d at 145 (affirming post-judgment denial of leave to amend where, "[i]n

dismissing the First Amended Complaint, the district court issued a thorough opinion that identified

defects that a second amended complaint should cure . . . , [but t]he plaintiffs failed to cure such

deficiencies in their Second Amended Complaint").

Nor have Plaintiffs presented any persuasive reason to be granted leave to amend. *Thai-Lao*

*Lignite (Thailand) Co.*, 864 F.3d at 182 ("The burden is on the moving party [of a Rule 60(b) motion]

to demonstrate that it is entitled to relief . . . ."). The only justification Plaintiffs provide is that an

amendment would not be futile because the PTAC adequately pleads a claim for relief, *see* Mem. at 1;

Eichner Reply at 2. But Plaintiffs provide no support for this argument—notably, their briefing

does not contain a single citation to the PTAC. And, even if Plaintiffs are correct that an

amendment would not be futile, that alone is not sufficient to justify re-opening the case and

granting leave to amend. *See Metzler*, 970 F.3d at 147 ("It seems . . . self-evident that a plaintiff

afforded attempt after attempt . . . might one day succeed in stating a claim. But the federal rules . . .

do not permit such limitless possibility.").

Plaintiffs' request for relief under Rule 60(b)(6) is particularly unjustified given that Plaintiffs

seek an opportunity to conduct discovery before they are permitted to amend the complaint.

"Discovery is not intended to function as a fishing expedition. . . . The Federal Rules of Civil

Procedure require Plaintiffs to state a claim upon which relief may be granted without access to

information that is in Defendants' sole control." *K.A. v. City of New York*, No. 1:16-cv-4936 (LTS)

(KNF), 2021 WL 5889254, at *2 (S.D.N.Y. Dec. 13, 2021).  Indeed, "judges in this district have consistently denied discovery requests [that] are lodged for the purposes of obtaining extra information prior to amending a complaint." *Id.*  Plaintiffs argue that they are entitled to discovery because Defendants are parties to a private arbitration that is related to TMC and yet have "refused to disclose to Plaintiffs" details of the arbitration that are relevant to Plaintiffs' case.  *See* BlueGreen Reply at 4.  But Defendants are not obligated to produce such information to Plaintiffs so that Plaintiffs may adequately plead a claim for relief.  Defendants' possession of information relevant to Plaintiffs' claims does not amount to "extraordinary circumstances" justifying relief under Rule 60(b)(6).

Plaintiffs' single citation to legal authority is unpersuasive.  *See Slemish Corp. v. Morgenthau*, 879 N.Y.S.2d 449 (1st Dep't 2009).  In *Slemish*, a New York state appellate court denied the plaintiffs' motion for summary judgment because there was inadequate evidence.  *Id.* at 450.  The procedural posture in that case was materially different:  in evaluating a motion for summary judgment, a court weighs factual evidence to assess whether it is adequate to support a claim for relief; but in deciding a Rule 12(b)(6) motion, a court examines the allegations in a complaint—not evidence—to assess whether they are sufficient to plead a claim.  Separately, *Slemish* is a New York state court case and is not instructive regarding the procedural rules governing a federal court examining federal claims.  Plaintiffs also misunderstand the case.  Contrary to Plaintiffs' representation that the *Slemish* court based its decision in part on finding that evidence was "exclusively within the defendants' control," *see* Mem. at 22, *Slemish* denied the plaintiffs summary judgment in part because "*plaintiffs* appear[ed] to have exclusive possession of many of the relevant facts," and the court was concerned about awarding plaintiffs relief based on their unilateral representation of the facts.  *Slemish Corp.*, 879 N.Y.S.2d at 451 (emphasis added).  Therefore, *Slemish* bears no weight on Plaintiffs' request for leave to amend after engaging in discovery.

Accordingly, Plaintiffs have failed to show any extraordinary circumstances warranting relief under Rule 60(b)(6), and Plaintiffs' request, in the alternative, for relief from judgment and leave to conduct discovery and file a third amended complaint is denied.

## IV.    CONCLUSION

For the reasons stated above, Plaintiffs' Rule 60(b) Motion is DENIED.

The Clerk of Court is directed to terminate the motions pending at Dkt. Nos. 155 and 157.

SO ORDERED.

Dated:  November 18, 2024
New York, New York

_____
GREGORY H. WOODS
United States District Judge